UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JOANNE WITCHKO, Derivatively on Behalf of Nominal :
Defendant AMERICAN REALTY CAPITAL
PROPERTIES, INC., :

     No. 15-CV-6043-AKH

     Plaintiff, :

    vs. :

NICHOLAS S. SCHORSCH, et al., :

     Defendants, :

  -and- :

AMERICAN REALTY CAPITAL PROPERTIES, INC., :

     Nominal Defendant.
------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

MILBANK, TWEED, HADLEY
 & McCLOY LLP
28 Liberty Street
New York, New York  10005
(212) 530-5000 (Telephone)
(212) 506-5219 (Fax)


Attorneys for Nominal Defendant
American Realty Capital Properties, Inc.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000 (Telephone)
(212) 310-8007 (Fax)

Attorneys for Defendants Thomas A.
Andruskevich, Bruce D. Frank, Leslie D.
Michelson, Edward G. Rendell and
William G. Stanley

October 15, 2015

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................4

    A.    The Parties .......................................................................................4

    B.    The Alleged Wrongdoing .........................................................4

    C.    Plaintiff's Demand on ARCP's Board ...............................6

    D.    The ARCP Board's Refusal of Plaintiff's Demand ................6

    E.    Plaintiff's Complaint......................................................................9

ARGUMENT .......................................................................................................9

PLAINTIFF LACKS STANDING BECAUSE SHE DOES  NOT ALLEGE
PARTICULARIZED FACTS SHOWING THAT  HER DEMAND WAS WRONGFULLY
REFUSED ...........................................................................................................9

    A.    Federal Rule Of Civil Procedure 23.1 Requires Particularized Pleading ...............9

    B.    A Board's Decision With Respect To A Shareholder Demand Is Protected
By The Business Judgment Rule And The Md. Corps. Code § 2-405.1(c)
Presumption That Directors Act In The Best Interests Of The Corporations
They Serve ......................................................................................10

    C.    Plaintiff's Allegations Do Not Overcome the Business Judgment Rule and
Md. Corps. Code § 2-405.1(c) Presumption .........................................14

        1.    ARCP's Board Does Not Lack Disinterestedness And
Independence ...........................................................................14

        2.    The Board's Determination To Refuse The Demand For Reasons
Other Than The Merits of Plaintiff's Claims Is Protected By the
Business Judgment Rule ..........................................................17

        3.    Plaintiff's Remaining Claims Also Fail..................................21

CONCLUSION....................................................................................................25

WEIL:\95440221\1\14807.0004

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

In re Am. Int'l Grp., Inc. Deriv. Litig.,
    700 F. Supp. 2d 419 (S.D.N.Y. 2010),
    aff'd, 415 F. App'x 285 (2d Cir. 2011)...................................................................9

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984) ...................................................................12, 14, 15

Beam v. Stewart,
    845 A.2d 1040 (Del. 2004) ...............................................................................16

Bender v. Schwartz,
    917 A.2d 142 (Md. Ct. Spec. App. 2007) .................................................3, 11, 12

Boland v. Boland,
    31 A.3d 529 (Md. 2011) .........................................................1, 10, 11, 12, 18

In re Boston Scientific Corp. S'holders Litig.,
    2007 WL 1696995 (S.D.N.Y. June 13, 2007) ........................................12, 13, 22

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) ................................................................................14

Burks v. Lasker,
    441 U.S. 471 (1979).........................................................................................1

Canty v. Day,
    13 F. Supp. 3d 333 (S.D.N.Y. 2014),
    aff'd, 599 F. App'x 20 (2d Cir. 2015).................................................................23

Caston v. Hoaglin,
    2009 WL 3078214 (S.D. Ohio Sept. 23, 2009) ..................................................15

In re Consumers Power Co. Deriv. Litig.,
    132 F.R.D. 455 (E.D. Mich. 1990) ..................................................................19

In re Dow Chem. Co. Deriv. Litig.,
    2010 WL 66769 (Del. Ch. Jan. 11, 2010)..........................................................17

Espinoza v. Dimon,
    797 F.3d 229 (2d Cir. 2015)..........................................................................9, 13

In re Facebook, Inc., Initial Pub. Offering Deriv. Litig.,
    797 F.3d 148 (2d Cir. 2015)..............................................................................3

WEIL:\95440221\1\14807.0004

Friedman v. Dolan,
    2015 WL 4040806 (Del. Ch. June 30, 2015)........................................................25

Furman v. Walton,
    320 F. App'x 638 (9th Cir. 2009) ......................................................................21

Gamoran v. Neuberger Berman, LLC,
    2013 WL 1286133 (S.D.N.Y. Mar. 29, 2013),
    aff'd, 536 F. App'x 155 (2d Cir. 2013)................................................................13

George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay,
    14 A.3d 1193 (Md. Ct. Spec. App. 2011) ...........................................................11

Grimes v. Donald,
    673 A.2d 1207 (Del. 1996) ................................................................................14

Halebian v. Berv,
    590 F.3d 195 (2d Cir. 2009)..................................................................................9

Halpert Enters. v. Harrison,
    2007 WL 486561 (S.D.N.Y. Feb. 14, 2007),
    aff'd, 2008 WL 4585466 (2d Cir. Oct. 15, 2008) ...............................................18

Halpert Enters. v. Harrison,
    2008 WL 4585466 (2d Cir. Oct. 15, 2008)....................................................22, 23

In re INFOUSA, Inc. S'holders Litig.,
    953 A.2d 963 (Del. Ch. 2007)............................................................................18

Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti,
    2015 WL 2270673 (Del. Ch. May 8, 2015)....................................12, 18, 19, 23, 25

Kamen v. Kemper Fin. Servs., Inc.,
    500 U.S. 90 (1991)..................................................................................1, 10, 11

Kamen v. Kemper Fin. Servs., Inc.,
    939 F.2d 458 (7th Cir. 1991) ..........................................................................1, 18

Kautz v. Sugarman,
    2011 WL 1330676 (S.D.N.Y. Mar. 31, 2011),
    aff'd, 456 F. App'x 16 (2d Cir. 2011).............................................................13, 14

Kautz v. Sugarman,
    456 F. App'x 16 (2d Cir. 2011) .........................................................................14

Lambrecht v. O'Neal,
    504 F. App'x 23 (2d Cir. 2012) .........................................................................20

WEIL:\95440221\1\14807.0004

Levine v. Smith,
591 A.2d 194 (Del. 1991) ..................................................................................22

Lewis v. Graves,
701 F.2d 245 (2d Cir. 1983)..............................................................................15

In re Massey Energy Co. Deriv. & Class Action Litig.,
2011 WL 2176479 (Del. Ch. May 31, 2011)......................................................24

In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig.,
773 F. Supp. 2d 330 (S.D.N.Y. 2011),
aff'd sub nom. Lambrecht v. O'Neal, 504 F. App'x 23 (2d Cir. 2012)...........13, 19, 20, 22, 25

Morales-Santana v. Lynch,
792 F.3d 256 (2d Cir. 2015).............................................................................19

Morefield v. Bailey,
959 F. Supp. 2d 887 (E.D. Va. 2013) ...............................................................21

Mt. Moriah Cemetery v. Moritz,
1991 WL 50149 (Del. Ch. Apr. 4, 1991),
aff'd, 599 A.2d 413 (Del. 1991) .......................................................................23

Oliveira v. Sugarman,
2014 WL 7780336 (Md. Cir. Ct. Oct. 30, 2014) ......................................3, 11, 12, 13

In re Pfizer Inc. Deriv. Sec. Litig.,
503 F. Supp. 2d 680 (S.D.N.Y. 2007),
aff'd, 307 F. App'x 590 (2d Cir. 2009)..............................................................15

RCM Sec. Fund, Inc. v. Stanton,
928 F.2d 1318 (2d Cir. 1991)............................................................................13

Ross v. Bernhard,
396 U.S. 531 (1970).............................................................................................1

Seidl v. Am. Century Cos.,
713 F. Supp. 2d 249 (S.D.N.Y. 2010),
aff'd, 427 F. App'x 35 (2d Cir. 2011)..........................................................11, 14

Serafin v. Schorsch,
2015 WL 3901646 (S.D.N.Y. June 24, 2015) .....................................1, 10, 11, 14

Shenker v. Laureate Educ., Inc.,
983 A.2d 408 (Md. 2009) ............................................................................3, 12

Spiegel v. Buntrock,
571 A.2d 767 (Del. 1990) ..................................................................................13

WEIL:\95440221\1\14807.0004

<u>Steinberg</u> v. <u>Mozilo</u>,
   2015 WL 5724753 (S.D.N.Y. Sept. 29, 2015) ........................................................................25

<u>Stratte-McClure</u> v. <u>Morgan Stanley</u>,
   776 F.3d 94 (2d Cir. 2015) ..................................................................................................4

<u>Weinberg</u> v. <u>Gold</u>,
   838 F. Supp. 2d 355 (D. Md. 2012) ...................................................................................15

<u>Werbowsky</u> v. <u>Collomb</u>,
   766 A.2d 123 (Md. 2001) ............................................................................1, 10, 11, 14

<u>Wood</u> v. <u>Baum</u>,
   953 A.2d 136 (Del. 2008) ...................................................................................................15

## Statutes and Rules

Md. Corps. & Ass'ns Code § 2-405.1 ...........................................................3, 10, 11, 12, 14, 24

Fed. R. Civ. P. 23.1 ...........................................................................................................3, 9, 10

WEIL:\95440221\1\14807.0004

## PRELIMINARY STATEMENT

This is a shareholder derivative action brought on behalf of Nominal Defendant American Realty Capital Properties, Inc. ("ARCP") (now known as VEREIT, Inc.), a Maryland corporation, alleging claims arising out of accounting practices which led to a restatement of financial statements and other financial information in March 2015.

Unlike a claim that a plaintiff brings on his or her own behalf to enforce a personal right, a shareholder derivative action is brought "'to enforce a corporate cause of action.'" Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991) (quoting Ross v. Bernhard, 396 U.S. 531, 534 (1970)) (emphasis added by court in Kamen). "'The substantive claim belongs to the corporation.'" Boland v. Boland, 31 A.3d 529, 548 (Md. 2011) (quoting Werbowsky v. Collomb, 766 A.2d 123, 133 (Md. 2001)). The corporation "is the real party in interest, the stockholder being at best the nominal plaintiff." Ross, 396 U.S. at 538; see also Boland, 31 A.3d at 548 ("the 'corporation is the real party in interest'") (quoting Werbowsky, 766 A.2d at 133).

"Thus, the common law developed a requirement that the derivative plaintiff, at the outset, seek a corporate decision on whether to maintain a lawsuit, a prerequisite known as the 'demand requirement.'" Boland, 31 A.3d at 549. The demand requirement "implements 'the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders.'" Kamen, 500 U.S. at 101 (citation omitted). The law recognizes that "[t]here may well be situations in which the independent directors could reasonably believe that the best interests of the shareholders call for a decision not to sue." Burks v. Lasker, 441 U.S. 471, 485 (1979). "'The focus . . . is not on the merits of the plaintiffs' claims, but on whether maintenance of the suit would be in the company's best interest'" – "'even if a derivative suit may ultimately be successful.'" Boland, 31 A.3d at 570 (citation omitted); see also Kamen v. Kemper Fin. Servs.,

Inc., 939 F.2d 458, 462 (7th Cir. 1991) ("[c]onscientious managers may conclude that legal action is unjustified because not meritorious, or because it would subject the firm to injury") (Maryland law).  The alternative would create havoc: any holder of any of ARCP's hundreds of millions of publicly traded shares could at his, her or its whim bring any number of lawsuits, all asserting claims belonging to ARCP.  Consistent with these principles, this Court's decision in Serafin v. Schorsch, 2015 WL 3901646 (S.D.N.Y. June 24, 2015) (Hellerstein, J.), rejected a claim by other ARCP shareholders that a demand was not required in this case.

Recognizing the force of this rule of law, plaintiff wrote to ARCP's Board of Directors and demanded that ARCP's Board commence litigation in ARCP's name against the persons responsible for the wrongdoing alleged in plaintiff's demand.  ARCP's Board did not ignore plaintiff's demand.  Far from it.  ARCP's Board retained independent outside counsel to assist the Board in reviewing the demand.  Following a full inquiry, ARCP's Board unanimously agreed that pursuing the claims alleged in the demand at this time would not serve the best interests of ARCP and its shareholders.

The Board sent plaintiff a six-page single-spaced letter explaining in detail the procedure by which the Board assessed plaintiff's demand and the reasons for the Board's decision to refuse the demand at this time.  Most importantly, pursuing the claims alleged at this time, even if the claims were meritorious, would require ARCP to allege and prove facts similar to those that the plaintiffs in securities litigation in this Court will be required to establish if they are to be successful in cases against ARCP and could jeopardize defenses ARCP could raise in governmental investigations; developments in the securities litigation and the government investigations will further inform the Board about actions and events underlying the claims; and ample time remains before statutes of limitations would run on claims ARCP might bring.

WEIL:\95440221\1\14807.0004

Plaintiff now asks this Court to substitute plaintiff's business judgment for the Board's business judgment. The demand requirement is more than a "check the box" formality satisfied by any shareholder who makes a demand, no matter what the response. To the contrary, a board's decision to refuse a demand is protected by the business judgment rule codified in Md. Corps. & Ass'ns Code § 2-405.1, which is "'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Boland, 31 A.3d at 548 (citation omitted). This presumption "insulates 'the business decisions made by the director[s] from judicial review.'" Id. (quoting Shenker v. Laureate Educ., Inc., 983 A.2d 408, 424 (Md. 2009)). In accordance with this presumption and the requirement in Federal Rule of Civil Procedure 23.1 that allegations concerning pre-suit demand be pled with particularity, a shareholder "must state a claim in particular, rather than conclusory, terms." Bender v. Schwartz, 917 A.2d 142, 152-53 (Md. Ct. Spec. App. 2007), quoted in Oliveira v. Sugarman, 2014 WL 7780336, at *8 (Md. Cir. Ct. Oct. 30, 2014). A single shareholder cannot usurp the right of ARCP's Board – which represents all ARCP's shareholders – to make a business judgment with respect to whether litigating plaintiff's claims on ARCP's behalf will serve the best interests of ARCP.

Accordingly, to establish standing to sue derivatively on ARCP's behalf, plaintiff must do more than just plead facts that state a legal claim. She must also overcome the business judgment rule and the Corps. Code § 2-405.1 presumption that ARCP's Board, in refusing plaintiff's demand, acted "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Plaintiff has not done so and therefore lacks standing to pursue this case. "Absent derivative standing, there is no derivative case." In re Facebook, Inc., Initial Pub. Offering Deriv. Litig., 797 F.3d 148, 158  (2d Cir. 2015).

## STATEMENT OF FACTS

On a motion to dismiss, the Court may consider the complaint and "'any state-ments or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted).  Copies of exhibits cited below are attached to the Declaration of Stephen A. Radin.

### A.   The Parties

Plaintiff Joanne Witchko alleges that she "brings this derivative action in the right and for the benefit of ARCP."  Compl. Intro. & ¶¶ 111, 151.  ARCP is a real estate investment trust (a "REIT") organized under Maryland law.  Id. ¶¶ 1, 15.

Defendant Bruce D. Frank is an outside, non-management member of ARCP's board of directors.  Id. ¶ 19.  Defendants Thomas A. Andruskevich, Scott J. Bowman, William Kahane, David Kay, Leslie D. Michelson, Governor Edward G. Rendell, Nicholas S. Schorsch, William G. Stanley and Edward M. Weil, Jr. are former members of ARCP's board.  Id. ¶¶ 16-18, 20-25; see also Aug. 19, 2015 ARCP Proxy at 10 (Ex. L) (reporting, following the filing of the complaint,  that "[t]wo members of our current Board of Directors, Thomas A. Andruskevich and William G. Stanley, have declined to stand for re-election").  Defendants Lisa Beeson, Brian Block and Lisa McAlister are former officers of ARCP.  Compl. ¶¶ 26, 29, 30.  Messrs. Kay, Schorsch and Weil are also former officers of the Company.  Id. ¶¶ 16, 20, 25.

### B.   The Alleged Wrongdoing

On October 29, 2014, ARCP filed a Form 8-K announcing "preliminary findings" of an audit committee investigation being conducted "with the assistance of independent counsel and forensic experts" with respect to "concerns regarding accounting practices and other matters

that first were reported to the Audit Committee on September 7, 2014."  Compl. ¶ 79.  ARCP stated that, "based on the preliminary findings of the investigation, the Audit Committee believes that the Company incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations ('AFFO'), a non-U.S. GAAP financial measure . . . and, as a result, overstated AFFO for this period."  Id.  ARCP stated that its audit committee had learned that "this 'error' was identified but intentionally not corrected" and that "other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss."  Id.  ARCP also announced that its chief financial officer and chief accounting officer, Mr. Block and Ms. McAlister, had resigned "at the request of the Audit Committee."  Id.

> The October 29, 2014 announcement triggered an investigation by the SEC and federal prosecutors, and was followed by "at least ten securities class actions" filed in this Court, which plaintiffs allege have caused harm to ARCP, including "[e]normous legal costs" and "[l]ikely criminal and/or civil liability."  Compl. ¶ 108; see also id. ¶¶ 110, 131 n.5, 146, 157, 160, 161; In re Am. Realty Capital Props., Inc. Litig., No. 15-MC-00040 (AKH) (S.D.N.Y.).

> On December 15, 2014, ARCP announced that Mr. Schorsch had "'resigned as Executive Chairman and a director' of ARCP."  Compl. ¶ 93.  ARCP also announced that Mr. Kay had resigned as chief executive officer and as a member of ARCP's board and that Ms. Beeson had resigned as president and chief operating officer.  Id.

> On December 18, 2014, Ms. McAlister filed a defamation action against ARCP and Messrs. Schorsch and Kay.  Id. ¶ 95.  Ms. McAlister alleged that, "beginning in or about February 2014, [she] 'repeatedly informed' defendants Schorsch, Kay and 'senior management'" that ARCP had "'suddenly and without any apparent justification or basis'" "changed the method

by which it was reporting AFFO relative to previous quarters." <u>Id</u>. ¶ 96.  Ms. McAlister did not

allege that she informed any outside director about her concerns.  On February 19, 2015, Ms.

McAlister withdrew her complaint.  <u>McAlister</u> v. <u>Am. Realty Capital Props., Inc.</u>, No. 162499/-

2014 (N.Y. Sup. Ct. N.Y. Co.) (Ex. M) (court docket).

On March 2, 2015, ARCP filed its financial results for the fiscal period ended

September 30, 2014 and announced restatements of financial results for the fiscal year 2013 and

the fiscal periods ended March 31, 2014 and June 30, 2014.  Compl. ¶¶ 102-104, 116-121.

### C.    <u>Plaintiff's Demand on ARCP's Board</u>

In letters dated November 17, 2014 and April 22, 2015, plaintiff demanded that

ARCP's board "'take action,'" "'institute[e] . . . an action for breach of fiduciary duty against

any and all persons who are responsible'" and "'seek appropriate remedial measures by obtain-

ing damages from all persons who were unjustly enriched by permitting ARCP to engage in the

wrongful activity or otherwise committed waste.'"  <u>Id</u>. ¶¶ 115, 116, 122 & Exs. A, G.

### D.    <u>The ARCP Board's Refusal of Plaintiff's Demand</u>

On January 12, 2015, ARCP's Board discussed plaintiff's demand and agreed to

focus first on completing the audit committee investigation and restatement.  <u>Id</u>. ¶ 127 & Ex. I at

3.  On March 3, 2015, following the completion of ARCP's restatement on March 2, 2015 (<u>id</u>. ¶

102), the ARCP Board again discussed plaintiff's demand and determined to retain the law firm

Saul Ewing LLP as independent counsel to advise the board in connection with plaintiff's

demand.  <u>Id</u>. ¶ 128 & Ex. I at 3.  It is undisputed that Saul Ewing does not "represent ARCP, any

of its affiliates, or any of the individuals against whom the Demand requests action be taken"

except in connection with this engagement.  <u>Id</u>. Ex. I at 3.

On April 20, 2015, the ARCP Board met with Saul Ewing to discuss plaintiff's

demand.  <u>Id</u>. ¶ 128 & Ex. I at 3.  At that time, the Board consisted of six directors, three of

whom, Messrs. Andruskevich, Frank (who joined the Board in July 2014, just weeks before the accounting issues underlying this litigation were brought to the attention of the audit committee) and Stanley, served as outside, non-management directors during the alleged wrongdoing, and three of whom, Hugh R. Frater (an outside, non-management director and ARCP's new non-executive chairman), Julie G. Richardson (an outside, non-management director) and Glenn J. Rufrano (ARCP's new chief executive officer) joined the Board on April 1, 2015, after the wrongdoing alleged in plaintiff's complaint.  Id. ¶¶ 17-19 & n.1, 126; see also Mar. 16, 2015 Form 8-K at 2 (Ex. I); Apr. 7, 2015 Form 8-K at 2 (Ex. K).

The Board received reports over the course of several hours from Weil, Gotshal & Manges LLP (counsel to the Audit Committee) and from Milbank, Tweed, Hadley & McCloy LLP (counsel to ARCP) concerning the Audit Committee investigation and the ongoing federal securities litigation and investigations currently being conducted by the SEC, the United States Attorney's Office for the Southern District of New York and the State of Massachusetts.  Compl. ¶ 128 & Ex. I at 3-4.  Discussion and questions followed, and the Board then met separately with Saul Ewing.  Id. Ex. I at 4.

On May 21, 2015, the Board met again with Saul Ewing to further discuss plaintiff's demand.  Compl. ¶ 130 & Ex. I at 4.  A consensus emerged in favor of refusing plaintiff's demand, and the Board asked Saul Ewing to draft a letter to plaintiff's counsel explaining the Board's rationale for refusing plaintiff's demand for the Board to consider before it made its final determination with respect to the demand.  Id. ¶ 130 & Ex. I at 4-5.  On June 11, 2015, the Board met to consider the draft letter prepared by Saul Ewing.  Id. Ex. I at 5.  Following further discussion, the Board voted unanimously to refuse plaintiff's demand and directed Saul Ewing to finalize the letter the Board had reviewed and deliver it to plaintiff's counsel.  Id.

WEIL:\95440221\1\14807.0004

Saul Ewing's six-page, single-spaced letter states in detail the reasons for the

Board's conclusion that pursuit of plaintiff's claims would not serve the best interests of ARCP

and its shareholders at this time  The letter noted the following factors weighed by the Board:

- The Board believed, with the advice of counsel, that, even if the allegations in plaintiff's demand had merit, it would not be in the best interests of ARCP and its shareholders to initiate litigation at this time because any such action might compromise ARCP's position in the ongoing securities litigation and government investigations.

- The Board believed, with the advice of counsel, that developments in the securities litigation and the government investigations will further inform the Board concerning the facts underlying the claims in plaintiff's demand, and the resolution of these proceedings would be important to consider in determining whether to pursue some or all of the claims in plaintiff's demand.

- The Board was advised by counsel that ample time remains before statutes of limitations would run on the claims ARCP might bring.

- The Board considered, with the advice of counsel, the likelihood of success in asserting the claims alleged in plaintiff's demand, particularly in light of ARCP's charter provision exculpating directors and officers from personal liability for money damages unless the director or officer received an improper personal benefit or is found to have committed active and deliberate dishonesty resulting in a final judgment adverse to the director or officer.

- The Board considered, with the advice of counsel, the cost of pursuing the claims in plaintiff's demand, including fees that would be incurred by both ARCP and the individual defendants who would be entitled to seek indemnification under ARCP's charter.

- The Board considered, with the advice of counsel, that ARCP could have obligations to advance defense costs to directors and officers sued by ARCP.

- The Board considered the impact on corporate resources, such as the time ARCP's management would devote to pursuing the claims alleged in plaintiff's demand.

- The Board noted the remedial measures undertaken by ARCP that the Board believes address any future concerns regarding the potential for the conduct underlying plaintiff's demand to reoccur.

Id. at 4-5.  The letter stated that the Board would continue to monitor this matter along with the

ongoing securities litigation and the government investigations.  Id. at 6.

E.    **Plaintiff's Complaint**

On July 31, 2015, plaintiff commenced this action, alleging that her demand was wrongfully refused.  Compl. ¶¶ 114-151.  Plaintiff asserts derivative claims in the name of ARCP arising out of the alleged wrongdoing for breach of fiduciary duty (Count I), abuse of control (Count II), unjust enrichment (Count III), and violations of Section 14 of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder in connection with proxy statements issued by ARCP (Count IV).  Compl. ¶ 167.

### ARGUMENT

### PLAINTIFF LACKS STANDING BECAUSE SHE DOES NOT ALLEGE PARTICULARIZED FACTS SHOWING THAT HER DEMAND WAS WRONGFULLY REFUSED

A.    **Federal Rule Of Civil Procedure 23.1 Requires Particularized Pleading**

Federal Rule of Civil Procedure 23.1 requires that a plaintiff in a stockholder derivative action "state <u>with particularity</u> . . . any effort by the plaintiff to obtain the desired action from the directors . . . and . . . <u>the reasons for</u> not obtaining the action."  Fed. R. Civ. P. 23.1(b)(3) (emphasis added).  This "'rule of pleading'" governs "'the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question,' but 'the adequacy of those efforts is to be determined by state law.'"  <u>Halebian</u> v. <u>Berv</u>, 590 F.3d 195, 206 n.7 (2d Cir. 2009) (citation omitted).  Thus, "the substance of the demand requirement is a function of state law."  <u>Espinoza</u> v. <u>Dimon</u>, 797 F.3d 229, 234 (2d Cir. 2015) (citation omitted).  ARCP is a Maryland corporation, so Maryland law applies.  <u>Id</u>.

"'Because Rule 23.1 requires that plaintiffs make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6).'"  <u>In re Am. Int'l Grp., Inc. Deriv. Litig.</u>, 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010), <u>aff'd</u>, 415 F. App'x 285 (2d Cir. 2011) (citation omitted).  "Unlike

9

a 12(b)(6) motion, a motion to dismiss pursuant to Rule 23.1 'is not intended to test the legal suf-

ficiency of the plaintiff's substantive claim.  Rather, its purpose is to determine who is entitled,

as between the corporation and its shareholders, to assert the plaintiff's underlying substantive

claim on the corporation's behalf.'"  <u>Serafin</u>, 2015 WL 3901646, at *2 (citation omitted).

    **B.**    **A Board's Decision With Respect To A Shareholder Demand Is Protected By The Business Judgment Rule And The Md. Corps. Code § 2-405.1(c) Presumption That Directors Act In The Best Interests Of The Corporations They Serve**

A derivative claim brought on behalf of a corporation "belongs to the corpora-

tion."  <u>Boland</u>, 31 A.3d at 548 (quoting <u>Werbowsky</u>, 766 A.2d at 133).  "[T]he 'corporation is

the real party in interest'" and "'[t]he substantive claim belongs to the corporation.'"  <u>Id.</u> (quot-

ing <u>Werbowsky</u>, 766 A.2d at 133; additional citation omitted).  "[T]he shareholder is only a

nominal plaintiff."  <u>Werbowsky</u>, 766 A.2d at 133 (citation omitted).

"Thus, the common law developed a requirement that the derivative plaintiff, at

the outset, seek a corporate decision on whether to maintain a lawsuit, a prerequisite known as

the 'demand requirement.'"  <u>Boland</u>, 31 A.3d at 549.  "The demand requirement <u>is</u> important."

<u>Werbowsky</u>, 766 A.2d at 144 (emphasis in original).  It reflects the "'basic principle of corporate

governance that the decisions of a corporation – including the decision to initiate litigation –

should be made by the board of directors or the majority of shareholders.'"  <u>Kamen</u>, 500 U.S. at

101 (citation omitted)); <u>see also</u> <u>Boland</u>, 31 A.3d at 549 ("decisions regarding the corporation's

management" include, "[i]n a derivative lawsuit, . . . a corporate decision on whether the case

should proceed"); <u>Werbowsky</u>, 766 A.2d at 133 ("the business and affairs of a corporation are

managed under the direction of its board of directors" and "any exercise of the corporate power

to institute litigation and the control of any litigation to which the corporation becomes a party

rests with the directors or, by delegation, the officers they appoint").  It "'afford[s] the directors

an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in

the corporation in the belief that its best interests will be promoted by not insisting on such

right.'"" Kamen, 500 U.S. at 96 (citations omitted).  It "protect[s] the directors' prerogative to

take over the litigation or to oppose it."  Id. at 101 (citations omitted).

"Judicial review of a demand refusal is subject to the business judgment rule."

Boland, 31 A.3d at 549; Werbowsky, 766 A.2d at 144 ("[i]f a demand is made and refused, that

decision, and the basis for it, can be reviewed by a court under the business judgment rule stan-

dard"); see also Seidl v. Am. Century Cos., 799 F.3d 983, 990 (8th Cir. 2015) ("[t]he Court of

Appeals of Maryland, the highest court of the state, has affirmed that the business judgment rule

applies to a board's decision to refuse a shareholder's demand"); Serafin, 2015 WL 3901646, at

*3 (quoting Werbowsky); George Wasserman & Janice Wasserman Goldsten Family LLC v.

Kay, 14 A.3d 1193, 1208 (Md. Ct. Spec. App. 2011) ("[t]o determine whether the board wrongly

refused to bring suit, courts review the board's investigation under the strict business judgment

rule"); Bender, 917 A.2d at 152 ("[i]n determining whether a demand was wrongly refused, a

court reviews the board's investigation under the business judgment rule"); Oliveira, 2014 WL

7780336, at *8 ("[i]n reviewing the board's decision to refuse a demand, courts must utilize 'the

business judgment rule'").

"In Maryland, the business judgment rule is codified in Maryland Code . . .

Section 2-405.1 of the Corporations and Associations Article."  Boland, 31 A.3d at 548 n.24.

Boland states:

> That section assigns the following duties to directors of a corporation:
>
> (a)    In general. — A director shall perform his duties as a director, including his duties
> as a member of a committee of the board on which he serves:
>
> (1)  In good faith;

       (2)   In a manner he reasonably believes to be in the best interests of the corporation; and

       (3)   With the care that an ordinarily prudent person in a like position would use under similar circumstances.

That section further provides that "[a] person who performs his duties in accordance with the standard provided in this section shall have the immunity from liability [arising from performance of those duties]" and that "[a]n act of a director of a corporation is presumed to satisfy the standards of . . . this section."

Id. (quoting Md. Corps. & Ass'ns Code §§ 2-405.1(a), (c), (e)) (emphasis added).

The business judgment rule is thus "'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  Id. at 548 (quoting Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).  This presumption "insulates 'the business decisions made by the director[s] from judicial review.'"  Id. (quoting Shenker, 983 A.2d at 424); see also Shenker, 983 A.2d at 424 ("[i]t is 'well established that courts generally will not interfere with the internal management of a corporation'") (citations omitted); id. ("the business judgment rule applies to all decisions regarding the corporation's management") (citation omitted).  "The burden is on the party challenging the decision to establish facts rebutting the presumption."  Boland, 31 A.3d at 548.  In accordance with the presumption, a shareholder "must show more than mere suspicions and must state a claim in particular, rather than conclusory, terms." Bender, 917 A.2d at 152-53, quoted in Oliveira, 2014 WL 7780336, at *8.

Courts construing Delaware law – to which Maryland courts "ordinarily look for guidance" due to "Delaware's acknowledged leadership in developing a coherent body of corporate law" (Shenker, 983 A.2d at 427) – have noted that "[t]he pleading burden imposed by this standard is a heavy one."  Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti, 2015 WL 2270673, at *24 (Del. Ch. May 8, 2015); see also In re Boston Scientific

Corp. S'holders Litig., 2007 WL 1696995, at *4 (S.D.N.Y. June 13, 2007) ("[i]n order to survive

a motion to dismiss, a plaintiff must . . . sustain" a "'considerable burden'") (Hellerstein, J.)

(quoting RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir. 1991)).

        "'Few, if any, plaintiffs surmount [this] obstacle.'" Espinoza, 797 F.3d at 234

(quoting RCM, 928 F.2d at 1328); see also Gamoran v. Neuberger Berman, LLC, 2013 WL

1286133, at *5 (S.D.N.Y. Mar. 29, 2013), aff'd, 536 F. App'x 155 (2d Cir. 2013); In re Merrill

Lynch & Co. Sec., Deriv. & ERISA Litig., 773 F. Supp. 2d 330, 345 (S.D.N.Y. 2011), aff'd sub

nom. Lambrecht v. O'Neal, 504 F. App'x 23 (2d Cir. 2012); Boston Scientific, 2007 WL

1696995, at*4 (each also quoting RCM).  And, as this Court stated in Boston Scientific, "[f]ed-

eral courts routinely evaluate allegations of wrongful refusal of shareholder demand at the plead-

ings stage and in the context of a motion to dismiss." Boston Scientific, 2007 WL 1696995, at

*5; see also Oliveira, 2014 WL 7780336, at *6-14 (granting motion to dismiss action alleging

wrongful refusal of demand).  "[A]ffording discovery, and allowing the case to proceed beyond

the pleadings stage, would frustrate the purposes behind . . . substantive law regarding demand-

refusal, and its recognition that the determination of whether or not to pursue litigation is a busi-

ness decision entitled to deference under the business judgment rule." Boston Scientific, 2007

WL 1696995, at *5 (citation omitted). "'If Courts would not respect the directors' decision not to

file suit, then demand would be an empty formality.'" Spiegel v. Buntrock, 571 A.2d 767, 777-

78 (Del. 1990) (citation omitted)[*]

---

[*] Judge Sullivan's decision in Kautz v. Sugarman, 2011 WL 1330676 (S.D.N.Y. Mar. 31, 2011),
denying a motion to dismiss a wrongful refusal claim under Maryland law "pending limited
discovery on the reasonableness of the Board's investigation," is one of the "few if any cases"
that has surmounted the demand requirement.  The board in Kautz refused to consider a demand
because the shareholder "repeatedly refused" to provide a board committee formed to consider
the demand "proof of her continuous ownership of . . . shares." Id. at *5.  The court declined "to
adopt a bright-line rule that would require a shareholder to prove his or her continuous owner-

WEIL:\95440221\1\14807.0004

C.      **Plaintiff's Allegations Do Not Overcome the Business Judgment Rule and Md. Corps. Code § 2-405.1(c) Presumption**

1.      **ARCP's Board Does Not Lack Disinterestedness And Independence**

Plaintiff alleges that three of six members of ARCP's Board – Messrs. Andrus-kevich, Frank and Stanley – were "interested in the outcome of investigation" as "targets" and "tasked with investigating allegations of their own wrongdoing" and are "defendants in the securities class action" and face "potentially ruinous liability."  Compl. ¶¶ 135-37; see also id. ¶¶ 8, 17-19.  This Court's decision dismissing an action by shareholders who did not make a demand rejected this very claim, holding that none of ARCP's outside, non-management direc-tors "is alleged to have participated in the fraudulent conduct, so there is no reason to believe that any would be 'personally interested in the outcome of any [ ] inquiry.'"  Serafin, 2015 WL 3901646, at *3 (citation omitted).

This Court's holding in Serafin followed well-settled law holding that directors do not lack disinterestedness and independence because they are named as defendants in a lawsuit. See, e.g., Werbowsky, 766 A.2d at 143-44; Brehm v. Eisner, 746 A.2d 244, 257 n.34 (Del. 2000); Grimes v. Donald, 673 A.2d 1207, 1216 n.8 (Del. 1996); Aronson, 473 A.2d at 817. Adding the words "fac[e] potentially ruinous liability" to the allegation (Compl. ¶ 137) does not alter this principle.  See, e.g., Kautz v. Sugarman, 456 F. App'x 16, 21 (2d Cir. 2011) (directors do not lack disinterestedness and independence because they face "potentially 'ruinous' financial liability"); Seidl v. Am. Century Cos.,713 F. Supp. 2d 249, 260-61 (S.D.N.Y. 2010) (directors do

---

ship of shares as a prerequisite to making demand."  Id. at *6.  This case is easily distinguished, as ARCP's Board did not refuse to consider plaintiff's demand; it is, in fact, undisputed that ARCP's Board did consider plaintiff's demand.

The Second Circuit affirmed a different ruling in Kautz, involving only a related case brought by a different shareholder who contended that a demand was excused – a contention that Judge Sullivan and the Second Circuit both rejected.  Kautz, 2011 WL 1330676, at *8-10, aff'd, 456 F. App'x 16, 17-21 (2d Cir. 2011).

14

not lack disinterestedness and independence because plaintiff alleges that "directors will be exposed to civil and criminal liability"), aff'd, 427 F. App'x 35 (2d Cir. 2011).  Any other rule would excuse demand any time directors face shareholder derivative and securities claims – a "bootstrap argument" that would "effectively abrogate" the demand requirement.  Aronson, 473 A.2d at 818; see also Lewis v. Graves, 701 F.2d 245, 249 (2d Cir. 1983) (rejecting such a rule because it would allow plaintiffs to "circumvent the demand requirement merely by naming as defendants all members of the derivative corporation's board" – a "transparent litigation tactic" that "is like sleight of hand that is slower than the eye").

Plaintiff's allegation that Messrs. Andruskevich, Frank and Stanley lack disinterestedness and independence because they served on Board committees charged with overseeing the alleged wrongdoing (Compl. ¶¶ 17-19, 37-38, 136) likewise fails.  Maryland law is clear: "Simply being members of the board or the compensation committee and participating in the decision-making do not suffice."  Weinberg v. Gold, 838 F. Supp. 2d 355, 360 (D. Md. 2012) (Maryland law); see also Caston v. Hoaglin, 2009 WL 3078214, at *12 (S.D. Ohio Sept. 23, 2009) (Maryland law, "[m]ere membership on the Board or in a committee is insufficient"). Committee membership thus does not "make . . . directors interested for demand purposes."  In re Pfizer Inc. Deriv. Sec. Litig., 503 F. Supp. 2d 680, 686 (S.D.N.Y. 2007), aff'd, 307 F. App'x 590, 594 (2d Cir. 2009).  Such claims are "contrary to well-settled" law.  Wood v. Baum, 953 A.2d 136, 142 (Del. 2008).

The notion that Messrs. Andruskevich, Frank and Stanley lack disinterestedness and independence is also belied by their actions, all alleged by plaintiff or a matter of public record.  See Aronson, 473 A.2d at 816 (noting importance of considering "the care, attention and sense of individual responsibility to the performance of one's duties" in assessing independence),

15

quoted in Beam v. Stewart, 845 A.2d 1040, 1055 n.45 (Del. 2004).  These actions included:

- Commencing an Investigation of Alleged Wrongdoing.  Plaintiff alleges that "'[t]he Audit Committee promptly initiated an investigation,'" "'with the assistance of independent counsel and forensic experts.'"  Compl. ¶ 79.

- Public Announcement of Misstated Financial Reports.  Plaintiff alleges that ARCP publicly announced that due to the discovery of "'intentional' accounting errors" ARCP's financial filings "should no longer be relied upon."  Id. ¶¶ 3, 79.

- Self-Reporting to SEC.  ARCP's directors "previewed for the SEC" the information contained in ARCP's October 29, 2014 Form 8-K.  Mar. 2, 2015 ARCP Form 10-K/A at 6 (Ex. H).

- Cooperation with Regulatory Investigations.  "The Audit Committee and the Company are cooperating with . . . regulators in their investigations."  Id.

- Remediation of Material Weaknesses.  ARCP's directors "intend[ ] to make the necessary changes to its control environment to remediate all control deficiencies that are identified as a result of the ongoing investigation and the restatement process."  Compl. ¶ 79; see also Mar. 30, 2015 ARCP Form 10-K at 73-75 (three-page single-spaced section entitled "Remediation") (Ex. J).

- Resignations of Senior Officers.  Plaintiff alleges that ARCP's directors oversaw the departure from ARCP of its executive chairman and founder, Mr. Schorsch, and four senior officers – Messrs. Kay and Block, Ms. Beeson and Ms. McAlister.  Compl. ¶¶ 5, 6, 17, 20, 26, 29, 30, 79, 81, 93, 98, 104, 151.  Plaintiff does not (and cannot) allege that ARCP agreed to release any claims in connection with the resignations of these individuals.

- Unwinding of Relationships with Mr. Schorsch.  Plaintiff alleges that ARCP's directors commenced an "'unwinding all of its relationships with entities in which Mr. Schorsch maintains an executive or director-level role or is a significant stockholder.'"  Id. ¶ 93.

- Termination of Office Lease and Recovery of $8.5 Million.  Plaintiff alleges that ARCP's directors negotiated the termination of a lease of an office building owned by Mr. Schorsch and his affiliates and "'recovered consideration valued at approximately $8.5 million" for payments made by ARCP for certain building improvements.  Id. ¶ 102.

- Agreements to Forego Compensation.  Plaintiff alleges that ARCP's directors secured agreements from Messrs. Schorsch and Block "in connection with their resignations from the Company" to relinquish certain equity awards.  Id. ¶ 104.

- Securing Release of Potential Liabilities to Mr. Schorsch.  ARCP's directors secured Mr. Schorsch's agreement "to relinquish[ ] and forfeit[ ]" 1,000,000

16

restricted shares, and his agreement that his retention of 1,000,000 additional restricted shares was "in full satisfaction of any amounts that are currently owed to him or that may become owed to him in the future" under his employment agreement.  Dec. 15, 2014 Form 8-K at 3 & Ex. 99.1 (Ex. C).

- <u>Securing "Clawback" from Mr. Schorsch in the Event of an Adverse Litigation Finding or Admission</u>.  ARCP's directors secured an agreement by Mr. Schorsch to return the 1,000,000 restricted shares he did not relinquish if there is a court "finding that Mr. Schorsch breached his fiduciary duty of loyalty" or "a finding or admission of fraud or misconduct by Mr. Schorsch in connection with any regulatory, administrative or other proceeding" relating to his "responsibilities as an officer or director" of ARCP.  Dec. 15, 2014 Form 8-K at 3 & Ex. 99.1 (Ex. C);

- <u>Commencing Litigation Against Schorsch Entity</u>.  Plaintiff alleges that ARCP's directors authorized a lawsuit against RCS Capital Corporation, which plaintiffs characterize as "[a]nother Schorsch Company," regarding RCS's decision to "terminate its agreement to acquire Cole Capital in a transaction . . . valued at approximately $700 million."  Dec. 4, 2014 ARCP Form 8-K (Ex. B); Compl. ¶¶ 88, 90.  The lawsuit was settled with ARCP keeping Cole Capital and RCS making a $60 million payment to ARCP.  Dec. 4, 2014 Form 8-K (Ex. B).

Messrs. Andruskevich, Frank and Stanley plainly demonstrated their willingness to act in an appropriate manner as ARCP directors.

In light of the disinterestedness and independence of Messrs. Andruskevich, Frank and Stanley, plaintiff's allegations that Mr. Rufrano (Compl. ¶¶ 135, 137) and Saul Ewing (Compl. ¶ 140) lacked independence from Messrs. Andruskevich, Frank and Stanley also fail to taint the board's decision-making process.  "[W]ithout an interested director the independence of the remaining directors need not be examined."  <u>In re Dow Chem. Co. Deriv. Litig.</u>, 2010 WL 66769, at *8 (Del. Ch. Jan. 11, 2010).  The same is true with respect to a law firm advising disinterested and independent directors.

### 2.    The Board's Determination To Refuse The Demand For Reasons Other Than The Merits of Plaintiff's Claims Is Protected By the Business Judgment Rule

Plaintiff contends that refusing a demand "for reasons unrelated to the merits of the claims" is wrongful and that "[t]he rejection of the Demand in the absence of information"

about "whether the claims in the Demand even had merit" was "not an informed act and is not entitled to business judgment protection."  Compl. ¶¶ 114, 141; see also id. ¶¶ 130, 138, 145, 147, 148, 149, 150.  Under well-settled law, it is not enough simply to allege that a board's investigation of a demand "failed to consider whether specific, individual[s] . . . breached their . . . dut[ies]."  Halpert Enters. v. Harrison, 2007 WL 486561, at *5 (S.D.N.Y. Feb. 14, 2007), aff'd, 2008 WL 4585466 (2d Cir. Oct. 15, 2008).  "[N]o caselaw support[s] that such consideration is a requirement."  Id.

In considering a demand, "'[t]he focus . . . is not on the merits of the plaintiffs' claims, but on whether maintenance of the suit would be in the company's best interest'" – "'even if a derivative suit may ultimately be successful.'"  Boland, 31 A.3d at 570 (citation omitted).  "A board may in good faith refuse a shareholder demand to begin litigation even if there is substantial basis to conclude that the lawsuit would eventually be successful on the merits," and "[i]t is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation or harm its long-term strategic interests."  In re INFOUSA, Inc. S'holders Litig., 953 A.2d 963, 986 (Del. Ch. 2007), quoted in Ironworkers, 2015 WL 2270673, at *27.  "Conscientious managers may conclude that legal action is unjustified because not meritorious, or because it would subject the firm to injury."  Kamen, 939 F.2d at 462.

Accordingly, a board that determines that pursuit of a lawsuit would harm the best interests of the corporation even if "successful" need not  focus on the merits of the lawsuit – especially when the statute of limitations has not run its course and the merits of the claim can be considered at a later time.  This is precisely the quintessential business judgment made by ARCP's Board, balancing "a complex array of costs (both monetary and otherwise), potential

18

benefits, and the risk of uncertain outcomes" (<u>Ironworkers</u>, 2015 WL 2270673, at *25), deter-

mining that "two considerations" – (1) "'the likely negative impact'" on the securities litigation

and governmental investigations "of pursuing the claims 'assuming only for the sake of argu-

ment that the Claims have merit,' and (2) the 'likelihood' that the current litigation and govern-

mental investigations would yield more information concerning the claims before the statute of

limitations expired" – "'would outweigh any considerations in favor of pursuing the Claims at

this time.'"  Compl. ¶ 130.  As explained in <u>In re Consumers Power Co. Deriv. Litig.</u>, 132 F.R.D.

455, 485-86 (E.D. Mich. 1990) (emphasis added):

> In arriving at a decision on whether to bring an independent action against its
> officers and directors, <u>two areas of consideration are relevant</u>: (1) <u>Are the merits
> of the case strong enough</u> to make it likely that the corporation could maintain a
> successful action against its officers and directors for wrongdoing?  If there is not
> a winnable lawsuit, a corporation should reject a derivative stockholder's demand.
> (2) <u>Even if there is a meritorious suit against the directors of a corporation, should
> such an action be maintained in light of other factors?  In other words, once other
> factors are evaluated, might bringing the derivative action work a potentially
> greater harm to the corporation than any possible gain from that action</u>?
>
> <u>In the present case, the special committee proceeded with the assumption that the
> answer to question (1) was that they could proceed successfully against their
> directors and obtain a judgment or settlement. Accordingly, they focused their
> time and effort on consideration of decision (2)</u>.  After weighing the factors rele-
> vant to that decision, the special committee determined that litigation was not in
> the best interest of Consumers Power.
>
> <u>Such a process, that hypothetically assumes the outcome on one issue as a deci-
> sion-making expedient to focusing attention to another necessary issue, is a com-
> mon and acceptable method in decision theory for performing cost-benefit anal-
> ysis</u>.  If such a decision-making process avoids areas of attack on the decision for
> bias or a lack of thoroughness, if it avoids enormous time and expense, and if it
> avoids the risk of public disclosure or misuse of confidential information, strate-
> gies and opinions, <u>it is a method that reasonable board members could find
> acceptable</u>.

Courts, of course, routinely employ the same decision-making technique.  <u>See</u>, <u>e.g.</u>, <u>Morales-</u>

<u>Santana</u> v. <u>Lynch</u>, 792 F.3d 256, 269 (2d Cir. 2015) ("assuming for the sake of argument").

   Judge Rakoff's and the Second Circuit's decisions in <u>In re Merrill Lynch & Co.</u>

19

Sec., Deriv. & ERISA Litig., 773 F. Supp. 2d 330 (S.D.N.Y. 2011), aff'd sub nom. Lambrecht v. O'Neal, 504 F. App'x 23 (2d Cir. 2012), are directly on point, rejecting a plaintiff's claim that Bank of America's board wrongfully refused a shareholder's demand involving investments by Merrill Lynch (before Bank of America acquired Merrill Lynch) in subprime securities because the board "undertook no investigation of her claims."  773 F. Supp. 2d at 347.

Judge Rakoff pointed to the consideration by Bank of America's board of "the potential adverse effect of pursuing the claims" as demanded by the shareholder "on the defenses of [Bank of America]'s wholly owned subsidiary, Merrill Lynch" in pending securities and ERISA litigation and governmental inquiries and the board's conclusion that "commencing the litigation outlined in [plaintiff's] letters would impair Merrill Lynch's defenses in these various proceedings"  because (1) "plaintiffs in the securities and ERISA actions would likely argue that Merrill Lynch's assertion of such a claim constitutes an admission of liability by Merrill Lynch," (2) "to prevail against the former Merrill Lynch officers and directors . . . Merrill Lynch would need to allege and prove facts similar to those that the securities and ERISA plaintiffs have been trying to establish in their cases," and (3) "the various governmental agencies that have made inquiries . . . would likely seek to use any litigation papers filed by Merrill Lynch against its former officers and directors against Merrill Lynch itself."  Id. at 348.  The Second Circuit affirmed, stating that "[plaintiff] failed to demonstrate that the Board either acted in bad faith or conducted an unreasonable investigation," and pointing, as Judge Rakoff had pointed, to the threat Bank of America faced through "the possible compromise of pending litigation and ongoing government inquiries."  Lambrecht, 504 F. App'x at 27-28.

Other courts have similarly upheld board decisions to refuse shareholder demands without reaching a conclusion on the merits of the claims in light of the potential impact of pur-

suing the claims on the corporation's defense of pending litigation and regulatory investigations. See, e.g., Furman v. Walton, 320 F. App'x 638, 640 (9th Cir. 2009) (demand not wrongfully refused because plaintiff "cannot refute th[e] compelling business purpose" that "bringing suit as per Furman's demand might have constituted a harmful admission in litigation pending against Wal-Mart"); Morefield v. Bailey, 959 F. Supp. 2d 887, 895, 900 (E.D. Va. 2013) (demand not wrongfully refused where "the  Board [allegedly] failed to collect . . . information necessary to make an informed decision" and instead "cited pending securities litigation" in refusing plaintiff's demand because "[t]hese considerations . . . simply cannot be ignored when determining the validity of the Board's exercise of business judgment").

### 3. Plaintiff's Remaining Claims Also Fail

Plaintiff's remaining objections also do not overcome the business judgment rule presumption.

Plaintiff questions the Board's determination to focus first on completing the investigation required to gauge the problem at hand and restate financial reports and then turn to plaintiff's demand.  Compl. ¶ 127.  Having announced on October 29, 2014 that certain of ARCP's financial statements and other financial information could "no longer be relied upon" (id. ¶ 79), it was imperative that the Board issue restated financial reports and become current with respect to its financial filings required by the SEC as quickly as possible.  ARCP faced a risk of delisting by NASDAQ and potential defaults on billions of dollars of debt that could be called at any moment.  See Nov. 18, 2014 Form 8-K, at 1-2 (Ex. A) (reporting receipt of NASDAQ delinquency notice); Nov. 18, 2014 ARCP Form 8-K, at 1, Dec. 30, 2014 Form 8-K, at 2, Jan. 28, 2015 Form 8-K, at 2-3, Feb. 13, 2015 Form 8-K, at 2, and Feb. 26, 2015 Form 8-K, at 2 (Exs. A, D-G) (reporting negotiation of consents and waivers with lenders and noteholders requiring the delivery of financial reports by March 2, 2015).  Focusing first on the immediate

21

need to file financial reports in order to ensure the continued ability of investors to buy or sell ARCP stock on a national exchange and avoid a calamitous default on billions of dollars of debt prior to turning to potential claims in a shareholder demand which might at least in part turn on the facts uncovered in connection with completing the restatement was plainly a rational business judgment by directors who faced an enormous task that required over 60 audit committee and Board meetings between September 12, 2014 and April 15, 2015 (Compl. Ex. I at 2) and who obviously had to prioritize their time.  See Boston Scientific, 2007 WL 1696995, at *6 ("'[c]orporate directors normally have only limited available time to deliberate, and a determination of what matters will (and will not) be considered must necessarily fall within the board's discretion'") (quoting Levine v. Smith, 591 A.2d 194, 214 (Del. 1991)).

Plaintiff questions the Board's determination not to report to plaintiff's counsel in a manner that would "document the procedures it employed in its investigation or its reasoning" and offer "evidence" with respect to "who, if anyone, the Board interviewed . . . or what documents, if any, it reviewed."  Compl. ¶ 142.  This claim fails on the law and on the facts.

On the law, "there is no prescribed procedure or form a Board must follow when responding to a demand letter."  Merrill Lynch, 773 F. Supp. 2d at 349; see also Levine, 591 A.2d at 214 ("there is obviously no prescribed procedure that a board must follow"), quoted in Ironworkers, 2015 WL 2270673, at *26 n.254 and Boston Scientific, 2007 WL 1696995, at *5. "An investigating board generally is under no obligation to make use of any particular investigative technique."  Halpert Enters. v. Harrison, 2008 WL 4585466, at *2 (2d Cir. Oct. 15, 2008). On the facts, the Board's letter to plaintiff's counsel did "document" the Board's procedures. See Compl. Ex. I at 3-5 (documenting the Board's discussions concerning the demand on January 12, March 3, April 20 (when "[o]ver the course of several hours, the Board received reports

from Weil [as counsel to the audit committee] and [Milbank], as outside counsel to ARCP, concerning the Audit Committee Investigation and ongoing federal securities litigation and investigations being conducted by the SEC, the United States Attorney's Office for the Southern District of New York, and the Securities Division of the Secretary of the Commonwealth of Massachusetts" and "discussed the demand with its counsel without any other law firms present"), May 21 and June 11, and including three lengthy paragraphs describing the Board's reasoning).

Plaintiff questions why interviews were not conducted with respect to the merits of the claims underlying the demand.  This claim, too, fails on the law and on the facts.  On the law, "'[i]n any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ.'"  Halpert, 2008 WL 4585466, at *2 (quoting Mt. Moriah Cemetery v. Moritz, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991), aff'd, 599 A.2d 413 (Del. 1991); see also Ironworkers, 2015 WL 2270673, at *26 n.55 (also quoting Mt. Moriah). On the facts, there was no need to conduct interviews concerning the merits of plaintiff's claims in light of the Board's judgment that even if the claims had merit "'any considerations in favor of pursuing the Claims at this time'" were outweighed by "'the likely negative impact on the Ongoing Litigation and Government Investigations' of pursuing the claims" and the "'likelihood' that the current litigation and governmental investigations would yield more information concerning the claims before the statute of limitations expired."  Compl. ¶ 130.

Plaintiff claims that "it is unknown in what respect the Board believed the claims would have a negative impact on the Company's other legal problems."  Compl. ¶ 148.  This reality of derivative litigation is far from "unknown."  See Canty v. Day, 13 F. Supp. 3d 333, 343 (S.D.N.Y. 2014) (pursuing derivative claims on behalf of the corporation during the pendency of related litigation against the corporation "'may well compromise the corporation's position on

the merits, thereby causing or exacerbating precisely the harm that the plaintiff ostensibly seeks to remedy'"), aff'd, 599 F. App'x 20 (2d Cir. 2015) (citation omitted); In re Massey Energy Co. Deriv. & Class Action Litig., 2011 WL 2176479, at *2, 23 (Del. Ch. May 31, 2011) (describing "myriad of rational business reasons" why disinterested directors might determine not to pursue claims that "could expose the entity, and thereby indirectly its stockholders, to severe financial harm in the form of large judgments").  And, the Board's letter refusing the demand explicitly states exactly in "what respect the Board believed the claims would have a negative impact on the Company's other legal problems" (Compl. ¶ 148): such action "might jeopardize defenses that ARCP could raise in the Ongoing Litigation and Governmental Investigations" and "might well compromise ARCP's position . . . and expose ARCP and its stockholders to significant impairment in the value of their ARCP stock."  Compl. Ex. I at 5.

Plaintiff's final claim, that the Board did not "consider whether the Company might suffer increased harm by delaying to bring the claims" (Compl. ¶ 127), is also meritless. The Board plainly considered the timing for filing claims and plainly made a business judgment that the potential benefits of waiting to file claims outweighed the potential benefit of filing claims now that could be filed, if the Board deemed it appropriate, at some later time.  The Board may not have attached the same weight to every consideration concerning the appropriate time, if any, for ARCP to pursue the claims plaintiff wants ARCP to pursue, but that difference in business judgment does not overcome the heavy burden plaintiff faces in order to overcome the presumption of the business judgment rule and Md. Corps. Code § 2-405.1(c).

At bottom, plaintiff disagrees with the ARCP Board's business judgment with respect to whether pursuit now of the claims asserted in this litigation – for which the statute of limitations will not expire anytime soon – will harm the corporation in pending securities litiga-

24

tion against the corporation and in government investigations, and whether more will be known concerning the strength and value of the claims once the litigation against the corporation and the government investigations are tested in the "crucible of litigation." As plaintiff would have it, the Board's business judgment not to sue at this time is "baseless" and "not . . . rational." Compl. ¶¶ 130, 131; see also id. ¶¶ 131 n.5, 141, 146. The law "does not permit a plaintiff to overcome the business judgment rule simply by asserting that the substance of a board of director's decision was wrong." Merrill Lynch, 773 F. Supp. 2d at 346, quoted in Steinberg v. Mozilo, 2015 WL 5724753, at *5 (S.D.N.Y. Sept. 29, 2015). "The question is not whether the conclusion was wrong." Ironworkers, 2015 WL 2270673, at *32. "'[D]isagreement'" with a board's business judgment "'does not state a cognizable claim.'" Friedman v. Dolan, 2015 WL 4040806, at *7 (Del. Ch. June 30, 2015) (citation omitted).

## CONCLUSION

For all of these reasons, plaintiff's complaint should be dismissed with prejudice.

Dated: New York, New York
       October 15, 2015

Respectfully submitted,

MILBANK, TWEED, HADLEY
   & McCLOY, LLP

By: _Antonia Apps  by SAR_

   Scott A. Edelman
   Antonia M. Apps
   Jed M. Schwartz
28 Liberty Street
New York, New York  10005
(212) 530-5000 (Telephone)
(212) 506-5219 (Fax)

Attorneys for Nominal Defendant
American Realty Capital Properties, Inc.

WEIL, GOTSHAL & MANGES LLP

By: _Stephen A Radin_

   Stephen A. Radin
   Christopher L. Garcia
   Evert J. Christensen, Jr.
767 Fifth Avenue
New York, New York  10153
(212) 310-8000 (Telephone)
(212) 310-8007 (Fax)

Attorneys for Defendants Thomas A.
Andruskevich, Bruce D. Frank, Leslie D.
Michelson, Edward G. Rendell and
William G. Stanley