UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | | |
|---|---|---|
| JOANNE WITCHKO, Derivatively on Behalf of Nominal Defendant AMERICAN REALTY CAPITAL PROPERTIES, INC., | : | |
| | : | |
| | : | Lead Case No. 15-CV-6043-AKH |
| Plaintiff, | : | |
| vs. | : | (Consolidated With Case No. 15-cv-8563-AKH) |
| NICHOLAS S. SCHORSCH, DAVID KAY, LESLIE D. MICHELSON, EDWARD G. RENDELL, WILLIAM G. STANLEY, THOMAS A. ANDRUSKEVICH, BRUCE FRANK, SCOTT BOWMAN, WILLIAM KAHANE, EDWARD M. WEIL, JR., BRIAN BLOCK, LISA MCALISTER and LISA BEESON, | : | |
| | : | |
| | : | |
| | : | |
| Defendants, | : | |
| -and- | : | |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., | : | |
| | : | |
| Nominal Defendant. | | |

------------------------------------------------------------------------x


MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS


February 12, 2016

**TABLE OF CONTENTS**

<b>Page</b>

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................6

    A.    The Parties ......................................................................6

    B.    The Alleged Wrongdoing ...................................................7

    C.    Plaintiff Witchko's Demand On ARCP's Board ....................................8

    D.    Plaintiffs Serafin, Turner And Froehner's Demand On ARCP's Board.............11

    E.    Plaintiffs' Complaints .......................................................12

ARGUMENT ..................................................................................................12

I.    PLAINTIFFS LACK STANDING UNDER FEDERAL RULE OF CIVIL
PROCEDURE 23.1 BECAUSE THEY DO NOT ALLEGE PARTICULARIZED
FACTS SHOWING THAT THEIR DEMANDS WERE WRONGFULLY
REFUSED .........................................................................................12

    A.    Federal Rule Of Civil Procedure 23.1 Requires Particularized Pleading ............12

    B.    A Board's Decision With Respect To Shareholder Demands Is Protected
By The Business Judgment Rule And The Md. Corps. Code § 2-405.1(c)
Presumption That Directors Act In The Best Interests Of The Corporations
They Serve .....................................................................13

    C.    Plaintiffs' Allegations Do Not Overcome the Business Judgment Rule
And Md. Corps. Code § 2-405.1(c) Presumption .................................17

        1.    ARCP's Board Does Not Lack Disinterestedness And
Independence .........................................................17

        2.    The Board's Determination To Refuse The Demands For Reasons
Other Than The Merits Of Plaintiffs' Claims Is Protected By The
Business Judgment Rule .............................................19

        3.    Plaintiffs' Remaining Claims Also Do Not Overcome The
Business Judgment Rule Presumption................................24

II.    PLAINTIFFS ALSO FAIL TO STATE A CLAIM UNDER FEDERAL RULE
OF CIVIL PROCEDURE 12(b)(6) ................................................28

    A.    Plaintiffs' Section 14(a) Claims Fail To State A Claim............................28

        1.    The Claims Fail Against Defendants Who Did Not Solicit The
Challenged Proxies...................................................28

        2.    The Claims Fail Against All Defendants Because Plaintiffs Have
Not Alleged An "Essential Link" Between The Proxy Statements
And The Alleged Harm ...............................................29

B.    Plaintiffs' State Law Claims Fail To State A Claim................................32

1.    Messrs. Andruskevich, Bowman, Frank, Michelson And Stanley And Governor Rendell.................................................................................33

    a.    Plaintiffs' Breach Of Fiduciary Duty Claims...............................33

        (i)    Maryland Statutory Law And ARCP's Charter..............33

        (ii)    The Caremark Doctrine ....................................................35

    b.    Plaintiffs' Abuse Of Control Claims.............................................40

    c.    Plaintiffs' Unjust Enrichment Claims ...........................................40

2.    Messrs. Kahane And Weil ......................................................................41

    a.    Messrs. Kahane And Weil Are Not Liable Under Maryland Law And ARCP's Charter............................................................42

    b.    Plaintiffs' Claims Fail On The Merits...........................................44

        (i)    Breach Of Fiduciary Duty................................................44

        (ii)    Abuse Of Control ..............................................................46

        (iii)    Unjust Enrichment ............................................................46

3.    Mr. Kay..................................................................................................47

    a.    Claims Predicated On Pre-December 2013 Conduct....................47

    b.    Plaintiffs' Breach Of Fiduciary Duty Claims...............................48

    c.    Plaintiffs' Abuse Of Control Claims.............................................49

    d.    Plaintiffs' Unjust Enrichment Claims ...........................................49

4.    Ms. Beeson.............................................................................................50

    a.    Plaintiffs' Breach Of Fiduciary Duty Claims...............................50

    b.    Plaintiffs' Abuse Of Control Claims.............................................52

    c.    Plaintiffs' Unjust Enrichment Claims ...........................................52

5.    Mr. Schorsch .........................................................................................53

6.    Mr. Block ...............................................................................................53

7.    Ms. McAlister ........................................................................................54

    a.    Plaintiffs' Abuse Of Control Claims.............................................54

    b.    Plaintiffs' Unjust Enrichment Claims ...........................................55

CONCLUSION...............................................................................................................55

WEIL:\95579496\4\14807.0004

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

In re Am. Int'l Grp., Inc. Deriv. Litig.,
    700 F. Supp. 2d 419 (S.D.N.Y. 2010),
    aff'd, 415 F. App'x 285 (2d Cir. 2011) ..............................................................13

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984) ..................................................................... 16, 18

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................. 35, 43

Attorney Grievance Comm'n v. Dore,
    73 A.3d 161 (Md. 2013) ..............................................................................34

In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA)  Litig.,
    2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013) ..............................22, 23, 28, 37, 41

In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010) .......................................................... 28, 29

In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.,
    921 F. Supp. 2d 56 (S.D.N.Y. 2013) ................................................................47

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ....................................................................................35

Bender v. Schwartz,
    917 A.2d 142 (Md. Ct. Spec. App. 2007)................................................. 3, 15, 16

Boland v. Boland,
    31 A.3d 529 (Md. 2011) ............................................... 1, 2, 3, 13, 14, 15, 16, 20

In re Boston Scientific Corp. S'holders Litig.,
    2007 WL 1696995 (S.D.N.Y. June 13, 2007) ......................................... 16, 24, 25

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) .............................................................................18

Brenner v. Albrecht,
    2012 WL 252286 (Del. Ch. Jan. 27, 2012) .......................................................44

Burks v. Lasker,
    441 U.S. 471 (1979) .....................................................................................2

iii

Campbell v. Weihe Yu,
   25 F. Supp. 3d 472 (S.D.N.Y. 2014) ....................................................................45

Canadian Commercial Workers Indus. Pension Plan v. Alden,
   2006 WL 456786 (Del. Ch. Feb. 22, 2006)...........................................................37

Canty v. Day,
   13 F. Supp. 3d 333 (S.D.N.Y. 2014),
   aff'd, 599 F. App'x 20 (2d Cir. 2015)...................................................................26

In re Caremark Int'l Inc. Deriv. Litig.,
   698 A.2d 959 (Del. Ch. 1996)................................................................ 35, 44, 45

Cent. Laborers' Pension Fund v. Dimon,
   2014 WL 3639185 (S.D.N.Y. July 23, 2014),
   aff'd, 2016 WL 66501 (2d Cir. Jan. 6, 2016) ................................................ 29, 30

Cent. Laborers' Pension Fund v. Dimon,
   2016 WL 66501 (2d Cir. Jan. 6, 2016).............................5, 6, 35, 36, 39, 40

In re China Auto. Sys. Inc. Deriv. Litig.,
   2013 WL 4672059 (Del. Ch. Aug. 30, 2013) ................................................. 38, 45

In re Citigroup Inc. S'holder Deriv. Litig.,
   964 A.2d 106 (Del. Ch. 2009)......................................................................... 35, 36

Copeland v. Lane,
   2012 WL 4845636 (N.D. Cal. Oct. 10, 2012),
   aff'd, 621 F. App'x 449 (9th Cir. 2015).................................................................25

In re Consumers Power Co. Deriv. Litig.,
   132 F.R.D. 455 (E.D. Mich. 1990) .......................................................................21

David B. Shaev Profit Sharing Account v. Armstrong,
   2006 WL 391931 (Del. Ch. Feb. 13, 2006),
   aff'd, 911 A.2d 802 (Del. 2006)...................................................................36, 37, 45

Desimone v. Barrows,
   924 A.2d 908 (Del. Ch. 2007)......................................................................... 35, 36

In re Diamond Foods, Inc. Deriv. Litig.,
   2012 WL 1945814 (N.D. Cal. May 29, 2012),
   aff'd, 575 F. App'x 716 (9th Cir. 2014).......................................................... 31, 32

In re Dow Chem. Co. Deriv. Litig.,
   2010 WL 66769 (Del. Ch. Jan. 11, 2010)..............................................................19

WEIL:\95579496\4\14807.0004

Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.,
    594 F.3d 783 (11th Cir. 2010) ...................................................................... 30, 31

Engel v. Sexton,
    2009 WL 361108 (E.D. La. Feb. 11, 2009) ............................................................54

Espinoza v. Dimon,
    797 F.3d 229 (2d Cir. 2015) ............................................................1, 4, 13, 16, 17

Espinoza v. Dimon,
    807 F.3d 502 (2d Cir. 2015) ............................................................1, 2, 13, 16, 26

In re Facebook, Inc., Initial Pub. Offering Deriv. Litig.,
    797 F.3d 148 (2d Cir. 2015) ...................................................................................4

Fink v. Weill,
    2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005).......................................................32

First Nat'l Bank of Md. v. Shpritz,
    493 A.2d 410 (Md. Ct. Spec. App. 1985) ............................................................47

Friedman v. Dolan,
    2015 WL 4040806 (Del. Ch. June 30, 2015).........................................................28

In re Galena Biopharma, Inc. Deriv. Litig.,
    83 F. Supp. 3d 1047 (D. Or. 2015)....................................................... 40, 54, 55

Gen. Elec. Co. v. Cathcart,
    980 F.2d 927 (3d Cir. 1992) ..........................................................................30, 32

In re Gen. Motors Co. Deriv. Litig.,
    2015 WL 3958724 (Del. Ch. June 26, 2015),
    aff'd, 2016 WL _____ (Del. Feb. 11, 2016)........................................................40

In re Gen. Motors Co. Deriv. Litig.,
    2016 WL _____ (Del. Feb. 11, 2016) ..............................................................40

Gold v. Sloan,
    486 F.2d 340 (4th Cir. 1973) ..............................................................................51

Goldstein v. Berman,
    2014 WL 824050 (D. Md. Feb. 28, 2014).....................................34, 42, 43, 49, 50

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003)........................................................................36, 38

Halebian v. Berv,
    590 F.3d 195 (2d Cir. 2009) .................................................................................13

v

Halpert Enters. v. Harrison,
    2007 WL 486561 (S.D.N.Y. Feb. 14, 2007),
    aff'd, 2008 WL 4585466 (2d Cir. Oct. 15, 2008) ...............................................20

Halpert Enters. v. Harrison,
    2008 WL 4585466 (2d Cir. Oct. 15, 2008).......................................................25

Hayes v. Crown Cent. Petroleum Corp.,
    78 F. App'x 857 (4th Cir. 2003) ..................................................... 33, 34, 48

Hill v. Cross Country Settlements, LLC,
    936 A.2d 343 (Md. 2007) .............................................................. 41, 47, 53, 55

In re IAC/InterActiveCorp. Sec. Litig.,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007)...............................................................38

Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti,
    2015 WL 2270673 (Del. Ch. May 8, 2015),
    aff'd, 2016 WL 341201 (Del. Jan. 28, 2016)....................................... 20, 21, 25, 27

In re INFOUSA, Inc. S'holders Litig.,
    953 A.2d 963 (Del. Ch. 2007)..........................................................................20

In re IT Group, Inc.,
    2005 WL 3050611 (D. Del. Nov. 15, 2005)......................................................51

In re ITT Corp. Deriv. Litig.,
    588 F. Supp. 2d 502 (S.D.N.Y. 2008) ..............................................................46

Johnson v. Ross,
    419 F. App'x 357 (4th Cir. 2011) ...................................................................46

Kamen v. Kemper Fin. Servs., Inc.,
    500 U.S. 90 (1991) ............................................................................... 1, 14

Kamen v. Kemper Fin. Servs., Inc.,
    939 F.2d 458 (7th Cir. 1991) ...................................................................2, 20

Kautz v. Sugarman,
    2011 WL 1330676 (S.D.N.Y. Mar. 31, 2011) ...................................................17

Kautz v. Sugarman,
    456 F. App'x 16 (2d Cir. 2011) .......................................................................18

La. Mun. Police Emps.' Ret. Sys. v. Hesse,
    962 F. Supp. 2d 576 (S.D.N.Y. 2013).............................................................35

WEIL:\95579496\4\14807.0004

Lambrecht v. O'Neal,
    504 F. App'x 23 (2d Cir. 2012) ................................................................22

Levine v. Smith,
    591 A.2d 194 (Del. 1991) ............................................................... 24, 25

Lewis v. Graves,
    701 F.2d 245 (2d Cir. 1983) ..................................................................19

In re Massey Energy Co. Deriv. & Class Action Litig.,
    2011 WL 2176479 (Del. Ch. May 31, 2011) ........................................26

In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig.,
    773 F. Supp. 2d 330 (S.D.N.Y. 2011),
    aff'd sub nom. Lambrecht v. O'Neal, 504 F. App'x 23 (2d Cir. 2012) .............. 21, 22, 25, 27

Mohiuddin v. Doctors Billing & Mgmt. Sols., Inc.,
    9 A.3d 859 (Md. Ct. Spec. App. 2010) .................................................47

Morales-Santana v. Lynch,
    804 F.3d 520 (2d Cir. 2015) ..................................................................21

Mt. Moriah Cemetery v. Moritz,
    1991 WL 50149 (Del. Ch. Apr. 4, 1991),
    aff'd, 599 A.2d 413 (Del. 1991) ............................................................25

Ok. Firefighters Pension & Ret. Sys. v. Citigroup, Inc.,
    2015 WL 1884453 (Del. Ch. Apr. 24, 2015) ........................................35

Oliveira v. Sugarman,
    2016 WL 361055 (Md. Ct. Spec. App. Jan. 28, 2016) ..........3, 4, 13, 14, 15, 16, 17, 18, 20, 34

Pereira v. Cogan,
    294 B.R. 449 (S.D.N.Y. 2003), vacated on other grounds,
    Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005) ...................................51

In re Pfizer Inc. Deriv. Sec. Litig.,
    503 F. Supp. 2d 680 (S.D.N.Y. 2007),
    aff'd, 307 F. App'x 590 (2d Cir. 2009) .................................................19

In re Pfizer Inc. S'holder Deriv. Litig.,
    722 F. Supp. 2d 453 (S.D.N.Y. 2010) ...................................................41

RCM Sec. Fund, Inc. v. Stanton,
    928 F.2d 1318 (2d Cir. 1991) .............................................................4, 16

Ross v. Bernhard,
    396 U.S. 531 (1970) ................................................................................1

WEIL:\95579496\4\14807.0004

Royal Inv. Grp. LLC v. Wang,
    961 A.2d 665 (Md. Ct. Spec. App. 2008)..................................................................52, 53

RSM Prod. Corp. v. Fridman,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009),
    aff'd, 387 F. App'x 72 (2d Cir. 2010) ......................................................................48

Sadler v. Retail Props. of Am., Inc.,
    2014 WL 2598804 (N.D. Ill. June 10, 2014).........................................................40

Seidl v. Am. Century Cos.,
    713 F. Supp. 2d 249 (S.D.N.Y. 2010),
    aff'd, 427 F. App'x 35 (2d Cir. 2011) ......................................................................18

Seidl v. Am. Century Cos.,
    799 F.3d 983 (8th Cir. 2015) .............................................................................14, 15

Serafin v. Schorsch,
    2015 WL 3901646 (S.D.N.Y. June 24, 2015) ....................................2, 13, 15, 18

Shenker v. Laureate Educ., Inc.,
    983 A.2d 408 (Md. 2009) ............................................................................3, 13, 16

Spiegel v. Buntrock,
    571 A.2d 767 (Del. 1990) ..........................................................................................16

Steinberg v. Dimon,
    2014 WL 3512848 (S.D.N.Y. July 16, 2014) ......................................................41

Steinberg v. Mozilo,
    2015 WL 5724753 (S.D.N.Y. Sept. 29, 2015) ....................................................27

Stone v. Ritter,
    911 A.2d 362 (Del. 2006) ...........................................................................35, 36, 44, 45

Stratte-McClure v. Morgan Stanley,
    776 F.3d 94 (2d Cir. 2015) ..........................................................................................6

Strugala v. Riggio,
    817 F. Supp. 2d 378 (S.D.N.Y. 2011) ....................................................................34

Sutton v. FedFirst Fin. Corp.,
    126 A.3d 765 (Md. Ct. Spec. App. Oct. 29, 2015) ............................................13

Teachers' Ret. Sys. v. Aidinoff,
    900 A.2d 654 (Del. Ch. 2006)..................................................................................36

WEIL:\95579496\4\14807.0004

TVI Corp. v. Gallagher,
    2013 WL 580927 (Del. Ch. Oct. 28, 2013) ................................................................. 38, 46

In re UBS AG Sec. Litig.,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ..................................................................48

In re Verestar, Inc.,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006) ..............................................................................51

In re Verifone Holdings, Inc. S'holder Derivative Litig.,
    2010 WL 3385055 (N.D. Cal. Aug. 26, 2010) ..................................................................52

In re Walt Disney Co.,
    2004 WL 2050138 (Del. Ch. Sept. 10, 2004) ...................................................................44

Wayne Cty. Emps.' Ret. Sys. v. Dimon,
    2015 WL 6079958 (2d Cir. Oct. 16, 2015) .......................................................................35

Weinberg v. Gold,
    838 F. Supp. 2d 355 (D. Md. 2012) ..................................................................................19

Werbowsky v. Collomb,
    766 A.2d 123 (Md. 2001) ...............................................................1, 13, 14, 15, 18, 34

Wood v. Baum,
    953 A.2d 136 (Del. 2008) ..................................................................................................19

In re World Health Alternatives, Inc.,
    385 B.R. 576 (Bankr. D. Del. 2008) .................................................................................44

**OTHER AUTHORITIES**

15 U.S.C. § 78m(a)(1) ...................................................................................................................4

15 U.S.C. § 78n(a)(1) .................................................................................................................28

17 C.F.R. § 240.14a-9 ...................................................................................................................4

Fed. R. Civ. P. 23.1 .................................................................................................. 4, 12, 13, 53

Md. Corps. & Ass'ns Code § 2-405.1 ...................................................................3, 4, 13, 15, 17

Md. Cts. & Jud. Proc. Code § 5-418 ................................................................................ 5, 33, 35

James J. Hanks, Jr., Maryland Corporation Law (2015 Supp.) .............................................. 15, 33

WEIL:\95579496\4\14807.0004

## PRELIMINARY STATEMENT

This is a shareholder derivative action brought on behalf of Nominal Defendant American Realty Capital Properties, Inc. ("ARCP"), now known as VEREIT, Inc., alleging claims arising out of accounting practices which led to a restatement of financial statements and other financial information.  ARCP is a Maryland corporation.

Unlike a claim a plaintiff brings on his or her own behalf to enforce a personal right, a shareholder derivative action is brought "'to enforce a corporate cause of action.'" Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991) (quoting Ross v. Bernhard, 396 U.S. 531, 534 (1970)) (emphasis in Kamen).  "'The substantive claim belongs to the corporation.'" Boland v. Boland, 31 A.3d 529, 548 (Md. 2011) (quoting Werbowsky v. Collomb, 766 A.2d 123, 133 (Md. 2001)).  The corporation "is the real party in interest, the stockholder being at best the nominal plaintiff."  Ross, 396 U.S. at 538; see also Boland, 31 A.3d at 548 ("the 'corporation is the real party in interest'") (quoting Werbowsky, 766 A.2d at 133).

"Thus, the common law developed a requirement that the derivative plaintiff, at the outset, seek a corporate decision on whether to maintain a lawsuit, a prerequisite known as the 'demand requirement.'"  Boland, 31 A.3d at 549.  The demand requirement "implements 'the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders.'"  Kamen, 500 U.S. at 101 (citation omitted).

Boards "have broad discretion in choosing how to respond to a shareholder demand."  Espinoza v. Dimon, 797 F.3d 229, 238 (2d Cir. 2015); see also Espinoza v. Dimon, 807 F.3d 502, 505 (2d Cir. 2015) ("review of a wrongful refusal suit starts from the premise that the decision to initiate a lawsuit is an internal corporate matter within the board's discretion").  The law recognizes that "[t]here may well be situations in which the independent directors could

reasonably believe that the best interests of the shareholders call for a decision not to sue." Burks v. Lasker, 441 U.S. 471, 485 (1979). "'The focus . . . is not on the merits of the plaintiffs' claims, but on whether maintenance of the suit would be in the company's best interest.'" Boland, 31 A.3d at 570 (citation omitted). The subject of this Court's review is "not the merits" of the decision to refuse the demand but "whether the plaintiff has pleaded sufficient facts to suggest that the board's decision was unreasonable or not made in good faith, in the context of all the factors that the board had to consider." Espinoza, 807 F.3d at 505. "Conscientious managers may conclude that legal action is unjustified because not meritorious, or because it would subject the firm to injury." Kamen v. Kemper Fin. Servs., Inc., 939 F.2d 458, 462 (7th Cir. 1991) (Maryland law). The alternative would create havoc: any holder of any of ARCP's hundreds of millions of publicly traded shares could at his, her or its whim bring any number of lawsuits, all asserting claims belonging to ARCP. Consistent with these principles, this Court's decision in Serafin v. Schorsch, 2015 WL 3901646 (S.D.N.Y. June 24, 2015) (Hellerstein, J.), rejected a claim by three of the four plaintiffs in this case that a demand was not required.

Each of the plaintiffs accordingly wrote to ARCP's Board of Directors and demanded that ARCP's Board commence litigation in ARCP's name against the persons responsible for the wrongdoing alleged in plaintiffs' demands. ARCP's Board did not ignore plaintiffs' demands. Far from it. ARCP's Board retained independent outside counsel, Saul Ewing LLP, to assist the Board in reviewing the demands. Following a full inquiry, ARCP's Board unanimously agreed that pursuing the claims alleged in the demands at this time would not serve the best interests of ARCP and its shareholders. The Board relied on three principal considerations:

- Pursuing the claims alleged at this time, even if the claims were meritorious, would not be in the best interests of ARCP and its shareholders because any such action might compromise ARCP's position in the ongoing securities litigation and government investigations;

WEIL:\95579496\4\14807.0004

- Developments in the securities litigation and the government investigations will further inform the Board about actions and events underlying the claims; and

- Ample time remains before statutes of limitations would run on claims ARCP might bring.

The Board sent each of the plaintiffs a six-page single-spaced letter explaining in detail the procedure by which the Board assessed plaintiffs' demands and the reasons for the Board's decision to refuse the demands at this time.

Plaintiffs now ask this Court to substitute plaintiffs' views concerning this litigation for the Board's business judgment. The demand requirement is more than a "check the box" formality satisfied by making a demand, no matter what the response. A single shareholder cannot usurp the right of ARCP's Board – which represents all ARCP shareholders – to make a business judgment with respect to whether litigating plaintiffs' claims on ARCP's behalf will serve the best interests of ARCP.

To the contrary, and as just re-affirmed by the Maryland Court of Special Appeals in Oliveira v. Sugarman, 2016 WL 361055, at *6-7 (Md. Ct. Spec. App. Jan. 28, 2016), a board's decision to refuse a demand is protected by the business judgment rule, "'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Boland, 31 A.3d at 548 (citation omitted). This presumption is codified in Md. Corps. & Ass'ns Code § 2-405.1 and "insulates 'the business decisions made by the director[s] from judicial review.'" Boland, 31 A.3d at 548 (quoting Shenker v. Laureate Educ., Inc., 983 A.2d 408, 424 (Md. 2009)). In accordance with this presumption, a shareholder "must state a claim in particular, rather than conclusory terms." Bender v. Schwartz, 917 A.2d 142, 152-53 (Md. Ct. Spec. App. 2007). And, "[t]he application of the business judgment rule to a demand refusal logically includes a presumption that statements within a board's refusal letter are true . . . absent a

3

particularized allegation rebutting a specific statement." Oliveira, 2016 WL 361055, at *10.

Accordingly, to establish standing to sue derivatively on ARCP's behalf, plaintiffs must allege facts – and with the particularity required by Federal Rule of Civil Procedure 23.1 – overcoming the business judgment rule and the Corps. Code § 2-405.1 presumption that ARCP's Board acted "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company" in refusing plaintiffs' demands. "'Few, if any, plaintiffs surmount [this] obstacle,'" Espinoza, 797 F.3d at 234 and 807 F.3d at 506 (quoting RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir. 1991)), and plaintiffs have not done so here.  Plaintiffs therefore lack standing to bring this case on ARCP's behalf and "[a]bsent derivative standing, there is no derivative case." In re Facebook, Inc., Initial Pub. Offering Deriv. Litig., 797 F.3d 148, 158 (2d Cir. 2015).  ARCP and defendants thus move to dismiss this action pursuant to Federal Rule 23.1.  See Point I below.

In the alternative, and if the Court concludes that plaintiffs' demands were wrongfully refused, defendants (but not Nominal Defendant ARCP, which takes no position on the merits of plaintiffs' claims) move to dismiss this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) as summarized below.

First, all defendants (other than Nominal Defendant ARCP) move to dismiss plaintiffs' claims under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(a)(1) and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, Count IV, in connection with the proxy statements soliciting proxies to elect or re-elect directors of ARCP on May 4, 2012, April 30, 2013, and April 29, 2014.  These proxy statements state that "[t]he accompanying proxy" is "solicited by and on behalf of the board of directors" – but only eight of the thirteen defendants in the case served as directors on even one of those dates.  And, even with

4

respect to those eight defendants, plaintiffs' claims should be dismissed because plaintiffs fail to allege the required "essential link" between proxies seeking re-election of directors and the harm plaintiffs allege.  See Point II A.

Second, Messrs. Andruskevich, Bowman, Frank, Michelson and Stanley and Governor Rendell move to dismiss plaintiffs' state law claims for breach of fiduciary duty, abuse of control and unjust enrichment.  They are each exculpated from liability pursuant to Md. Cts. & Jud. Proc. Code § 5-418 and Article 8, § 8.01 of ARCP's Charter, because plaintiffs do not allege the receipt of "an improper benefit or profit in money" or "active and deliberate dishonesty" by these individuals.  They are also entitled to dismissal under settled state law principles separate and apart from Maryland's statutory protection of directors and officers:  the allegations here – that ARCP "'could have, should have, had a better reporting system, but not that it had no such system'" (Cent. Laborers' Pension Fund v. Dimon, 2016 WL 66501, at *5 (2d Cir. Jan. 6, 2016) (citation omitted)) – do not state a claim for failing to monitor corporate affairs under common law principles.  See Point II B 1.

Third, Messrs. Block, Kahane, Kay, Schorsch and Weil and Ms. Beeson and Ms. McAllister join these arguments and make the additional arguments stated in Points II B 2 (Messrs. Kahane and Weil), II B 3 (Mr. Kay), II B 4 (Ms. Beeson), II B 5 (Mr. Schorsch), and II B 6 (Mr. Block) and II B 7 (Ms. McAllister).[1]

---

[1] Plaintiffs allege that this Court has federal question jurisdiction under 28 U.S.C. § 1331 for their Section 14(a) claim and diversity and supplemental jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1367(a) for their state law claims.  Compl. ¶¶ 10, 12.  There is, however, no diversity jurisdiction.  Plaintiffs Witchko (id. ¶ 14) and Turner (Case No. 15-cv-8563 Compl. ¶ 23) allege that they are citizens of Florida, and the undersigned counsel for Mr. Andruskevich represents that Mr. Andruskevich is also a citizen of Florida.  If the Court dismisses plaintiffs' Section 14(a) claim, ARCP and defendants respectfully submit that this Court should exercise supplemental jurisdiction as a matter of judicial economy in light of the case-dispositive nature of this motion and the related federal securities litigation also pending in this Court.  See Cent.

## STATEMENT OF FACTS

Plaintiffs in the <u>Witchko</u> action (No. 15-cv-6043) and the <u>Serafin, Turner and Froehner</u> action (No. 15-cv-8563) have designated the complaint in the <u>Witchko</u> action as their "operative" complaint (Dkt. No. 52), but that complaint contains no allegations concerning the demand made by the plaintiffs in the <u>Serafin, Turner and Froehner</u> action or the ARCP Board's refusal of that demand.  The following discussion accordingly draws where necessary on the complaint in the <u>Serafin, Turner and Froehner</u> action, as well as documents that may be considered along with the complaints on a motion to dismiss, including documents "'incorporated in [the complaints] by reference" and "public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  <u>Stratte-McClure</u> v. <u>Morgan Stanley</u>, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted).  Copies of all documents cited below are attached to the Declaration of Stephen A. Radin.

### A.    The Parties

Plaintiffs Joanne Witchko, Thomas Serafin, Michele Graham Turner 1995 Revocable Trust, Jeffrey Turner as Trustee, and Edward L. Froehner allege that they bring this derivative action "in the right and for the benefit of ARCP."  Compl. Intro. & ¶¶ 111, 151.

Defendant Bruce D. Frank is an outside, non-management member of ARCP's board of directors. <u>Id</u>. ¶ 19.  Defendants Thomas A. Andruskevich, Scott J. Bowman, William Kahane, David Kay, Leslie D. Michelson, Governor Edward G. Rendell, Nicholas S. Schorsch, William G. Stanley and Edward M. Weil, Jr. are former members of ARCP's board. <u>Id</u>. ¶¶ 16-

---

<u>Laborers</u>, 2016 WL 66501, at *2 (Second Circuit holds, in action alleging, as here, Section 14(a) and state law breach of fiduciary duty claims, that "judicial economy was well-served by the District Court's discretionary exercise of jurisdiction over plaintiffs' related state law claims").

18, 20-25; <u>see also</u> Aug. 19, 2015 ARCP Proxy at 10 (Ex. O) (reporting, following the filing of

the complaint – but months before plaintiffs designated the complaint as their "operative

complaint" – that Messrs. Andruskevich and Stanley "declined to stand for re-election" to the

Board in 2015).  Messrs. Kay, Schorsch and Weil, as well as Defendants Lisa Beeson, Brian

Block and Lisa McAlister, are former officers of ARCP.  Compl. ¶¶ 16, 20, 25 26, 29, 30.

> **B.**     <u>The Alleged Wrongdoing</u>

       On October 29, 2014, ARCP filed a Form 8-K announcing "preliminary findings"

of an Audit Committee investigation being conducted "with the assistance of independent coun-

sel and forensic experts" with respect to "concerns regarding accounting practices and other

matters that first were reported to the Audit Committee on September 7, 2014."  Compl. ¶ 79.

ARCP stated that, "based on the preliminary findings of the investigation, the Audit Committee

believes that the Company incorrectly included certain amounts related to its non-controlling

interests in the calculation of adjusted funds from operations ('AFFO'), a non-U.S. GAAP finan-

cial measure . . . and, as a result, overstated AFFO for" the three months ended March 31, 2014.

<u>Id</u>.  ARCP stated that its Audit Committee learned that "this 'error' was identified but intention-

ally not corrected" and that "other AFFO and financial statement errors were intentionally made,

resulting in an overstatement of AFFO and an understatement of the Company's net loss for the

three and six months ended June 30, 2014."  <u>Id</u>.  ARCP also announced that its chief financial

officer and chief accounting officer, Mr. Block and Ms. McAlister, had resigned "at the request

of the Audit Committee."  <u>Id</u>.

       The October 29, 2014 announcement triggered an investigation by the SEC and

federal prosecutors and "at least ten securities class actions" filed in this Court (<u>id</u>. ¶ 85), which

plaintiffs allege have caused ARCP to incur harm, including "[e]normous legal costs" and

"[l]ikely criminal and/or civil liability."  <u>Id</u>. ¶ 108; <u>see also</u> <u>id</u>. ¶¶ 110, 131 n.5, 146, 157, 160,

7

161; In re Am. Realty Capital Props., Inc. Litig., No. 15-MC-00040 (AKH) (S.D.N.Y.).

On December 15, 2014, ARCP announced that Mr. Schorsch had "'resigned as Executive Chairman and a director' of ARCP" and that Mr. Kay had resigned as chief executive officer and as a member of ARCP's board and that Ms. Beeson had resigned as president and chief operating officer.  Compl. ¶ 93.

On December 18, 2014, Ms. McAlister filed a defamation action against ARCP and Messrs. Schorsch and Kay.  Id. ¶ 95.  Ms. McAlister alleged that, "beginning in or about February 2014, [she] 'repeatedly informed' defendants Schorsch, Kay and 'senior management'" that ARCP had "'suddenly and without any apparent justification or basis' "changed the method by which it was reporting AFFO relative to previous quarters."  Id. ¶ 96.  Ms. McAlister did not allege that she informed any outside director about her concerns.  On February 19, 2015, Ms. McAlister withdrew her complaint.  McAlister v. Am. Realty Capital Props., Inc., No. 162499/-2014 (N.Y. Sup. Ct. N.Y. Co.) (Ex. P) (court docket).

On March 2, 2015, ARCP filed its financial results for the fiscal period ended September 30, 2014 and announced restatements of financial results for the fiscal year 2013 and the fiscal periods ended March 31, 2014 and June 30, 2014.  Compl. ¶¶ 102-104.

C.      **Plaintiff Witchko's Demand On ARCP's Board**

In letters dated November 17, 2014 and April 22, 2015, plaintiff Witchko demanded that ARCP's board "'institut[e] . . . an action for breach of fiduciary duty against any and all persons who are responsible'" for the events leading to ARCP's restatement and "'seek appropriate remedial measures by obtaining damages from all persons who were unjustly enriched by permitting ARCP to engage in the wrongful activity or otherwise committed waste.'"  Id. ¶¶ 115, 116, 122 & Exs. A, G.

On January 12, 2015, ARCP's Board discussed the November 17, 2014 demand

and determined that the Audit Committee investigation and restatement should be completed before the Board considered the Witchko demand.  Id. ¶ 127 & Ex. I at 3.  The Board subsequently determined to retain the law firm Saul Ewing LLP as independent counsel to advise the Board in connection with the demand.  Id. ¶ 128 & Ex. I at 3.  Except in connection with this engagement, Saul Ewing does not "represent ARCP, any of its affiliates, or any of the individuals against whom the Demand requests action be taken."  Id. Ex. I at 3.

On April 20, 2015, ARCP's Board met with Saul Ewing to discuss the demand. Id. ¶ 128 & Ex. I at 3.  The Board consisted of six directors at that time.  Three of the directors, Messrs. Andruskevich, Frank and Stanley, served as outside, non-management directors during at least portions of the alleged wrongdoing (Mr. Frank, for example, joined the Board in July 2014, just weeks before the accounting issues underlying this litigation were brought to the attention of the Audit Committee, and Messrs. Stanley and Andruskevich joined the Board in January and February 2014, respectively).  Id. ¶¶ 17-19 & n.1; see also Jan. 3, 2014 Form 8-K at 3 (Ex. C); Feb. 7, 2014 Form 8-K at 3 (Ex. D); July 10, 2014 Form 8-K at 1 (Ex. F).  The other three directors, Hugh R. Frater, Julie G. Richardson and Glenn J. Rufrano, joined the Board after the alleged wrongdoing.  Compl. ¶ 19 & n.1, 126; see also Mar. 16, 2015 Form 8-K at 2 (Ex. L); Apr. 7, 2015 Form 8-K at 2 (Ex. M).

The Board received reports over the course of several hours from Weil, Gotshal & Manges LLP (counsel to the Audit Committee in connection with the Audit Committee's investigation) and Milbank, Tweed, Hadley & McCloy LLP (counsel to ARCP) concerning the Audit Committee investigation and the ongoing federal securities litigation and investigations being conducted by the SEC and the United States Attorney's Office for the Southern District of New York.  Compl. ¶ 128 & Ex. I at 3-4.  Discussion and questions followed, and the Board then met

WEIL:\95579496\4\14807.0004

alone with Saul Ewing.  Id. Ex. I at 4.

On May 21, 2015, the Board met again with Saul Ewing to further discuss the demand.  Compl. ¶ 130 & Ex. I at 4.  A consensus emerged in favor of refusing the demand, and the Board asked Saul Ewing to draft for the Board's consideration the letter that would be sent to plaintiff Witchko's counsel explaining the Board's rationale for refusing the demand if the Board were to follow that course.  Id. ¶ 130 & Ex. I at 4-5.  On June 11, 2015, the Board met to consider the draft letter prepared by Saul Ewing, and voted unanimously to refuse the demand.  Id. Ex. I at 5.  The Board then directed Saul Ewing to finalize the draft letter the Board had reviewed and deliver the letter to plaintiff Witchko's counsel.  Id.

Saul Ewing's six-page, single-spaced letter states in detail the reasons for the Board's conclusion that pursuit of plaintiff Witchko's claims would not serve the best interests of ARCP and its shareholders at the time the demand was refused.  The letter noted the following factors weighed by the Board and the fact that the Board weighed the first three of these factors most heavily:

- The Board believed, with the advice of counsel, that, even if the allegations in the demand had merit, it would not be in the best interests of ARCP and its shareholders to initiate litigation at the time the Board considered the demand because any such action might compromise ARCP's position in the ongoing securities litigation and government investigations.

- The Board believed, with the advice of counsel, that developments in the securities litigation and the government investigations will further inform the Board concerning the facts underlying the claims in the demand, and the resolution of these proceedings would be important considerations in determining whether to pursue some or all of the claims in the demand.

- The Board was advised by counsel that ample time remains before statutes of limitations would run on claims ARCP might bring.

- The Board considered, with the advice of counsel, the likelihood of success in asserting the claims alleged in the demand, particularly in light of ARCP's charter provision exculpating directors and officers from personal liability for money

10

damages except in cases involving an improper personal benefit or active and deliberate dishonesty.

- The Board considered, with the advice of counsel, the cost of pursuing the claims in the demand, including fees that would be incurred by both ARCP and the defendants ARCP would be suing, who would be entitled to seek advancement of defense costs and indemnification under ARCP's charter.

- The Board considered the impact on corporate resources required to assert the claims alleged in the demand, such as the time ARCP's management would devote to pursuing the claims.

- The Board noted the remedial measures undertaken by ARCP that the Board believes address any concerns regarding the potential for the conduct underlying the demand to reoccur.

Id. at 4-5. The letter stated that the Board would continue to monitor this matter along with the ongoing securities litigation and the government investigations. Id. at 6.

### D.   Plaintiffs Serafin, Turner And Froehner's Demand On ARCP's Board

In a letter dated August 10, 2015, plaintiffs Serafin, Turner and Froehner made a demand similar to the demand plaintiff Witchko had made and that ARCP's Board had refused. Case No. 15-cv-8563 Compl. ¶¶ 14, 124 & Ex. A.

Between the refusal of the Witchko demand and the receipt of the Serafin, Turner and Froehner demand, Mark Ordan joined the Board. See June 17, 2015 ARCP Form 8-K, at 2 (Ex. N). The Board then consisted of seven directors, four of whom, Messrs. Frater, Ordan and Rufrano and Ms. Richardson, joined the Board after the wrongdoing alleged in this action, and three of whom, Messrs. Stanley, Andruskevich and Frank, joined the Board in January, February and July 2014, respectively, shortly before, and in Mr. Frank's case, just weeks before, the accounting issues underlying this litigation were brought to the attention of the Audit Committee. Plaintiffs thus concede that "the Board consisted of a majority of new directors" who joined the board after the alleged wrongdoing. Case No. 15-cv-8563 Compl. ¶¶ 126-27.

On September 17, 2015, the Board met again with Saul Ewing and determined to

refuse the Serafin, Turner and Froehner demand for the same reasons the Board had refused the Witchko demand.  Id. ¶¶ 14, 124 & Ex. B.

  **E.** **Plaintiffs' Complaints**

   On July 31, 2015, plaintiff Witchko commenced this action.  On October 15, 2015, motions to dismiss the <u>Witchko</u> action were filed.  Dkt. Nos. 28-32, 34-35, 42-43.

   On October 30, 2015, plaintiffs Serafin, Turner and Froehner commenced their action.  Case No. 15-cv-8563 Compl. ¶¶ 15, 124-37.

   On December 11, 2015, the Court consolidated the actions and ordered that plaintiffs "file a consolidated amended complaint or designate one of their current complaints as their operative complaint."  Dkt. No. 51.  On January 5, 2016, armed with the motion to dismiss the Witchko action, plaintiffs elected to designate the <u>Witchko</u> complaint as their operative complaint and not file an amended complaint.  Dkt. No. 52.  The operative complaint asserts claims for breach of fiduciary duty (Count I), abuse of control (Count II), unjust enrichment (Count III) and violations of Section 14(a) of the Exchange Act (Count IV).

**ARGUMENT**

**I.** **PLAINTIFFS LACK STANDING UNDER FEDERAL RULE OF CIVIL PROCEDURE 23.1 BECAUSE THEY DO NOT ALLEGE PARTICULARIZED FACTS SHOWING THAT THEIR DEMANDS WERE WRONGFULLY REFUSED**

  **A.** **Federal Rule Of Civil Procedure 23.1 Requires Particularized Pleading**

   Federal Rule of Civil Procedure 23.1 requires that a plaintiff in a stockholder derivative action "state <u>with particularity</u> . . . any effort by the plaintiff to obtain the desired action from the directors . . . and . . . the reasons for not obtaining the action."  Fed. R. Civ. P. 23.1(b)(3) (emphasis added).  This "'rule of pleading'" governs "'the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question,' but

12

'the adequacy of those efforts is to be determined by state law.'" Halebian v. Berv, 590 F.3d

195, 206 n.7 (2d Cir. 2009) (citation omitted).  Thus, "the substance of the demand requirement

is a function of state law." Espinoza, 797 F.3d at 234. "The adequacy of a complaint alleging

wrongful refusal of a stockholder demand is determined by the law of the state of incorporation."

Espinoza, 807 F.3d at 505.  ARCP is a Maryland corporation (Compl. ¶ 15), so Maryland law

applies.  Maryland courts "ordinarily" look to Delaware law "for guidance" due to "Delaware's

acknowledged leadership in developing a coherent body of corporate law." Shenker, 983 A.2d at

427; see also Oliveira, 2016 WL 361055, at *5 n.10 ("Maryland courts often look to Delaware

law on issues of corporate law"); Sutton v. FedFirst Fin. Corp., 126 A.3d 765, 780 n.12 (Md. Ct.

Spec. App. Oct. 29, 2015) ("[t]he Court of Appeals 'has noted the respect properly accorded

Delaware decisions on corporate law ordinarily in our jurisprudence'") (citation omitted).

   "'Because Rule 23.1 requires that plaintiffs make particularized allegations, it

imposes a pleading standard higher than the normal standard applicable to the analysis of a

pleading challenged under Rule 12(b)(6).'" In re Am. Int'l Grp., Inc. Deriv. Litig., 700 F. Supp.

2d 419, 430 (S.D.N.Y. 2010), aff'd, 415 F. App'x 285 (2d Cir. 2011) (citation omitted).  "Unlike

a 12(b)(6) motion, a motion to dismiss pursuant to Rule 23.1 'is not intended to test the legal suf-

ficiency of the plaintiff's substantive claim.  Rather, its purpose is to determine who is entitled,

as between the corporation and its shareholders, to assert the plaintiff's underlying substantive

claim on the corporation's behalf.'" Serafin, 2015 WL 3901646, at *2 (citation omitted).

  **B.**  **A Board's Decision With Respect To Shareholder Demands Is Protected By**
    **The Business Judgment Rule And The Md. Corps. Code § 2-405.1(c)**
    **Presumption That Directors Act In The Best Interests Of The Corporations**
    **They Serve**

    A derivative claim brought on behalf of a corporation "belongs to the corpora-

tion." Boland, 31 A.3d at 548 (quoting Werbowsky, 766 A.2d at 133).  "[T]he 'corporation is

13

the real party in interest'" and "'[t]he substantive claim belongs to the corporation.'"  Id. (quoting Werbowsky, 766 A.2d at 133; additional citation omitted).  "[T]he shareholder is only a nominal plaintiff."  Werbowsky, 766 A.2d at 133 (citation omitted).

"Thus, the common law developed a requirement that the derivative plaintiff, at the outset, seek a corporate decision on whether to maintain a lawsuit, a prerequisite known as the 'demand requirement.'"  Boland, 31 A.3d at 549.  "The demand requirement is important."  Werbowsky, 766 A.2d at 144 (emphasis omitted).  It reflects the "'basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders.'"  Kamen, 500 U.S. at 101 (citation omitted)); see also Boland, 31 A.3d at 549 ("decisions regarding the corporation's management" include, "[i]n a derivative lawsuit, . . . a corporate decision on whether the case should proceed"); Werbowsky, 766 A.2d at 133 ("the business and affairs of a corporation are managed under the direction of its board of directors" and "any exercise of the corporate power to institute litigation and the control of any litigation to which the corporation becomes a party rests with the directors").  It "'afford[s] the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.''"  Kamen, 500 U.S. at 96 (citations omitted).

"Judicial review of a demand refusal is subject to the business judgment rule."  Boland, 31 A.3d at 549; see also Werbowsky, 766 A.2d at 144 ("[i]f a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard"); Oliveira, 2016 WL 361055, at *6 ("'[j]udicial review of a demand refusal is subject to the business judgment rule'") (quoting Boland, 31 A.3d at 549); Seidl v. Am.

14

Century Cos., 799 F.3d 983, 990 (8th Cir. 2015) ("[t]he Court of Appeals of Maryland, the high-est court of the State, has affirmed that the business judgment rule applies to a board's decision to refuse a shareholder's demand"); Serafin, 2015 WL 3901646, at *3 (quoting Werbowsky, 766 A.2d at 144); Bender, 917 A.2d at 152 ("[i]n determining whether a demand was wrongly refused, a court reviews the board's investigation under the business judgment rule").

Accordingly, "directors may 'after due inquiry, . . . reply to a derivative demand . . . under the good faith/reasonable belief/ordinary prudence standards of [the business judgment rule].'" Oliveira, 2016 WL 361055, at *6 (quoting James J. Hanks, Jr., Maryland Corporation Law § 7.21[c], at 276.38 (2014 Supp.) (now at 276.49 (2015 Supp.)).

"In Maryland, the business judgment rule is codified in Maryland Code . . . Section 2-405.1 of the Corporations and Associations Article."  Boland, 31 A.3d at 548 n.24. Boland states:

> That section assigns the following duties to directors of a corporation:
>
> (a)      In general. — A director shall perform his duties as a director, including his duties as a member of a committee of the board on which he serves:
>
>> (1)  In good faith;
>>
>> (2)  In a manner he reasonably believes to be in the best interests of the corporation; and
>>
>> (3)  With the care that an ordinarily prudent person in a like position would use under similar circumstances.
>
> That section further provides that "[a] person who performs his duties in accord-ance with the standard provided in this section shall have the immunity from lia-bility [arising from performance of those duties]" and that "[a]n act of a director of a corporation is presumed to satisfy the standards of . . . this section."

Id. (quoting Md. Corps. & Ass'ns Code §§ 2-405.1(a), (c), (e)) (emphasis added).

The business judgment rule is thus "'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest

belief that the action taken was in the best interests of the company.'" Id. at 548 (quoting Aron-son v. Lewis, 473 A.2d 805, 812 (Del. 1984)), quoted in Oliveira, 2016 WL 361055, at *5, 7. This presumption "insulates 'the business decisions made by the director[s] from judicial review.'" Id. (quoting Shenker, 983 A.2d at 424), quoted in Oliveira, 2016 WL 361055, at *4, 5; see also Shenker, 983 A.2d at 424 ("[i]t is 'well established that courts generally will not interfere with the internal management of a corporation'") (citations omitted).

    "'The burden is on the party challenging the decision to establish facts rebutting the presumption.'" Boland, 31 A.3d at 548 (citation omitted).  In accordance with the presump-tion, a shareholder "must show more than mere suspicions and must state a claim in particular, rather than conclusory, terms." Bender, 917 A.2d at 152-53.  The business judgment rule presumption is "strong" and the burden on plaintiff is "difficult." Espinoza, 807 F.3d at 505. "'Few, if any, plaintiffs surmount [this] obstacle.'" Espinoza, 797 F.3d at 234 and 807 F.3d at 506 (both quoting RCM, 928 F.2d at 1328).  "'If Courts would not respect the directors' decision not to file suit, then demand would be an empty formality.'" Spiegel v. Buntrock, 571 A.2d 767, 777-78 (Del. 1990) (citation omitted).

    For all of these reasons, "[f]ederal courts routinely evaluate allegations of wrong-ful refusal of shareholder demand at the pleadings stage and in the context of a motion to dis-miss." In re Boston Scientific Corp. S'holders Litig., 2007 WL 1696995, at *5 (S.D.N.Y. June 13, 2007) (Hellerstein, J.).  "[A]ffording discovery, and allowing the case to proceed beyond the pleadings stage, would frustrate the purposes behind . . . substantive law regarding demand-refusal, and its recognition that the determination of whether or not to pursue litigation is a busi-ness decision entitled to deference under the business judgment rule." Id.  As noted by the Maryland Court of Special Appeals, "the demand requirement would cease to have meaning" if

discovery were permitted on the issue of whether the Board's refusal of the demand was proper because "[a] shareholder could evade a motion to dismiss by making a demand, waiting for it to be refused, and then seeking discovery on the demand refusal process." *Oliveira*, 2016 WL 361055, at *11.[2]

### C.   Plaintiffs' Allegations Do Not Overcome the Business Judgment Rule And Md. Corps. Code § 2-405.1(c) Presumption

#### 1.   ARCP's Board Does Not Lack Disinterestedness And Independence

Plaintiffs allege that three of the six members of the ARCP Board that refused the Witchko demand and three of the seven members of the ARCP Board that considered the Serafin, Turner and Froehner demand – Messrs. Andruskevich, Frank and Stanley, each of whom joined the Board in 2014, shortly before, and in Mr. Frank's case, just weeks before, the accounting issues underlying this litigation were brought to the attention of the Audit Committee – were "interested in the outcome of [the] investigation" as "targets" and "tasked with investigating allegations of their own wrongdoing," because they are "defendants in the securities class action" and face "potentially ruinous liability." Compl. ¶¶ 135-37; *see also id.* ¶¶ 8, 17-19. This

---

[2] Judge Sullivan's decision in <u>Kautz</u> v. <u>Sugarman</u>, 2011 WL 1330676 (S.D.N.Y. Mar. 31, 2011), denying a motion to dismiss a wrongful refusal claim under Maryland law "pending limited discovery on the reasonableness of the Board's investigation," is one of the "'few, if any, cases'" (<u>Espinoza</u>, 797 F.3d at 234 and 807 F.3d at 506) that has surmounted the demand requirement. <u>Kautz</u> is easily distinguished.  The board in <u>Kautz</u> refused to consider a demand because the shareholder "repeatedly refused" to provide a board committee formed to consider the demand "proof of her continuous ownership of . . . shares." <u>Id.</u> at *5.  The court declined "to adopt a bright-line rule that would require a shareholder to prove his or her continuous ownership of shares as a prerequisite to making demand" (<u>id.</u> at *6) and denied the motion to dismiss on that ground.  ARCP's Board did not refuse to consider plaintiffs' demands; it is, in fact, undisputed that ARCP's Board did consider plaintiffs' demands.

The Second Circuit affirmed a different ruling in <u>Kautz</u>, involving only a related case brought by a different shareholder who contended that a demand was excused – a contention that Judge Sullivan and the Second Circuit both rejected.  <u>Kautz</u>, 2011 WL 1330676, at *8-10, <u>aff'd</u>, 456 F. App'x 16, 17-21 (2d Cir. 2011).

WEIL:\95579496\4\14807.0004

Court's decision dismissing the claim by plaintiffs Serafin, Turner and Froehner that demand was excused rejected this very claim, holding that none of ARCP's outside, non-management directors "is alleged to have participated in the fraudulent conduct, so there is no reason to believe that any would be 'personally interested in the outcome of any [ ] inquiry.'" Serafin, 2015 WL 3901646, at *3 (citation omitted).  And, with respect to the refusal of the Serafin, Turner and Froehner demand, the plaintiffs in the Serafin, Turner and Froehner action concede that the Board that considered their demand "consisted of a majority of new directors."  Case No. 15-cv-8563 Compl. ¶¶ 126-27.

This Court's holding in Serafin rejecting plaintiffs' claim that Messrs. Andrus-kevich, Frank and Stanley lacked disinterestedness and independence followed well-settled law holding that directors do not lack disinterestedness and independence merely because they are named as defendants in a lawsuit.  As stated in Oliveira, "[t]his assertion is contrary to estab-lished law."  2016 WL 361055, at *8; see also Werbowsky, 766 A.2d at 143-44; Brehm v. Eisner, 746 A.2d 244, 257 n.34 (Del. 2000); Aronson, 473 A.2d at 817.  Adding the conclusory words plaintiffs add here – that directors "fac[e] potentially ruinous liability" (Compl. ¶ 137) – does not alter this principle.  See, e.g., Kautz v. Sugarman, 456 F. App'x 16, 21 (2d Cir. 2011) (under Maryland law, directors do not lack disinterestedness and independence because they face "potentially 'ruinous' financial liability"); Seidl v. Am. Century Cos.,713 F. Supp. 2d 249, 260-61 (S.D.N.Y. 2010) (under Maryland law, directors do not lack disinterestedness and indepen-dence because plaintiff alleges that "directors will be exposed to civil and criminal liability"), aff'd, 427 F. App'x 35 (2d Cir. 2011).  Any other rule would eliminate the demand requirement in any case in which directors face shareholder derivative and securities claims – a "bootstrap argument" that would "effectively abrogate" the demand requirement.  Aronson, 473 A.2d at

818; see also Lewis v. Graves, 701 F.2d 245, 249 (2d Cir. 1983) (rejecting such a rule because it

would allow plaintiffs to "circumvent the demand requirement merely by naming as defendants

all members of the derivative corporation's board" – a "transparent litigation tactic" that "is like

sleight of hand that is slower than the eye").

Plaintiffs' allegation that Messrs. Andruskevich, Frank and Stanley lack disinter-

estedness and independence because they served on Board committees charged with overseeing

the alleged wrongdoing (Compl. ¶¶ 17-19, 37-38, 136) is also "contrary to well-settled" law.

Wood v. Baum, 953 A.2d 136, 142 (Del. 2008).  "Simply being members of the board or the

compensation committee and participating in the decision-making do not suffice."  Weinberg v.

Gold, 838 F. Supp. 2d 355, 360 (D. Md. 2012) (Maryland law).  Committee membership thus

does not "make . . . directors interested for demand purposes."  In re Pfizer Inc. Deriv. Sec.

Litig., 503 F. Supp. 2d 680, 686 (S.D.N.Y. 2007), aff'd, 307 F. App'x 590, 594 (2d Cir. 2009).

As Messrs. Andruskevich, Frank and Stanley do not lack disinterestedness and

independence, plaintiffs' claim that the disinterestedness and independence of Mr. Rufrano and

Saul Ewing is tainted because they somehow lack independence from Messrs. Andruskevich,

Frank and Stanley (Compl. ¶¶ 135, 137, 140) also fails.  "[W]ithout an interested director the

independence of the remaining directors need not be examined."  In re Dow Chem. Co. Deriv.

Litig., 2010 WL 66769, at *8 (Del. Ch. Jan. 11, 2010).  The same is true with respect to a law

firm advising disinterested and independent directors.

### 2. The Board's Determination To Refuse The Demands For Reasons Other Than The Merits Of Plaintiffs' Claims Is Protected By The Business Judgment Rule

Plaintiffs contend that refusing a demand "for reasons unrelated to the merits of

the claims" is wrongful and that "[t]he rejection of the Demand in the absence of information"

about "whether the claims in the Demand even had merit" is "not an informed act and is not

entitled to business judgment protection."  Compl. ¶¶ 114, 141; see also id. ¶¶ 130, 138, 145, 147, 148, 149, 150.  Plaintiffs are wrong.  It is not enough simply to allege that a board's investigation of a demand "failed to consider whether specific, individual[s] . . . breached their . . . dut[ies]."  Halpert Enters. v. Harrison, 2007 WL 486561, at *5 (S.D.N.Y. Feb. 14, 2007), aff'd, 2008 WL 4585466 (2d Cir. Oct. 15, 2008).  "[N]o caselaw support[s] that such consideration is a requirement."  Id.

In considering a demand, "'[t]he focus . . . is not on the merits of the plaintiffs' claims, but on whether maintenance of the suit would be in the company's best interest'" – "'even if a derivative suit may ultimately be successful.'"  Boland, 31 A.3d at 570 (citation omitted).  "A board may in good faith refuse a shareholder demand to begin litigation even if there is substantial basis to conclude that the lawsuit would eventually be successful on the merits," and "[i]t is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation or harm its long-term strategic interests."  In re INFOUSA, Inc. S'holders Litig., 953 A.2d 963, 986 (Del. Ch. 2007), quoted in Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti, 2015 WL 2270673, at *27 (Del. Ch. May 8, 2015), aff'd, 2016 WL 341201, at *1 (Del. Jan. 28, 2016) (affirming "on the basis of and for the reasons assigned" by trial court).  "Conscientious managers may conclude that legal action is unjustified because not meritorious, or because it would subject the firm to injury."  Kamen, 939 F.2d at 462.  Refusing a demand where success in the lawsuit demanded "would be detrimental to the best interests of the corporation" is "a proper exercise of business judgment."  Oliveira, 2016 WL 361055, at *9.

Accordingly, a board that determines that pursuit of a lawsuit would not serve the best interests of the corporation even if "successful" need not focus on the merits of the lawsuit –

especially when the statute of limitations has not run its course and the merits of the claim can be considered at a later time.  This is a "quintessential exercise of business judgment," balancing "a complex array of costs (both monetary and otherwise), potential benefits, and the risk of uncertain outcomes."  Ironworkers, 2015 WL 2270673, at *25.  As explained in In re Consumers Power Co. Derivative Litigation:

> [T]wo areas of consideration are relevant: (1) Are the merits of the case strong enough to make it likely that the corporation could maintain a successful action against its officers and directors for wrongdoing?  If there is not a winnable lawsuit, a corporation should reject a derivative stockholder's demand. (2) Even if there is a meritorious suit against the directors of a corporation, should such an action be maintained in light of other factors?  In other words, once other factors are evaluated, might bringing the derivative action work a potentially greater harm to the corporation than any possible gain from that action?
>
> In the present case, the special committee proceeded with the assumption that the answer to question (1) was that they could proceed successfully against their directors and obtain a judgment or settlement. Accordingly, they focused their time and effort on consideration of decision (2).  After weighing the factors relevant to that decision, the special committee determined that litigation was not in the best interest of Consumers Power.
>
> Such a process, that hypothetically assumes the outcome on one issue as a decision-making expedient to focusing attention to another necessary issue, is a common and acceptable method in decision theory for performing cost-benefit analysis.  If such a decision-making process avoids areas of attack on the decision for bias or a lack of thoroughness, if it avoids enormous time and expense, and if it avoids the risk of public disclosure or misuse of confidential information, strategies and opinions, it is a method that reasonable board members could find acceptable.

132 F.R.D. 455, 485-86 (E.D. Mich. 1990) (emphasis added).  Courts, of course, regularly employ the same decision-making technique.  See, e.g., Morales-Santana v. Lynch, 804 F.3d 520, 534 (2d Cir. 2015) ("assuming for the sake of argument").

Judge Rakoff's and the Second Circuit's decisions in In re Merrill Lynch & Co. Securities, Derivative & ERISA Litigation, 773 F. Supp. 2d 330 (S.D.N.Y. 2011), aff'd sub nom. Lambrecht v. O'Neal, 504 F. App'x 23 (2d Cir. 2012), are directly on point.  Both rejected

claims that Bank of America's board wrongfully refused a shareholder's demand involving investments in subprime securities because the board "undertook no investigation of her claims." 773 F. Supp. 2d at 347.

Judge Rakoff pointed to the consideration by Bank of America's board of "the potential adverse effect of pursuing the claims" as demanded by the shareholder "on the defenses of [Bank of America]'s wholly owned subsidiary, Merrill Lynch" in pending securities and ERISA litigation and governmental inquiries. Id. at 348. Judge Rakoff also pointed to the board's conclusion that "commencing the litigation outlined in [plaintiff's] letters would impair Merrill Lynch's defenses in these various proceedings" because

- "plaintiffs in the securities and ERISA actions would likely argue that Merrill Lynch's assertion of such a claim constitutes an admission of liability by Merrill Lynch,"

- "to prevail against the former Merrill Lynch officers and directors . . . Merrill Lynch would need to allege and prove facts similar to those that the securities and ERISA plaintiffs have been trying to establish in their cases," and

- "the various governmental agencies that have made inquiries . . . would likely seek to use any litigation papers filed by Merrill Lynch against its former officers and directors against Merrill Lynch itself."

Id. at 348.

The Second Circuit affirmed, stating that "[plaintiff] failed to demonstrate that the Board either acted in bad faith or conducted an unreasonable investigation." Lambrecht, 504 F. App'x at 28. The Second Circuit, like the district court, pointed to the threat Bank of America faced through "the possible compromise of pending litigation and ongoing government inquiries." Id. at 27.

Judge Castel reached the same conclusion in In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation, 2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013), another case involving a refusal of a demand by Bank of

WEIL:\95579496\4\14807.0004

America's board.  The board concluded that "[p]ursuing the claims" demanded by plaintiffs "could have 'potential adverse effects' on BofA in other pending litigations, and 'would likely impair the Corporation's defenses in . . . various proceedings and investigations,'" as "parties in those other actions would construe BofA's pursuit of plaintiff's proposed claims as an admission of liability" and that "any recovery was likely outweighed by the risks of weakening BofA's defenses in those other pending actions."  Id. at *7.

 As here, plaintiff in Bank of America alleged that "the Board's complete dis-regard of the actual merits of the claims set forth in the Demand is improper and demonstrates the Board's lack of diligence and good faith."  Id.  The court held that these allegations "fall far short of plausibly alleging facts defeating the presumption that the board did not act with honest, good-faith belief that its refusal was in the best interest of the company."  Id. at *8.  The court stated that these allegations simply "reflect plaintiff's subjective disagreement with the ultimate merits of the board's refusal of his demand letter," and that the law "does not permit a court to second-guess the substantive merits of a demand's refusal or to prescribe a board's deliberation process."  Id.  The court thus concluded that "[t]he complaint contains no assertions plausibly alleging that the board's refusal of [plaintiff's] demand" – based on the board's conclusion that "the risks posed by other, parallel litigations outweighed any possible recovery" – "violated the business judgment rule."  Id.

 Here, as in Merrill Lynch, Lambrecht and Bank of America, ARCP's Board focused on whether "'any considerations in favor of pursuing the Claims at this time'" were out-weighed by "'the likely negative impact'" on the securities litigation and governmental investi-gations "of pursuing the claims 'assuming only for the sake of argument that the Claims have merit.'"  Compl. ¶ 130 (quoting Compl. Ex. I at 4).  In addition, and unlike Merrill Lynch,

Lambrecht and Bank of America, ARCP's Board also considered "the 'likelihood' that the current litigation and governmental investigations would yield more information concerning the claims before the statute of limitations expired." Id. A fortiori, the result here should be the same as in Merrill Lynch, Lambrecht and Bank of America.

### 3. Plaintiffs' Remaining Claims Also Do Not Overcome The Business Judgment Rule Presumption

Plaintiffs question the Board's determination in late 2014 and early 2015 to focus first on completing the investigation required to gauge the problem at hand and restate ARCP's financial statements and then turn to shareholder demands. Compl. ¶ 127.  It was imperative that ARCP issue restated financial statements and become current with respect to its financial filings required by the SEC as quickly as possible, as ARCP faced a risk of delisting by NASDAQ and potential defaults on billions of dollars of debt that could be called at any moment.  See Nov. 18, 2014 Form 8-K, at 1-2 (reporting receipt of NASDAQ delinquency notice); id. at 1, Dec. 30, 2014 Form 8-K, at 2, Jan. 28, 2015 Form 8-K, at 2-3, Feb. 13, 2015 Form 8-K, at 2, and Feb. 26, 2015 Form 8-K, at 2 (Exs. G-K) (reporting negotiation of consents and waivers with lenders and noteholders requiring the delivery of restated financial statements by March 2, 2015).  Focusing first on the immediate need to address its financial statements in order to ensure the continued ability of investors to buy or sell ARCP stock on a national exchange and avoid a default on billions of dollars of debt prior to turning to potential claims in a shareholder demand was plainly a rational business judgment by directors who faced an enormous task that required substantial time and effort and who had to prioritize their time.  See Boston Scientific, 2007 WL 1696995, at *6 ("'[c]orporate directors normally have only limited available time to deliberate, and a determination of what matters will (and will not) be considered must necessarily fall within the board's discretion'") (quoting Levine v. Smith, 591 A.2d 194, 214 (Del. 1991)).

WEIL:\95579496\4\14807.0004

Plaintiffs also question the Board's determination not to report to plaintiffs' counsel in a manner that would "document the procedures it employed in its investigation or its reasoning" and not to offer "evidence" with respect to "who, if anyone, the Board interviewed . . . or what documents, if any, it reviewed." Compl. ¶ 142. This claim fails on the law and on the facts. On the law, "there is no prescribed procedure or form a Board must follow when responding to a demand letter," Merrill Lynch, 773 F. Supp. 2d at 349, and "[a]n investigating board generally is under no obligation to make use of any particular investigative technique." Halpert Enters. v. Harrison, 2008 WL 4585466, at *2 (2d Cir. Oct. 15, 2008); see also Levine, 591 A.2d at 214 ("there is obviously no prescribed procedure that a board must follow"), quoted in Ironworkers, 2015 WL 2270673, at *26 n.254 and Boston Scientific, 2007 WL 1696995, at *5. On the facts, the Board's letter to plaintiffs' counsel did "document" the Board's procedures. See Compl. Ex. I at 3-5 (documenting the Board's discussions concerning the demand on January 12, March 3, April 20, May 21 and June 11, including with counsel to the Audit Committee, counsel to the company, and counsel to the Board in connection with the demands, and including three lengthy paragraphs describing the Board's reasoning).

Plaintiffs question why interviews were not conducted with respect to the merits of the claims underlying the demands. This claim, too, fails on the law and on the facts. On the law, "there is no rule that requires a board to interview anyone." Copeland v. Lane, 2012 WL 4845636, at *8 (N.D. Cal. Oct. 10, 2012), aff'd, 621 F. App'x 449 (9th Cir. 2015). Rather, "'[i]n any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ.'" Halpert, 2008 WL 4585466, at *2 (quoting Mt. Moriah Cemetery v. Moritz, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991), aff'd, 599 A.2d 413 (Del. 1991)); see also Ironworkers, 2015 WL 2270673, at *26 n.255 (also quoting Mt. Moriah, 1991 WL 50149, at

WEIL:\95579496\4\14807.0004

*4).  On the facts, there was no need to conduct interviews concerning the merits of plaintiffs' claims in light of the Board's judgment that even if the claims had merit "'any considerations in favor of pursuing the Claims at this time'" were outweighed by "'the likely negative impact on the Ongoing Litigation and Government Investigations' of pursuing the claims" and the "'likelihood' that the current litigation and governmental investigations would yield more information concerning the claims before the statute of limitations expired."  Compl. ¶ 130.

Plaintiffs claim that "it is unknown in what respect the Board believed the claims would have a negative impact on the Company's other legal problems."  Id. ¶ 148.  Plaintiffs are again wrong on both the law and on the facts.

On the law, and as noted by the Second Circuit in Espinoza, a board's response to a stockholder demand "could expose the corporation to regulatory and other legal risks," and "the board is entitled to – and typically, required to – mitigate that risk in deciding how to respond to a stockholder's demand."  Espinoza, 807 F.3d at 508 (emphasis added); see also Canty v. Day, 13 F. Supp. 3d 333, 343 (S.D.N.Y. 2014) (pursuing derivative claims on behalf of the corporation during the pendency of related litigation against the corporation "'may well compromise the corporation's position on the merits, thereby causing or exacerbating precisely the harm that the plaintiff ostensibly seeks to remedy'") (citation omitted), aff'd, 599 F. App'x 20 (2d Cir. 2015); In re Massey Energy Co. Deriv. & Class Action Litig., 2011 WL 2176479, at *2, 23 (Del. Ch. May 31, 2011) (describing "myriad of rational business reasons" why disinterested directors might determine not to pursue claims that "could expose the entity, and thereby indirectly its stockholders, to severe financial harm in the form of large judgments").  On the facts, the Board's letter refusing the demands explicitly states exactly in "what respect the Board believed the claims would have a negative impact on the Company's other legal problems"

(Compl. ¶ 148): such action "might jeopardize defenses that ARCP could raise in the Ongoing

Litigation and Governmental Investigations" and "might well compromise ARCP's position . . .

and expose ARCP and its stockholders to significant impairment in the value of their ARCP

stock."  Compl. Ex. I at 5.

Plaintiffs' final claim, that the Board did not "consider whether the Company

might suffer increased harm by delaying to bring the claims" (Compl. ¶ 127), is also meritless.

The Board plainly considered the timing for filing claims and made a business judgment with

respect to whether the potential benefits of waiting to determine whether to file claims out-

weighed the potential benefit of filing claims now.  The letter documents the Board's consider-

ation of the "ample time" remaining "before the statute of limitations would run" on potential

claims the Board might someday choose to assert and the "significant remedial measures"

already taken by ARCP to "address any future concerns regarding the potential for the conduct

underlying the demand to reoccur."  Id. Ex. I at 5.  As stated on page one of the letter, "it is not

in the best interests of ARCP to pursue the Claims at this time."  Id. Ex. I at 1 (emphasis added).

At bottom, plaintiffs disagree with the Board's business judgment with respect to

whether pursuit of the claims asserted in this litigation now will harm the corporation in pending

securities litigation against the corporation and in government investigations, and whether more

will be known concerning the strength and value of the claims once the litigation against the

corporation and the government investigations are tested in the "crucible of litigation."  The law

"does not permit a plaintiff to overcome the business judgment rule simply by asserting that the

substance of a board of director's decision was wrong."  Merrill Lynch, 773 F. Supp. 2d at 346,

quoted in Steinberg v. Mozilo, 2015 WL 5724753, at *5 (S.D.N.Y. Sept. 29, 2015); see also

Ironworkers, 2015 WL 2270673, at *32 ("[t]he question is not whether the conclusion was

wrong"); <u>Friedman</u> v. <u>Dolan</u>, 2015 WL 4040806, at *7 n.50 (Del. Ch. June 30, 2015) ("'dis-

agreement'" with a board's business judgment "'does not state a cognizable claim'") (citation

omitted).  Plaintiffs' "subjective disagreement with the ultimate merits of the board's refusal of

[their] demand letter[s] . . . does not permit a court to second-guess the substantive merits of a

demand's refusal or to prescribe a board's deliberation process."  <u>Bank of Am.</u>, 2013 WL

1777766, at *8.  For all of these reasons, plaintiffs' disagreement with the Board's business

judgment with respect to the wisdom of pursuing the claims identified in plaintiffs' demands at

this time does not give plaintiffs standing to second-guess the Board's business judgment.

## II.   PLAINTIFFS ALSO FAIL TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

If the Court finds that plaintiffs have overcome the business judgment rule with

respect to the ARCP Board's refusal of plaintiffs' demands, the Court must determine whether

plaintiffs have alleged a cause of action upon which relief can be granted under Federal Rule of

Civil Procedure 12(b)(6) with respect to the claims the Board determined not to pursue at this

time.  For the reasons set forth below, plaintiffs' claims fail under Rule 12(b)(6).  Nominal

Defendant ARCP does not make or join any of the arguments in this Point II.

### A.   Plaintiffs' Section 14(a) Claims Fail To State A Claim

Plaintiffs allege that ARCP's "proxy statements filed May 4, 2012, April 30,

2013, and April 29, 2014" violated Section 14(a).  Compl. ¶ 167.  They are wrong.

#### 1.   The Claims Fail Against Defendants Who Did Not Solicit The Challenged Proxies

"Section 14(a) makes it 'unlawful for any person . . . in contravention of such

rules and regulations as the Commission may prescribe . . . <u>to solicit or to permit the use of his</u>

<u>name to solicit</u> any proxy.'"  <u>In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act</u>

<u>(ERISA) Litig.</u>, 757 F. Supp. 2d 260, 293 (S.D.N.Y. 2010) (quoting 15 U.S.C. § 78n(a)(1)

(emphasis added by court).  "Thus, according to the plain language of Section 14(a), liability attaches only to defendants who actually solicited proxies or permitted the use of their name to solicit proxies."  Id.

The challenged proxy statements state that "[t]he accompanying proxy" is "solicited by and on behalf of the board of directors."  See May 4, 2012 Proxy Statement at 1 (Ex. A); Apr. 30, 2013 Proxy Statement at 1 (Ex. B); Apr. 29, 2014 Proxy Statement at 1 (Ex. E). But only eight of the thirteen individuals named as defendants served as directors on even one of the dates of these proxy statements, and only three of those eight individuals served as directors on all three of the dates.  Plaintiffs do not allege any act other than the issuance of proxy state-ments that could constitute soliciting proxies.  Accordingly, individuals who were not directors on the dates these proxies were solicited cannot be liable under Section 14(a).

Plaintiffs' Section 14(a) claims against Messrs. Block, Frank and Kay and Ms. Beeson and Ms. McAlister therefore should be dismissed because these individuals did not serve on ARCP's Board on the dates proxies were solicited; plaintiffs' Section 14(a) claims against Messrs. Andruskevich, Bowman, Kahane, Michelson and Stanley arising out of the May 4, 2012 proxy statement should be dismissed because these individuals did not serve on ARCP's Board on that date; and plaintiffs' Section 14(a) claims against Messrs. Andruskevich and Stanley arising out of the April 30, 2013 proxy statement should be dismissed because these individuals did not serve on ARCP's Board on that date.  Ex. A at 5-8; Ex. B at 5-10.

### 2.    The Claims Fail Against All Defendants Because Plaintiffs Have Not Alleged An "Essential Link" Between The Proxy Statements And The Alleged Harm

"To state a Section 14(a) claim, a plaintiff 'must show that . . . the proxy solici-tation . . . was an essential link in the accomplishment of the transaction.'"  Cent. Laborers' Pension Fund v. Dimon, 2014 WL 3639185, at *4 (S.D.N.Y. July 23, 2014) (emphasis added;

citation omitted), aff'd, 2016 WL 66501 (2d Cir. Jan. 6, 2016).  This means that the "votes for a specific corporate transaction requiring shareholder authorization" must be "obtained by a false proxy statement" and that the transaction must be "a direct cause of the pecuniary injury for which recovery is sought."  Gen. Elec. Co. v. Cathcart, 980 F.2d 927, 933 (3d Cir. 1992) (emphasis added).  A "conclusory assertion" that a corporation "'was damaged as a result of the material misrepresentations and omissions in the Proxy Statements' . . . 'is far too general.'"  Cent. Laborers', 2014 WL 3639185, at *4 (citation omitted).

The challenged action here is the re-election of ARCP directors who are alleged to have been mismanaging the company and to have caused ARCP to suffer losses due to errors in financial statements.  This claim, that a proxy statement "allowed" directors "to retain their positions on the board, thus ensuring that they could continue to mismanage the company," is "precisely the sort of claim that courts have repeatedly found insufficient" under Section 14(a).  Gen. Elec., 980 F.2d at 933 (emphasis added).

The court in General Electric dismissed Section 14(a) claims based on allegations that a proxy statement "allowed the appellees to retain their positions on the board, thus ensuring that they could continue to mismanage the company," which in turn "caused General Electric to lose money" due to "fraudulent billing practices," "construction of nuclear containment vessels with serious design and safety flaws," "reckless investments in real estate and leveraged buy-outs," "illegal dumping" of chemicals, and bribery of foreign officials.  Id. at 929, 933.  The court stated that "the mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss."  Id. at 933.

The court in Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc., 594

30

F.3d 783 (11th Cir. 2010), likewise dismissed Section 14(a) claims based on an allegation that a proxy statement resulted in the re-election of directors and mismanagement in the form of "accounting errors," a "restatement of earnings" and "false" financial projections.  Id. at 788. The court held that the "reelection of directors was not an essential link to the losses of which the shareholders complain."  Id. at 797.

The court in In re Diamond Foods, Inc. Derivative Litigation, 2012 WL 1945814 (N.D. Cal. May 29, 2012), aff'd, 575 F. App'x 716 (9th Cir. 2014), also dismissed a claim that a "proxy statement is actionable under Section 14(a) because 'it contained false financial information that influenced the vote to re-elect the directors who were up for election.'"  Plaintiffs alleged that these directors were mismanaging the company and that the company subsequently "received a formal order of investigation from the SEC," that "the U.S. Attorney's Office . . . opened an inquiry into . . . criminal fraud," that the company announced that "previously issued consolidated financial statements . . . should no longer be relied on" due to "material weaknesses in its internal control over financial reporting," and that senior executives, including the company's chief executive officer and chief financial officer, "were placed on administrative leave from their positions."  Id. at *1-3, 7.  The court held that "the re-election of directors who have allegedly mismanaged the company is insufficient to meet the 'essential link' requirement of Section 14(a)" and that "there can be no liability for a Section 14(a) claim based on a theory of mismanagement."  Id. at *7.

These principles similarly require dismissal of plaintiffs' Section 14(a) claims here.  Plaintiffs allege harm to ARCP resulting from "wide-ranging errors in its financial statements," an SEC investigation, "criminal probes," a restatement of financial statements, "material weaknesses" in internal controls and departures of senior executives, Compl. ¶¶ 79, 83, 86, 93,

102-04, and that the reelection of directors pursuant to the challenged proxy statements was "an essential causal link" in the conduct alleged to have harmed ARCP. Id. ¶¶ 59, 63, 70, 169. As in General Electric, Edward J. Goodman and Diamond Foods, "the mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss," and "the reelection of directors was not an essential link to the losses of which the shareholders complain." Gen. Elec., 980 F.2d at 933; Edward J. Goodman, 594 F.3d at 797; Diamond Foods, 2012 WL 1945814, at *7; see also Fink v. Weill, 2005 WL 2298224, at *5 (S.D.N.Y. Sept. 19, 2005) ("[p]laintiffs' Section 14(a) claim fails because the wrongs flowing from the allegedly false and misleading disclosure are improper governance and injury resulting from the undisclosed transactions, rather than from any particular action taken by shareholders on the basis of the proxy statements").

### B.    Plaintiffs' State Law Claims Fail To State A Claim

Plaintiffs' state law claims group thirteen differently situated individuals together under the label "Individual Defendants." Compl. ¶ 31; see also id. ¶¶ 5, 7, 32, 33, 34, 38, 52, 108, 111, 151, 164, Prayer for Relief ¶¶ B, D. Plaintiffs allege in conclusory fashion, without regard for these differently situated individuals' positions, duties and responsibilities, that they all "intentionally or recklessly breached or disregarded their fiduciary duties," that this constituted an "abuse of control" and that they were "unjustly enriched." Id. ¶¶ 155, 156, 159, 164. These thirteen individuals move separately, each joining the portion of the argument below bearing their name.

32

1.      **Messrs. Andruskevich, Bowman, Frank, Michelson And Stanley And Governor Rendell**

a.      **Plaintiffs' Breach Of Fiduciary Duty Claims**

(i)      **Maryland Statutory Law And ARCP's Charter**

Messrs. Andruskevich, Bowman, Frank, Michelson and Stanley and Governor Rendell served as outside, non-management directors of ARCP.  By statute, Maryland law permits broad limitations on director and officer liability, allowing charters of Maryland corporations to "include any provision . . . limiting the liability of its directors and officers" unless "the person actually received <u>an improper benefit or profit in money</u>" or "a judgment or other final adjudication adverse to the person is entered . . . based on a finding . . . that the person's action, or failure to act, was the result <u>of active and deliberate dishonesty</u> and was material to the cause of action adjudicated in the proceeding."  Md. Cts. & Jud. Proc. Code § 5-418 (emphasis added).  ARCP's charter provides that "[t]o the maximum extent that Maryland law . . . permits limitation of the liability of directors and officers of a corporation, no present or former director or officer of the Corporation shall be liable to the Corporation or its stockholders for money damages."  ARCP Charter Art. 8, § 8.01 (Ex. Q).  As stated in the leading treatise on Maryland corporate law, "[i]f a corporation's charter includes a provision limiting director and officer liability and there is no allegation that the director's and officer's conduct falls within one of the two exceptions, a court should dismiss any claim against the director or officer by the corporation or its stockholders for money damages arising out of such conduct."  James J. Hanks, Jr., <u>Maryland Corporation Law</u> § 6.9, at 220-220.1 (2015 Supp.).  Accordingly, plaintiffs "must allege an improper benefit or active and deliberate dishonesty in order to state a claim."  <u>Hayes</u> v. <u>Crown Cent. Petroleum Corp.</u>, 78 F. App'x 857, 865 (4th Cir. 2003).

With respect to "improper benefit or profit in money," plaintiffs do not allege

WEIL:\95579496\4\14807.0004

facts showing that Messrs. Andruskevich, Bowman, Frank, Michelson and Stanley or Governor

Rendell received any "improper benefit or profit in money."  An allegation that outside, non-

management directors "receive compensation" for their service as directors – and that is all

plaintiffs allege as to Messrs. Andruskevich, Bowman, Frank, Michelson and Stanley and

Governor Rendell  – does not "sufficiently plead that [directors] received an improper benefit."

Goldstein v. Berman, 2014 WL 824050, at *4 (D. Md. Feb. 28, 2014).  If it did, any plaintiff in

any case could plead "an improper benefit or profit in money" because all outside, non-

management directors are compensated for their service.  See Strugala v. Riggio, 817 F. Supp. 2d

378, 387 (S.D.N.Y. 2011) ("'Receipt of director's fees does not suggest a conflict of interest.  If

it did, every director who receives directors' fees would be biased.'") (citation omitted);

Werbowsky, 766 A.2d at 139 ("interest . . . may not be found merely from the fact that directors

are paid for their services"); Oliveira, 2016 WL 361055, at *8 (claim that director "lacks

independence because he is compensated for his service as a Director" is "unfounded").

       With respect to "active and deliberate dishonesty," Maryland courts have held that

the term "dishonesty" "involves lying or the intent to commit fraud," Attorney Grievance

Comm'n v. Dore, 73 A.3d 161, 168 (Md. 2013), and the Fourth Circuit has held that "active and

deliberate dishonesty" requires allegations of fraud.  Hayes, 78 F. App'x at 865.  Plaintiffs do not

even include the conclusory phrase "active and deliberate dishonesty" in their complaint, and

plaintiffs do not allege any facts (much less with the particularity that would be required by Rule

9(b) if plaintiffs were alleging fraud) showing that Messrs. Andruskevich, Bowman, Frank,

Michelson or Stanley or Governor Rendell "lied" or committed "fraud."

       Instead, plaintiffs rely on a conclusory allegation that these six outside, non-

management directors – grouped together with all defendants, without specificity – "intentionally

WEIL:\95579496\4\14807.0004

. . . breached or disregarded their fiduciary duties."  Compl. ¶ 155.  Even assuming an intentional

breach of fiduciary duty rose to the level of "active and deliberate dishonesty," which it does not,

"a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

**(ii)      The Caremark Doctrine**

No Maryland decision addresses the liability of directors under Maryland com-

mon law for failing to monitor corporate affairs, separate from the protection permitted by Md.

Cts. & Jud. Proc. Code § 5-418.  Under the Caremark doctrine in Delaware – named for the

decision adopting the doctrine in In re Caremark International Inc. Derivative Litigation, 698

A.2d 959 (Del. Ch. 1996), which the Delaware Supreme Court adopted in Stone v. Ritter, 911

A.2d 362 (Del. 2006) – establishing liability for a failure to monitor corporate affairs is "possibly

the most difficult theory in corporation law upon which a plaintiff might hope to win a judg-

ment." Caremark, 698 A.2d at 967, quoted in, e.g., Stone, 911 A.2d at 372 (Del. Ch. 1996),

Wayne Cty. Emps.' Ret. Sys. v. Dimon, 2015 WL 6079958, at *1 (2d Cir. Oct. 16, 2015), and

Central Laborers' Pension Fund v. Dimon, 2016 WL 66501, at *5 (2d Cir. Jan. 6, 2016).

Under Caremark, courts "routinely reject the conclusory allegation that because

illegal behavior occurred, internal controls must have been deficient, and the board must have

known so."  Desimone v. Barrows, 924 A.2d 908, 940 (Del. Ch. 2007), quoted in Ok. Firefight-

ers Pension & Ret. Sys. v. Citigroup, Inc., 2015 WL 1884453, at *4 (Del. Ch. Apr. 24, 2015) and

La. Mun. Police Emps.' Ret. Sys. v. Hesse, 962 F. Supp. 2d 576, 588 (S.D.N.Y. 2013).  Courts

also reject generalizations such as the "conclusion that since the company suffered large losses,

and since a properly functioning risk management system would have avoided such losses, the

directors must have breached their fiduciary duties in allowing such losses."  In re Citigroup Inc.

35

S'holder Deriv. Litig., 964 A.2d 106, 128-29 (Del. Ch. 2009).

   Instead, <u>Caremark</u> holds that oversight failure claims require facts showing that directors (1) "'<u>utterly failed to implement any reporting or information system or controls</u>'" or (2) "'having implemented such a system or controls, <u>consciously failed to monitor or oversee its operations</u> thus disabling themselves from being informed of risks or problems requiring their attention.'"  <u>Stone</u>, 911 A.2d at 370, adopting <u>Caremark</u> (emphasis added), <u>quoted in</u>, <u>e.g.</u>, <u>Cent. Laborers'</u>, 2016 WL 66501, at *3 & n.1 (emphasis added).  "In either case, imposition of liability requires a showing that the directors <u>knew</u> that they were not discharging their fiduciary obligations."  <u>Stone</u>, 911 A.2d at 370 (emphasis added); <u>see</u> <u>also</u> <u>Guttman</u> v. <u>Huang</u>, 823 A.2d 492, 506 (Del. Ch. 2003) (liability requires "a showing that the directors were conscious of the fact that they were not doing their jobs")  "[D]irectors have to have acted with a state of mind consistent with <u>a conscious decision to breach their duty of care</u>," and "<u>indolence</u>" must be "<u>so persistent that it could not be ascribed to anything other than a knowing decision not to even try</u> to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance."  <u>Desimone</u>, 924 A.2d at 935 (emphasis added); <u>see</u> <u>also</u> <u>Teachers' Ret. Sys.</u> v. <u>Aidinoff</u>, 900 A.2d 654, 668 (Del. Ch. 2006) (a plaintiff must demonstrate "conscious torpor in the face of duty," with directors breaching their fiduciary duties "not as a result of trying to do their job but still making mistakes of a gross nature, but because the directors' level of indolence was so extreme that it arose to a conscious decision to take the salary of a director while intentionally failing to discharge one's fiduciary obligations").

   In short, "a claim will survive a motion to dismiss . . . <u>only</u> if the plaintiff presents well-pleaded facts to suggest a reasonable inference that a majority of the directors <u>consciously disregarded their duties over an extended period of time</u>."  <u>David B. Shaev Profit Sharing</u>

36

Account v. Armstrong, 2006 WL 391931, at *1 (Del. Ch. Feb. 13, 2006), aff'd, 911 A.2d 802

(Del. 2006) (emphasis added); see also Bank of Am., 2013 WL 1777766, at *13 (granting

motion to dismiss where plaintiffs failed to allege that directors "consciously failed to monitor"

corporate affairs or that they "acted with a conscious disregard for their responsibilities");

Canadian Commercial Workers Indus. Pension Plan v. Alden, 2006 WL 456786, at *7-8 (Del.

Ch. Feb. 22, 2006) (granting motion to dismiss where plaintiff did not allege "specific facts

supporting a reasonable inference that Defendants were conscious of the fact that they were not

doing their jobs" or "specific allegations that Defendants ignored red flags that should have

alerted them" of unlawful conduct, and stating that "[a]bsent supporting facts . . . bald conclu-

sions" concerning director oversight failures "need not and will not be accepted as sufficient to

survive a motion to dismiss").

        Nothing of the type is alleged here – and certainly no facts showing that Messrs.

Andruskevich, Bowman Frank, Michelson or Stanley or Governor Rendell "knew they were not

discharging their fiduciary objections," acted with "indolence" "so persistent that it could not be

ascribed to anything other than a knowing decision not to even try to make sure the corporation's

officers had developed and were implementing a prudent approach to ensuring law compliance"

and  acted with "conscious torpor in the face of duty," or made "a conscious decision to take the

salary of a director while intentionally failing to discharge one's fiduciary obligations."

        To the contrary, plaintiffs concede that ARCP's board had an Audit Committee

(Compl. ¶¶ 17, 18, 19, 21, 22, 23, 37, 38), that the Audit Committee met (id. ¶¶ 58, 62, 69), that

ARCP had a Code of Ethics for directors, officers and employees, which included a "duty to

report" any "illegal or unethical business or workplace conduct" (id. ¶ 36) and that the Audit

Committee commenced an "investigation into concerns regarding accounting practices and other

matters that first were reported to the Audit Committee on September 7, 2014" (id. ¶ 79).  Plaintiffs concede that ARCP's financial statements were audited by an independent and reputable accounting firm, Grant Thornton (id. ¶¶ 37, 38, 58, 62, 69, 83), and allege no reason "why it was unreasonable for the Board or the Audit Committee to rely on [its auditors]."  In re China Auto. Sys. Inc. Deriv. Litig., 2013 WL 4672059, at *8 n.97 (Del. Ch. Aug. 30, 2013); see also In re IAC/InterActiveCorp. Sec. Litig., 478 F. Supp. 2d 574, 606 (S.D.N.Y. 2007) (finding no "culpable failure of oversight" and dismissing complaint where "plaintiffs acknowledge the existence of an audit committee"); TVI Corp. v. Gallagher, 2013 WL 580927, at *15-16 (Del. Ch. Oct. 28, 2013) (plaintiffs failed to state a "claim for oversight" where they did not plead "specific facts to support an inference that Defendant directors utterly failed to implement any reporting or information systems or controls" and "acknowledge[d] that the Board maintained an audit committee"); Guttman, 823 A.2d at 506-07 (plaintiffs "have not come close to pleading a Caremark claim" where they do not allege that "the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation").

Plaintiffs do not allege that Ms. McAlister informed Messrs. Andruskevich, Bowman, Frank, Michelson or Stanley or Governor Rendell about the concerns with respect to the AFFO reporting issue underlying this litigation that plaintiffs allege she "'repeatedly informed' defendants Schorsch, Kay and 'senior management'" about "beginning in or about February 2014."  Compl. ¶ 96.  Plaintiffs allege only that that "red flags to ARCP's deficient internal controls and financial reporting" were raised to Mr. Michelson in a June 3, 2014 letter from Marcato Capital Management, LP, an ARCP shareholder.  Compl. ¶ 75.  The Marcato letter

contains no such "red flags." Plaintiffs do not allege that the Marcato letter concerned – or even mentioned –AFFO, much less wrongdoing involving AFFO or intentional financial statement errors. The June 2014 letter merely stated Marcato's view that ARCP was "'engaging in too many transformative transactions too quickly'" and pointed to a May 20, 2014 Form 8-K in which ARCP used an "'inaccurate share count'" in a pro forma first quarter financial statement that was subsequently corrected and a May 29, 2014 Form 8-K reporting that ARCP overstated advisor fees for a particular transaction in a prospectus. Compl. ¶ 75 (quoting letter). The letter thus shows errors that were uncovered and corrected – the <u>opposite</u> of what happens when directors consciously fail to monitor corporate affairs.

Plaintiffs' oversight claim against Messrs. Andruskevich, Bowman, Frank, Michelson and Stanley and Governor Rendell is thus the same claim the Second Circuit rejected in <u>Central Laborers'</u>: that ARCP "'could have, should have, had a <u>better</u> reporting system, but not that it had <u>no</u> such system.'" 2016 WL 66501, at *5 (citation omitted). As in <u>Central Laborers'</u>, this claim fails as a matter of law:

> The Complaint does not allege a total lack of any reporting system at [the defendant company]; rather, the Plaintiffs allege the reporting system should have transmitted certain pieces of information . . . In other words, [the defendant] had a system for reporting risk to the Board, but in the Plaintiffs' view it should have been a better system.

> Contentions that the Board did not receive specific types of information do not establish that the Board utterly failed to attempt to assure a reasonable information and reporting system exists, particularly in the case at hand where the Complaint not only fails to plead with particularity that [the defendant] lacked procedures to comply with its . . . reporting requirements, but actually concedes the existence of information and reporting systems. . . .

> Stated more generally, in criticizing the Board's risk oversight and its delegation thereof, throughout the Complaint, the Plaintiffs concede that the Board was exercising <u>some</u> oversight, albeit not to the Plaintiffs' hindsight-driven satisfaction. . . . That is short of pleading that the Board utterly failed to implement any reporting or information system or controls, sufficient to raise a reasonable doubt of the directors' good faith.

*Id.* (quoting *In re Gen. Motors Co. Deriv. Litig.*, 2015 WL 3958724, at *15 (Del. Ch. June 26, 2015)).  On February 11, 2016, as this brief was being completed, the Delaware Supreme Court affirmed the *General Motors* decision on which the Second Circuit relied in *Central Laborers* "on the basis of and for the reasons assigned" in the decision on which the Second Circuit relied.  *In re Gen. Motors Co. Deriv. Litig.*, 2016 WL _____ (Del. Feb. 11, 2016).

### b.      Plaintiffs' Abuse Of Control Claims

Plaintiffs' claims for "abuse of control" against Messrs. Andruskevich, Bowman, Frank, Michelson and Stanley and Governor Rendell (Count II) fail.  No such independent cause of action exists under Maryland law because "abuse of control" is simply an alternative way of describing a breach of fiduciary duty.  *See* *Sadler* v. *Retail Props. of Am., Inc.*, 2014 WL 2598804, at *16 (N.D. Ill. June 10, 2014) (Maryland law) (dismissing "abuse of control" claims "for the same reasons the counts explicitly labeled 'breach of fiduciary duty' are dismissed" because allegations that "the Individual Defendants 'abused their positions of authority' . . . are just another way of describing how the Individual Defendants allegedly breached their fiduciary duties"); *id.* ("[c]haracterizing" a breach of fiduciary duty claim "as something other than a breach of fiduciary duty does not change the underlying legal theory"); *In re Galena Biopharma, Inc. Deriv. Litig.*, 83 F. Supp. 3d 1047, 1072 (D. Or. 2015) (Delaware law) ("abuse of control" not "viable as independent claim[ ]").  Even if such an independent cause of action exists, it fails as to Messrs. Andruskevich, Bowman, Frank, Michelson and Stanley and Governor Rendell for the same reasons plaintiffs' breach of fiduciary duty claims fail.

### c.      Plaintiffs' Unjust Enrichment Claims

Plaintiffs' claims for unjust enrichment against Messrs. Andruskevich, Bowman, Frank, Michelson and Stanley and Governor Rendell (Count III) fail because the unjust enrichment claim is based on the same allegations as the breach of fiduciary duty claim.  *See, e.g.,*

WEIL:\95579496\4\14807.0004

Bank of Am., 2013 WL 1777766, at *15 ("[b]ecause [plaintiff's] unjust enrichment claim is premised on defendants' violation of their fiduciary duties, and the breach of fiduciary duty claim is dismissed, [plaintiff's] unjust enrichment claim is dismissed as well").

These claims also fail because plaintiffs have not identified any benefit that the these defendants unjustly received.  Under Maryland law, "[u]njust enrichment consists of three elements: 1. a benefit conferred upon the defendant by the plaintiff; 2. an appreciation or knowledge by the defendant of the benefit; and 3. the acceptance or retention by the defendant under circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  Hill v. Cross Country Settlements, LLC, 936 A.2d 343, 351 (Md. 2007) (citation omitted).  The complaint does not allege any benefit that any of Messrs. Andruskevich, Bowman, Frank, Michelson or Stanley or Governor Rendell received other than their compensation as outside, non-management directors.  "[A] claim for unjust enrichment cannot be maintained where, as here the 'only enrichment alleged by plaintiffs consists of defendants' salaries, benefits and unspecified bonuses.'"  Steinberg v. Dimon, 2014 WL 3512848, at *4 (S.D.N.Y. July 16, 2014) (citation omitted).  There is no "legal authority supporting the proposition that the mere retention of directors' and officers' ordinary compensation can sustain an unjust enrichment claim predicated on allegations that these defendants breached their fiduciary duties."  In re Pfizer Inc. S'holder Deriv. Litig., 722 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2010).

### 2.   Messrs. Kahane And Weil

The complaint similarly seeks to impose liability on Messrs. Kahane and Weil based on their positions, while alleging nothing or almost nothing regarding their conduct with respect to ARCP.  The complaint alleges that Mr. Kahane was a co-founder of ARCP, served as a director of ARCP from February 28, 2013 until June 24, 2014, and was elected as a director pursuant to ARCP's proxy statements.  Compl. ¶¶ 24, 62-63, 69-70.  It further alleges that Mr.

Weil was a director of ARCP from March 2012 until June 24, 2014, elected pursuant to ARCP's proxy statements; was a director of ARCT IV prior to its merger with ARCP; and was an officer of ARCP, serving as President, Treasurer and Secretary beginning at ARCP's formation.  Id. ¶¶ 17, 25, 58-59, 62-63, 69-70.  The complaint does not state when Mr. Weil left these officer positions, but it alleges that Mr. Kay became President and Mr. Block became Treasurer and Secretary in December 2013.  Id. ¶¶ 20, 26.  The complaint does not allege that Messrs. Kahane or Weil had any involvement with any of the alleged accounting errors.  Indeed, the complaint never alleges any specific action by Mr. Kahane, and the only specific action alleged as to Mr. Weil is his signing of ARCP's 2011 and 2012 Form 10-Ks (id. ¶¶ 57, 61).  These limited allegations do not state a claim under Maryland law.

> ### a.   Messrs. Kahane And Weil Are Not Liable Under Maryland Law And ARCP's Charter

As explained above, under ARCP's charter and Maryland statutory law, officers and directors may be liable only they engaged in "active and deliberate dishonesty" or "actually received an improper benefit."  See supra Point II B 1 a i.  The complaint fails to allege either as to Messrs. Kahane or Weil.

First, as with the outside, non-management directors, the complaint includes no allegations that Messrs. Kahane or Weil lied or committed fraud, which is required to plead "active and deliberate dishonesty" under Maryland law.  The complaint pleads only (and conclusorily) that all defendants generally "intentionally or recklessly breached or disregarded their fiduciary duties."  Compl. ¶ 155.  For the reasons stated in Point II B 1 a i, this is insufficient as a matter of law.  See also Goldstein, 2014 WL 824050, at *4 ("Allegations of breaches of fiduciary duties alone are not sufficient" to "plead active and deliberate dishonesty.").

Second, the complaint alleges no improper benefit received by Messrs. Kahane or Weil.  Their mere positions as directors and officers of ARCP – even if the complaint included allegations that they were compensated for these positions, which it does not – do not suggest they received an improper benefit sufficient to avoid the limitation of liability under ARCP's charter, as permitted by Maryland law.  See supra Point II B 1 a i; Goldstein, 2014 WL 824050, at *4 (allegations that officers and directors "receive compensation" do not "sufficiently plead that [they] received an improper benefit").

Plaintiffs' allegation that other entities purportedly controlled by Messrs. Kahane and Weil received payments from ARCP likewise fails to plead an improper benefit.  The only such entity identified in the complaint is ARC Properties Advisors, LLC ("ARC Advisors"), which acted as the "'external' manager" to ARCP prior to January 8, 2014.  Compl. ¶¶ 48, 50-51.  The complaint alleges the payment of commissions, fees, and expenses to ARC Advisors, but it does not allege any individual benefit flowing from ARCP to Messrs. Kahane or Weil.  See id. ¶¶ 50-51.  Its conclusory allegation that Messrs. Kahane and Weil (with Messrs. Schorsch and Block) controlled ARC Advisors, is similarly deficient, as the complaint pleads no facts regarding Messrs. Kahane's or Weil's relationships with ARC Advisors or their involvement in any payments from ARCP to ARC Advisors.  Id. ¶ 48.  See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  Even if payments to ARC Advisors could be construed as providing a benefit to Messrs. Kahane or Weil, the complaint fails to show that such a benefit was improper.  At most, the complaint alleges that ARC Advisors received "commissions, fees, and expenses" as the "'external' manager . . . responsible for the day-to-day affairs" for ARCP.  A service provider's

43

receipt of payment for its services does not demonstrate an improper benefit.[3]  Compl. ¶¶ 48, 50; see infra Point II B 2 b iii.

### b.     Plaintiffs' Claims Fail On The Merits

Even if plaintiffs' claims were not barred by ARCP's charter, as permitted by Maryland statute, plaintiffs have failed to allege facts to state a claim under Maryland law.  See supra Point II B 1 (incorporated herein by reference).

### (i)     Breach Of Fiduciary Duty

Plaintiffs' bare allegations regarding Messrs. Kahane and Weil do not show that these defendants breached their fiduciary duties to ARCP.  As explained above, Plaintiffs claim that defendants breached their duties by failing to "maintain[ ] compliance with applicable laws and regulations . . . , as well as controls over disclosure," is governed by the Caremark doctrine (Compl. ¶ 154) and is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  See supra Point II B 1 a ii (quoting Caremark, 698 A.2d at 967).  Plaintiffs have not alleged facts showing that Messrs. Kahane or Weil "knew that they were not discharging their fiduciary obligations," as required to state a claim.[4]  Stone, 911 A.2d

---

[3] Plaintiffs' allegation that ARCP later stated it did not have "evidence of the receipt and it could not support the value of" costs associated with a $20 million payment to ARC Advisors in connection with the transition to internal management fares no better.  Compl. ¶ 51.  That ARCP could not, at a later time, document all aspects this payment does not show that it was improper, nor does it show that Messrs. Kahane or Weil received any improper benefit.

[4] The complaint does not identify a single action taken by Mr. Weil in his capacity as an officer of ARCP that allegedly breached a fiduciary duty he owed to the company.  But even if it had, Caremark principles have been extended to officers.  See In re World Health Alternatives, Inc., 385 B.R. 576, 591-92 (Bankr. D. Del. 2008) ("the Caremark decision itself suggests that the same test would be applicable to officers"); see also Brenner v. Albrecht, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012) (describing Caremark doctrine with respect to claim brought against "board and senior management for failing to implement and monitor an effective internal control system, which failure caused accounting errors to go unnoticed"); In re Walt Disney Co., 2004 WL 2050138, at *3 (Del. Ch. Sept. 10, 2004) ("[t]o date, the fiduciary duties of officers have been assumed to be identical to that of directors"); Caremark, 698 A.2d at 969 ("absent grounds

at 370 (Del. 2006) (emphasis added).

   The complaint contains no allegations showing that Mr. Kahane or Mr. Weil had any involvement in or knowledge of the alleged accounting errors.  In fact, the complaint includes no specific allegations as to Mr. Kahane's conduct whatsoever.  It therefore fails to provide any basis to conclude that he "consciously disregarded [his] duties over an extended period of time."  Shaev, 2006 WL 391931, at *1.  Meanwhile, Mr. Weil is alleged to have done nothing more than sign SEC filings that contain alleged misstatements (Compl. ¶¶ 57, 61), but this is "insufficient because such allegations do not establish any notice of illegality or fraudulent conduct."  Campbell v. Weihe Yu, 25 F. Supp. 3d 472, 483 (S.D.N.Y. 2014); see also China Auto., 2013 WL 4672059, at *8 (allegations that "directors attested to the misleading financial statements by signing one of the SEC filings at issue" did not plead "the directors knew the statements were wrong, or in some other way failed to secure adequate internal controls").

   Plaintiffs also fail to allege that Messrs. Kahane or Weil was on notice of any deficiencies in ARCP's controls.  Ms. McAlister is not alleged to have informed either of them about any AFFO reporting issue.  Compl. ¶ 96.  Mr. Kahane was not alleged ever to have been a member of ARCP's management, and Mr. Weil was replaced in his management positions by Messrs. Schorsch and Kay by December 2013 – months before Ms. McAlister allegedly informed anyone of any issue regarding the reporting of AFFO.  Id. ¶¶ 24-25.  And the letter from Marcato Capital Management, L.P. – which was dated only three weeks before Messrs. Kahane and Weil resigned as directors of ARCP (see id. ¶¶ 24-25, 75) – did not raise any "red flags" regarding AFFO or intentional financial statement errors.  See supra Point II B 1 a ii.  On

to suspect deception, neither corporate boards nor senior officers can be charged with wrong-doing simply for assuming the integrity of employees and the honesty of their dealings on the company's behalf") (emphasis added).  Accordingly, the same standard applies to Mr. Kahane, who was a director, and Mr. Weil, who served as both a director and an officer of ARCP.

45

the contrary, Plaintiffs' allegations show that ARCP had an Audit Committee, a Code of Ethics, and a reputable independent auditor, contradicting the claim that the defendants "utterly failed to implement any reporting or information system[s] or controls." TVI, 2013 WL 5809271, at \*15-16.

Plaintiffs' claim thus amount to nothing more than an allegation that Messrs. Kahane and Weil were officers or directors of ARCP at a time when accounting errors took place. Because these allegations do not show that they " 'knew that they were not discharging their fiduciary obligations,' and therefore, acted in 'bad faith,' " In re ITT Corp. Deriv. Litig., 588 F. Supp. 2d 502, 508 (S.D.N.Y. 2008) (citation omitted), the complaint fails to state a claim.

### (ii)   Abuse Of Control

Abuse of control is not a viable independent claim; plaintiffs' claim for abuse of control fails as to Messrs. Kahane and Weil for the same reasons as their claim for breach of fiduciary duty.  See supra Point II B 1 b.

### (iii)   Unjust Enrichment

The complaint fails to state any of the elements of a claim of unjust enrichment as to Messrs. Kahane and Weil.  See supra Point II B 1 c (listing elements).  First, plaintiffs fail to plead any benefit conferred on Messrs. Kahane or Weil.  See supra Point II B 2 a.  To the extent this claim rests on compensation received for their work as directors or officers of ARCP, this benefit is insufficient as a matter of law.  See supra Point II B 1 c.  Moreover, the conclusory allegation that Messrs. Kahane and Weil (along with other individuals) controlled ARC Advisors and other unspecified entities that allegedly received payments for services provided to ARCP fails to establish any improper benefit for the reasons set forth in Point II B 2 a, above.  See Johnson v. Ross, 419 F. App'x 357, 361 (4th Cir. 2011) (affirming dismissal of unjust enrich-ment claim under West Virginia law against the controlling shareholder of the beneficiary corpo-

ration, because even "assuming <u>arguendo</u> that [the corporation] was unjustly enriched, this does not, without more, give rise to liability on the part of [the defendant] as an individual"); <u>cf.</u> <u>In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.</u>, 921 F. Supp. 2d 56, 90 (S.D.N.Y. 2013) (holding under Pennsylvania law that parent corporation could not be liable for unjust enrichment for allegedly wrongful payments to its subsidiaries).

      <u>Second</u>, there is no allegation of any knowledge or appreciation by Messrs. Kahane or Weil of any such benefit.  <u>See</u> <u>Hill</u>, 936 A.2d at 351.  The complaint contains no allegations at all regarding their knowledge, and it never alleges any involvement by Messrs. Kahane or Weil in any payments to ARC Advisors or any other related entity.

      <u>Third</u>, even if plaintiffs had alleged a benefit conferred on Messrs. Kahane and Weil, "the law [would] not consider [them] unjustly enriched unless the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust."  <u>First Nat'l Bank of Md.</u> v. <u>Shpritz</u>, 493 A.2d 410, 419 (Md. Ct. Spec. App. 1985).  Plaintiffs allege no such circumstances with respect to Messrs. Kahane and Weil.  Again, the allegations regarding ARC Advisors at most plead that ARC Advisors received payments as a service provider to ARCP. They do not demonstrate that Messrs. Kahane or Weil was unjustly enriched.  Accordingly, this claim should be dismissed.  <u>See</u> <u>Mohiuddin</u> v. <u>Doctors Billing & Mgmt. Sols., Inc.</u>, 9 A.3d 859, 866 (Md. Ct. Spec. App. 2010) (affirming dismissal of unjust enrichment claim where the complaint left the court "guessing why the canons of justice and equity require [the defendant] to pay [the plaintiff] any amount of compensation").

    **3.**    **<u>Mr. Kay</u>**

        **a.**    **<u>Claims Predicated On Pre-December 2013 Conduct</u>**

      Plaintiffs base their claims, in part, on purported misconduct that occurred in 2012 and 2013.  For example, Plaintiffs' claim for violations of Section 14(a) is predicated on alleged

misrepresentations and omissions contained in "the Company's proxy statements filed May 4, 2012, April 30, 2013, and April 29, 2014[.]"  See Compl. ¶ 167; see also id. ¶¶ 55-65 (allegations regarding "misleading and inaccurate statements" predating December 16, 2013).  As an initial matter, Mr. Kay cannot be held liable for any conduct that occurred prior to the start of his employment at ARCP.  See Tr. at 91:9-21, In re ARCP, No. 1:15-mc-00040 (AKH) (S.D.N.Y. Oct. 27, 2015) (in context of Ms. Beeson, the Court noted that "clearly she can't be sued for anything that happened before November 2013" when she joined ARCP).  Because Mr. Kay did not join ARCP until December 16, 2013 (Compl. ¶ 20), all claims predicated on alleged pre-December 2013 conduct must be dismissed against him.

**b.    Plaintiffs' Breach Of Fiduciary Duty Claims**

Mr. Kay incorporates by reference the legal standards and arguments set forth by co-defendants in Point II B 1 a i, as applicable.  Plaintiffs fail to state any claim against Mr. Kay for breach of fiduciary duty, because the complaint contains no plausible allegation that Mr. Kay engaged in "active and deliberate dishonesty" or received "an improper benefit" as required under Maryland law.  Hayes, 78 F. App'x at 865.

With respect to "active and deliberate dishonesty," Mr. Kay incorporates by reference the legal arguments set forth in his motions to dismiss in the Jet Capital and In re ARCP actions that the allegations taken from the now-withdrawn McAlister complaint are not sufficiently reliable to satisfy the pleading standards.[5]  Although Mr. Kay recognizes that the Court may not wish to revisit its prior ruling on this issue (Order at 7, In re ARCP, No. 1:15-mc-

---

[5]  See, e.g., Kay's Reply ISO Mot. to Dismiss at 3-5, Jet Capital, No. 1:15-cv-00307 (AKH) (S.D.N.Y. Aug. 12, 2015) (citing RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), aff'd, 387 F. App'x 72 (2d Cir. 2010) & In re UBS AG Sec. Litig., 2012 WL 4471265, at *17, n. 17 (S.D.N.Y. Sept. 28, 2012)); Kay's Reply ISO Mot. to Dismiss at 2-3, In re ARCP, No. 1:15-mc-00040 (AKH) (S.D.N.Y. Aug. 12, 2015).

WEIL:\95579496\4\14807.0004

00040 (AKH) (S.D.N.Y. Nov. 6, 2015), he raises the argument in order to preserve the issue for appeal.[6]

  With respect to "improper benefit or profit in money," the complaint does not allege any facts suggesting that Mr. Kay received any "improper benefit or profit in money." The complaint's mere reference to Mr. Kay's salary and bonus structure is not sufficient. Compl. ¶¶ 20, 91; Goldstein, 2014 WL 824050, at *4.[7]  In any event, Mr. Kay's significant purchases – and no sales – of ARCP stock during the time he allegedly knew the stock was artificially inflated by the alleged fraud undercut any suggestion that he received an improper benefit or profit.  See generally Kay's Reply ISO Mot. to Dismiss at 7, Jet Capital, No. 1:15-cv-00307 (AKH) (S.D.N.Y. Aug. 12, 2015).

### c. Plaintiffs' Abuse Of Control Claims

  Mr. Kay incorporates by reference the legal standards and arguments set forth by co-defendants in Point II B 1 b.

### d. Plaintiffs' Unjust Enrichment Claims

  Mr. Kay incorporates by reference the legal standards and arguments set forth by co-defendants in Point II B 1 c.

---

[6] While not attempting to burden the Court with duplicative briefing, Mr. Kay notes that in the other actions the parties agreed that all arguments previously made and rejected by the Court in the Jet Capital and In re ARCP actions did not need to be reasserted and are preserved for appeal. See Letter from Robert M. Rothman, Robbins Geller, to the Honorable Alvin K. Hellerstein at 3, In re ARCP, No. 1:15-mc-00040 (AKH) (S.D.N.Y. Dec. 14, 2015).  As Plaintiffs' counsel in this matter was not privy to these agreements, Mr. Kay reasserts the arguments raised in the Jet Capital and In re ARCP actions to avoid any claim that these issues were waived.

[7] Although the complaint notes that plaintiffs, in the Supplemental Demand dated April 22, 2015, asked the Board to investigate "whether the compensation paid during previous years to [Mr. Kay] was obtained due to self-dealing or was paid while [he was] breaching [his] fiduciary duties[,]" the complaint is devoid of any such allegations.  See Compl. ¶ 124.

WEIL:\95579496\4\14807.0004

4.     Ms. Beeson

    a.     Plaintiffs' Breach Of Fiduciary Duty Claims

Based on the legal principles set forth in Point II B 1 a i above, Count I of the complaint should be dismissed against Ms. Beeson because there are no allegations that Ms. Beeson received an "improper benefit" or was "actively and deliberately dishonest."  See Goldstein, 2014 WL 824050, at *4.  Rather, the complaint contains the following limited factual allegations against her: (1) Ms. Beeson "served as the Company's President and COO from November 2013 to December 15, 2014" when she "resigned" (Compl. ¶¶ 30, 93), (2) Ms. Beeson received a "bonus" and a "stock award" in 2013 (id. ¶ 30), and (3) Ms. Beeson signed the 2013 Form 10-K, which allegedly reflected an overstated AFFO calculation and allegedly contained misstatements regarding ARCP's internal controls.  Id. ¶¶ 30, 67-68.

Concerning "benefits" to Ms. Beeson, the complaint alleges simply that Ms. Beeson was compensated for her role as an officer of ARCP (id. ¶ 30), without any suggestion that such compensation was improper or unreasonable.  In fact, the "bonus" and "stock award" that the complaint cites were negotiated as part of Ms. Beeson's original employment agreement with ARCP.  See Oct. 29, 2013 ARCP Form 8-K (Ex. R).  And, although the complaint asserts that ARCP's "acquisition spree was designed to (and did) transfer hundreds of millions of dollars from ARCP to entities owned and/or controlled by defendants Schorsch, Weil, Kahane, Block and Budko" (Compl. ¶ 50), it does not allege – nor could it – that Ms. Beeson had any ownership interest in any of these entities, that she stood to gain financially from any related-party trans-action, or that she had any substantive connection to any of the alleged transactions.

The complaint is also devoid of any allegation that Ms. Beeson acted with "active and deliberate dishonesty" as that phrase has been interpreted under Maryland law.  The crux of the complaint concerns the alleged misreporting of ARCP's AFFO figure in ARCP's financial

50

statements and alleged misstatements regarding the adequacy of ARCP's internal controls for

financial reporting.  Compl. ¶¶ 3, 8, 79-80.  The complaint, however, does not include any alle-

gation that Ms. Beeson had a role in calculating or determining the reporting of AFFO, worked

with or supervised the offices of the Chief Accountant or CFO in these matters, or counseled any

particular calculation or reporting of this metric.  Nor does the complaint allege that it was within

Ms. Beeson's purview to ensure the effectiveness of ARCP's internal controls over financial

reporting.  And, the absence of any allegations connecting Ms. Beeson to the alleged conduct is

unsurprising given that Ms. Beeson's role was to manage ARCP's four operating divisions –

Office, Industrial and Build-to-Suit, Retail and Warehouse Distribution, Restaurants, and Private

Capital Management.  See Oct. 29, 2013 ARCP Form 8-K Ex. 99.1 (Ex. S).  That the alleged

conduct targeted by the complaint concerns areas outside the scope of Ms. Beeson's responsi-

bility and authority is fatal to plaintiffs' fiduciary duty claim.  See In re IT Group, Inc., 2005 WL

3050611, at * 9 (D. Del. Nov. 15, 2005) (dismissing breach of fiduciary duty against officer

when officer did not benefit from transaction and was not alleged to have taken part in the

decisions that form the basis of the complaint); Pereira v. Cogan, 294 B.R. 449, 520 (S.D.N.Y.

2003), vacated on other grounds, Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005) ("A defendant

may be classified as a corporate officer for liability purposes if he had discretionary authority in

the relevant functional area and the ability to cause or prevent the complained-of action."); Gold

v. Sloan, 486 F.2d 340, 351 (4th Cir. 1973) (officers who lack "the slightest connection" with

events in question or ability to meaningfully participate should not be considered officers for

liability purposes); cf. In re Verestar, Inc., 343 B.R. 444, 474 (Bankr. S.D.N.Y. 2006) (breach of

fiduciary claim adequately alleged where "officers had direct discretionary authority over certain

aspects of Verestar's business and participated in the scheme to transfer to ATC assets that were

within their area of responsibility").

Moreover, Ms. Beeson (1) acquired shares of ARCP common stock twice during a period in which, according to the complaint, she allegedly participate in a scheme to improperly inflate ARCP's value, and (2) Ms. Beeson held those shares throughout her tenure at ARCP.  See Exs. T & U (Beeson Form 4s).  These facts corroborate what the complaint through its inadequate pleadings independently shows, namely, that the pleading's assertion of "active and deliberately dishonesty" as to Ms. Beeson is wholly void of support.

Accordingly, the breach of fiduciary duty claim against Ms. Beeson should be dismissed.[8]

### b.      Plaintiffs' Abuse Of Control Claims

For the reasons set forth in Point II B 1 b above, the abuse of control claim against Ms. Beeson should be dismissed.

### c.      Plaintiffs' Unjust Enrichment Claims

In addition to the fact that the unjust enrichment claim is (a) duplicative of plaintiffs' breach of fiduciary duty claim, and (b) based on Ms. Beeson's mere receipt of a salary and a bonus (see Point II B 1 c above), the claim should be dismissed because the complaint does not contain allegations that would allow the Court to conduct the required "fact-specific balancing of the equities" to determine whether Ms. Beeson's receipt of compensation allegedly was unjust.  See Royal Inv. Grp. LLC v. Wang, 961 A.2d 665, 685 (Md. Ct. Spec. App. 2008)

---

[8] To the extent that the breach of fiduciary duty claim against Ms. Beeson is grounded in an alleged failure to monitor ARCP's affairs, for the same reasons proffered by Messrs. Andruskevich, Bowman, Frank, Michelson, Stanley, and Rendell (see Point II B 1 a ii above), Caremark precludes such a claim against Ms. Beeson.  In re Verifone Holdings, Inc. S'holder Derivative Litig., 2010 WL 3385055, at *4 (N.D. Cal. Aug. 26, 2010) ("a Caremark claim exists when directors and officers fail to implement any reporting or information system or controls or, having implemented such controls, consciously fail to oversee their operations, thus disabling themselves from being informed of risks or problems requiring their attention").

WEIL:\95579496\4\14807.0004

(emphasis added) (quoting Hill v. Cross Country Settlements, LLC, 936 A.2d 343 (Md. 2007)).

### 5.   Mr. Schorsch

Pursuant to the Court's direction at the December 15, 2015 conference, Mr. Schorsch joins this brief in lieu of submitting a separate memorandum of law.  Mr. Schorsch does not accept or adopt any of the factual characterizations, statements, or descriptions set forth in the operative complaint, and vigorously disputes the allegations against him.  Mr. Schorsch joins in the above legal arguments by co-defendants, which demonstrate that the operative complaint should be dismissed as to Mr. Schorsch because plaintiffs do not allege particularized facts showing that their demands were wrongfully refused by the board under Rule 23.1.  (See supra, Point I).  In addition to failure to plead that demand was wrongfully refused, pursuant to Rule 12(b)(6) plaintiffs have failed to state a claim as to Mr. Schorsch (a) under Section 14(a) of the Exchange Act, because they fail to allege the required "essential link" between the proxy statements at issue and the alleged harm (see supra, Point II A 2), and (b) for "abuse of control," because no such cause of action exists under Maryland law (see supra, Point II B 1 b).

### 6.   Mr. Block

Pursuant to the Court's direction at the December 15, 2015 conference, Mr. Block joins this brief in lieu of submitting a separate memorandum of law.  Mr. Block does not accept or adopt any of the factual characterizations, statements, or descriptions set forth in the operative complaint or in this memorandum, except to the limited extent necessary or required for the Court to rule on the motion to dismiss.  In doing so, Mr. Block reserves the right to contest the accuracy of any such factual characterizations, statements and descriptions.  Mr. Block joins in the above legal arguments made by his co-defendants, which demonstrate that the operative complaint should be dismissed as to Mr. Block because plaintiffs do not allege particularized facts showing that their demands were wrongfully refused by the board under Rule 23.1.  (See

supra, Point I).  In addition to plaintiffs' failure to plead that demand was wrongfully refused, plaintiffs have also failed to state a claim under Rule 12(b)(6) as to Mr. Block (a) under Section 14(a) of the Exchange Act, because they fail to allege the required "essential link" between the proxy statements at issue and the alleged harm (see supra, Point II A 2), and (b) for "abuse of control," because no such cause of action exists under Maryland law (see supra, Point II B 1 b).

### 7.    Ms. McAlister

Ms. McAlister joins the legal arguments set forth in Points I and II A of this memorandum of law.  The legal reasoning in Points I and II A is sound and should be adopted by the Court in support of the dismissal of the complaint or, if the Court concludes that plaintiffs' demands were wrongfully refused, dismissal of plaintiffs' Section 14(a) claim (Count IV).  Ms. McAlister, however, does not accept or adopt any of the factual characterizations, statements, or descriptions set forth in the complaint or contained in Points I or II A or any other portion of this memorandum of law.  In addition, for the reasons set forth below, Ms. McAlister moves to dismiss plaintiffs' abuse of control claim (Count II) and unjust enrichment claim (Count III) against her.[9]

### a.    Plaintiffs' Abuse Of Control Claims

Plaintiffs' abuse of control claim against Ms. McAlister should be dismissed because "abuse of control" is not an independent cause of action under Maryland law.  As noted in Point II B 1 b, supra, no Maryland court has ever recognized an independent cause of action for "abuse of control."  Plaintiffs cannot salvage their claim by looking to Delaware law.  See In re Galena, 83 F. Supp. 3d at 1072 (Delaware law) ("abuse of control" not "viable as [an] independent claim[])"; Engel v. Sexton, 2009 WL 361108, at *15 (E.D. La. Feb. 11, 2009)

---

[9] Although Ms. McAlister is not challenging here the pleading sufficiency of plaintiffs' breach of fiduciary duty claim (Count I) against her, she reserves her rights with respect to all defenses.

(Delaware law) (dismissing abuse of control claim because it was a "repackaging of claims for breach of fiduciary duty instead of being a separate tort").

### b.   <u>Plaintiffs' Unjust Enrichment Claims</u>

Plaintiffs' unjust enrichment claim against Ms. McAlister should be dismissed because the complaint fails to allege <u>any</u> benefit that Ms. McAlister received, much less one that would be unjust for her to retain.  <u>See</u> <u>Hill</u>, 936 A.2d at 351 (unjust enrichment requires, among other things, "a benefit conferred upon the defendant by the plaintiff").  To the extent plaintiffs are alleging implicitly that Ms. McAlister was unjustly enriched by ordinary compensation she may have earned as ARCP's Chief Accounting Officer (Compl. ¶ 29), such allegations are insufficient to state an unjust enrichment claim.  <u>See</u> <u>supra</u> Point II B 1 c (citing cases); <u>see</u> <u>also</u> <u>In re Galena</u>, 83 F. Supp. 3d at 1068 (Delaware law) (dismissing unjust enrichment claim for failure to allege facts "from which it can plausibly be inferred that Defendants' normal compensation was extraordinary, unjustified, or connected to the alleged wrongdoing").

### <u>CONCLUSION</u>

For all of these reasons, plaintiffs' complaint – which plaintiffs elected to stand on after reviewing ARCP's and defendants' initial motions to dismiss and being offered an opportunity to file an amended complaint (Statement of Facts Point E) – should be dismissed with prejudice.

55

Dated: New York, New York
February 12, 2016

Respectfully submitted,

SAUL EWING LLP

By: _Charles O. Monk, II_ w/permission

  Charles O. Monk, II
500 East Pratt Street
Baltimore, Maryland 21202
(410) 332-8600 (Telephone)
(410) 332-8862 (Fax)

Attorneys for Nominal Defendant VEREIT Inc.
[With Respect to Point I]

WEIL, GOTSHAL & MANGES LLP

By: /s/ Stephen A. Radin

  Stephen A. Radin
  Christopher L. Garcia
  Evert J. Christensen, Jr.
767 Fifth Avenue
New York, New York  10153
(212) 310-8000 (Telephone)
(212) 310-8007 (Fax)

Attorneys for Defendants Thomas A.
Andruskevich, Bruce D. Frank, Leslie D.
Michelson, Edward G. Rendell and William
G. Stanley
[With Respect to Points I, II A and II B 1]

KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.

By: _Reid M. Figel_ w/permission

  Reid M. Figel
  Andrew E. Goldsmith
  Jessica C. Collins (pro hac vice)
  Bradley E. Oppenheimer (pro hac vice)
1615 M Street NW
Washington, DC 20036
(202) 326-7900 (Telephone)
(202) 326-7999 (Fax)

Attorneys for Defendant Scott Bowman, William
Kahane and Edward M. Weil, Jr.
[With Respect to Points I, II A and II B 1
(as to Mr. Bowman) and Points I, II A and II B 2
(as to Messrs. Kahane and Weil)]

KIRKLAND & ELLIS LLP

By: _Robert Khuzami_ w/permission

  Robert Khuzami
  James P. Gillespie
  Jason R. Parish
  Danielle R. Sassoon
655 Fifteenth Street, N.W.
Washington, DC 20005-5793
 (202) 879-5190 (Telephone)
(202) 879-5200 (Fax)

Attorneys for Defendant David Kay
[With Respect to Points I, II A and II B 3]

WEIL:\95579499\4\14807.0004

PETRILLO KLEIN & BOXER LLP

By: _Guy Petrillo_ w/permission SLC
    Guy Petrillo
    Alexandra R. Clark
    Daniel Goldman
655 Third Avenue, 22nd floor
New York, New York 10017
(212) 370-0330 (Telephone)
(212) 370-0391 (Fax)

Attorneys for Defendant Lisa Beeson
[With Respect to Points I, II A and II B 4]

PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP

By: _Theodore V. Wells Jr._ w/permission SLC
    Theodore V. Wells, Jr.
    Daniel J. Kramer
    Lorin L. Reisner
    Audra J. Soloway
    Justin D. Lerer
    Joshua D. Kaye
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000 (Telephone)
(212) 757-3990 (Fax)

Attorneys for Defendant Nicholas S. Schorsch
[With Respect to Points I, II A 2 and II B 1 b
and II B 5]

STEPTOE & JOHNSON LLP

By: _Michael C. Miller_ w/permission SLC
    Michael C. Miller
    Michael G. Scavelli
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900 (Telephone)
(212) 506-3950 (Fax)

Lara E. Romansic
Molly Bruder Fox (pro hac vice)
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3900 (Telephone)
(202) 429-3902 (Fax)

Attorneys for Defendant Brian S. Block
[With Respect to Points I, II A and II B 6]

ZUCKERMAN SPAEDER LLP

By: _Rita K. Maxwell_ w/permission SLC
    Dwight P. Bostwick (pro hac vice pending)
    Adam L. Fotiades (pro hac vice pending)
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800 (Telephone)
(202) 822-8106 (Fax)

Rita K. Maxwell
Ramya Kasturi
399 Park Avenue, 14th Floor
New York, New York 10022
(212) 704-9600 (Telephone)
(212) 704-4256 (Fax)

Attorneys for Defendant Lisa McAlister
[With Respect to Points I, II A and II B 7]