UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOANNE WITCHKO, Derivatively on Behalf of
Nominal Defendant AMERICAN REALITY
CAPITAL PROPERTIES, INC.,

                    Plaintiff,

   v.

NICHOLAS S. SCHORSCH, et al.,

                    Defendants,

and

AMERICAN REALITY CAPITAL PROPERTIES,
INC.,

                    Nominal Defendant.

---

Lead Case No. 15-cv-6043-AKH

(Consolidated with Case No. 15-cv-8563-AKH)

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST BRIAN S. BLOCK</u>**

# **Table of Contents**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

    A.  The Company And Parties ............................................................................. 3

    B.  AFFO.. .......................................................................................................... 4

    C.  Block's 204 Compensation ........................................................................... 4

    D.  False And Misleading Statements About The Company's AFFO Metric ...... 5

    E.  The Company Admits To Intentional Accounting Errors .............................. 6

    F.  The Restatement ........................................................................................... 8

    G.  Criminal Action Against Block ................................................................... 9

    H.  The Company Incurred Damages Resulting From Block's Misconduct ...... 12

STANDARD ON MOTION FOR SUMMARY JUDGMENT .................................. 14

ARGUMENT ........................................................................................................ 15

    I.       Elements Of Breach Of Fiduciary Duty Claim .......................................... 15

    II.      There Is No Genuine Issue Of Material Fact That Block Owed The Company
          Non-Exculpated Fiduciary Duties ............................................................... 17

    III.     There Is No Genuine Issue Of Material Fact That Block Breached His Non-
          Exculpated Fiduciary Duties Through "Deliberate Dishonesty" In
          Intentionally Causing The Company To Make False And Misleading
          Statements Of Material Fact ........................................................................ 17

    IV.     There Is No Genuine Issue Of Material Fact That Block Breached His Non-
          Exculpated Fiduciary Duties Through "Receipt of Improper Benefit or Profit
          In Money" By Inflating AFFO To Increase His Company Benefits .............. 19

    V.      Block Is Estopped From Contesting His Non-Exculpated Breaches .............. 19

    VI.    There Is No Genuine Issue of Material Fact That The Company Has Been
          Harmed As A Result Of Block's Non-Exculpated Breaches ....................... 22

CONCLUSION ..................................................................................................... 24

# Table of Authorities

**Cases**                                                                          **Page(s)**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)..................................................................................... 15

*Ali v. City of N.Y.*,
    No. 11-cv-5469, 2012 U.S. Dist. LEXIS 126233 (S.D.N.Y. Sept. 5, 2012) ...................... 15-16

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
    665 A.2d 1038 (Md. 1995) .................................................................................. 15

*Bep, Inc. v. Atkinson*,
    174 F. Supp. 2d 400 (D. Md. 2001) ................................................................ 15, 22

*EDI Precast, LLC v. Carnahan*,
    982 F. Supp. 2d 616 (D. Md. 2013) ...................................................................... 15

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
    612 F. Supp. 2d 330 (S.D.N.Y. 2009)................................................................ 14-15

*Felker v. Anderson*,
    No. 04-0372-CV-W-ODS, 2005 U.S. Dist. LEXIS 4236 (W.D. Mo. Feb. 11, 2005)........ 16, 19

*Goldstein v. Berman*,
    No. WDQ-12-2507, 2014 U.S. Dist. LEXIS 26348 (D. Md. Feb. 28, 2014)  .......... 19

*Goldstein v. Lincoln Nat'l Convertible Sec. Fund, Inc.*,
    140 F. Supp. 2d 424 (E.D. Pa. 2001) .................................................................... 16

*In re Adelphia Communs. Corp. Sec. & Derivative Litig.*,
    No. 03 MD 1529 (LMM), 2005 U.S. Dist. LEXIS 17134
    (S.D.N.Y., Aug. 16, 2005) ........................................................................ 18, 20, 21

*Maietta v. Artuz*,
    84 F.3d 100 (2d Cir. 1996).................................................................................. 20

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ...................................................................................... 16

*Maryland Cas. Co. v. W.R. Grace & Co.-Conn.*,
    No. 88 Civ. 4337 (JSM) 1991 U.S. Dist. LEXIS 15354 (S.D.N.Y. Oct. 24, 1991) ................ 20

*Matson v. Alpert (In re LandAmerica Fin. Group, Inc.)*,
    470 B.R. 759 (E.D. Va. Bankr. 2012)................................................................ 17, 22

*New York v. Bower*,
    No. 89 Civ. 4179 (LMM), 1991 U.S. Dist. LEXIS 1204 (S.D.N.Y. Jan. 31, 1991)........... 21-22

*Pitman v. Aran*,
    935 F. Supp. 637 (D. Md. 1996) .......................................................................... 16

*SEC v. Monarch Funding Corp.*,
    192 F. 3d 295 (2d Cir. 1999)................................................................................ 18

*Shenker v. v. Laureate Educ., Inc.*,
    983 A.2d 408 (Md. 2009) ................................................................ 15

*Storetrax.com, Inc. v. Gurland*,
    915 A.2d 991 (Md. 2007) ................................................................ 15

*Strougo v. Bassini*,
    282 F.3d 162 (2d Cir. 2002) ........................................................... 15

*Toner v. Baltimore Envelope Company*,
    498 A.2d 642 (Md. 1985) ............................................................... 15

*Tyco Int'l, Ltd. v. Swartz*,
    No. 03 Civ. 2247 (TPG), 2011 U.S. Dist. LEXIS 20970 (S.D.N.Y. March 3, 2011) .............. 19

*United States v. Block*,
    No. 16-CR-595 (JPO), 2017 U.S. Dist. LEXIS 176083 (S.D.N.Y. Oct. 24, 2017) ................. 11

*United States v. Block*,
    No. 16-CR-595 (JPO), 2018 U.S. Dist. LEXIS 19416 (S.D.N.Y. Feb. 6, 2018) .......... 11-12, 22

*United States v. Hussein*,
    178 F.3d 125 (2d Cir. 1999) ........................................................... 20

*Witchko v. Schorsch*,
    No. 15 Civ. 6043 (AKH), 2016 U.S. Dist. LEXIS 95795 (S.D.N.Y. June 9, 2016) .......... 17, 19

## Statutes & Regulations

Fed. R. Civ. P. 56(a) ........................................................................... 14

Md. Cts. & Jud. Proc. Code §§ 5- 418(a)(1)-(2) ....................................... 17

Plaintiffs Joanne Witchko, Edward Froehner, and Michele Graham Turner 1995 Revocable Trust, Jeffrey Turner as Trustee (collectively, "Plaintiffs"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their Motion for Partial Summary Judgment (the "Motion") against Brian S. Block ("Block") in this consolidated shareholder derivative action brought on behalf of American Realty Capital Properties, Inc. n/k/a VEREIT, Inc. ("ARCP" or the "Company").

## INTRODUCTION

Plaintiffs move for partial summary judgment as to their breach of fiduciary duty claims against Block. The scope of Plaintiffs' motion for partial summary judgment is only for fiduciary claims that related to the conduct for which Block already has been found criminally liable.[1] Block was convicted of criminal securities fraud based on his manipulation of AFFO and the intentionally false and misleading statements concerning AFFO in the Company's 2014 Second Quarter Report and 2014 Second Quarter 8-K.[2] Block is precluded from even contesting these breaches of fiduciary duty because he has already been criminally convicted for the same misconduct constituting those breaches. Courts regularly apply collateral estoppel in civil actions following convictions in overlapping criminal fraud trials. *See, e.g.*, *New York v. Bower*, No. 89 Civ. 4179 (LMM), 1991 U.S. Dist. LEXIS 1204, at \*\*2-3 (S.D.N.Y. Jan. 31, 1991) (criminal conviction

---

[1]    Plaintiffs assert numerous additional breaches of fiduciary duty by Block that are not the subject of this motion, including, *inter alia*, the failure to implement internal financial controls.

[2]    ARCP's periodic reports are referred to herein as follows: (a) the "2013 Annual Report" – annual report for the year ended December 31, 2013, filed with the SEC on Form 10-K on or about February 27, 2014; (b) "2013 First Quarter Report" – quarterly report for the quarter ended March 31, 2013, filed with the SEC on Form 10-Q on or about May 6, 2013; (c) "2013 Second Quarter Report" – quarterly report for the quarter ended June 30, 2013, filed with the SEC on Form 10-Q on or about August 6, 2013; (d) "2013 Third Quarter Report" – quarterly report for the quarter ended September 30, 2013, filed with the SEC on Form 10-Q on or about November 7, 2013; (e) "2014 First Quarter Report" – quarterly report for the quarter ended March 31, 2014, filed with the SEC on Form 10-Q on or about May 8, 2014; (f) "2014 Second Quarter Report" – quarterly report for the quarter ended June 30, 2014, filed with the SEC on Form 10-Q on or about July 29, 2014; and (g) the "2014 Second Quarter 8-K" – the Form 8-K and accompanying press release filed with the SEC on or about July 29, 2014.

estopped defendant from contesting liability for breach of fiduciary duty on summary judgment).

ARCP itself has unequivocally stated that Block and other senior management manipulated the Company's finances in its securities filings.  On March 2, 2015, after the conclusion of an internal investigation in the wake of the fraud, ARCP made various filings with the United States Securities and Exchange Commission ("SEC") that restated the Company's financial results from its inception in 2012 through the second quarter of 2014 (collectively, the "Restatement").  In the Restatement, ARCP admitted that its SEC filings were rife with accounting errors and financial manipulations, including the overstatement of its most important performance metric, Adjusted Funds From Operations ("AFFO"), with the magnitude of inflation reaching nearly 100% in certain quarters. The Company acknowledged in the Restatement (among other things) that the AFFO overstatements in the first quarter 2014 financials "were intentionally not corrected" in the Company's 2014 Second Quarter Report, and "other AFFO and financial statement errors were intentionally made [in the 2014 Second Quarter Report], resulting in an overstatement of AFFO and an understatement of the Company's net loss[.]"

Partial summary judgment is warranted because there are no genuine issues of material fact that: (a) as CFO, Block owed the Company fiduciary duties to act honestly and loyally; (b) Block committed non-exculpable breaches of those fiduciary duties by (i) intentionally causing the Company to make false statements of material fact about its financials in its 2014 Second Quarter Report and 2014 Second Quarter 8-K and (ii) by financially benefitting as a result of such fraud; and (c) the Company has been harmed as a result.

For these reasons, Plaintiffs are entitled to partial summary judgment on their breach of fiduciary duty claim against Block.

## STATEMENT OF FACTS

### A.      The Company And Parties

ARCP is a publicly-traded REIT organized under Maryland law.  *See* Plaintiffs' Rule 56.1 Statement of Undisputed Facts In Support Of Plaintiffs' Motion For Partial Summary Judgment Against Defendant Brian S. Block filed concurrently herewith ("SOF") ¶ 1.  The Company makes income through rents received from its ownership of commercial properties, which are remitted to shareholders in the form of dividends.  *Id.*

From 2013 through at least October 2014, Defendant Nicolas S. Schorsch ("Schorsch") served as ARCP's Chairman and Chief Executive Officer, Defendant Block served as ARCP's CFO ("CFO"), Defendant David S. Kay ("Kay") served as ARCP's President, Defendant Lisa Beeson served as ARCP's President and Chief Operating Officer ("COO"), and Defendant Lisa McAlister served as ARCP's Senior Vice President and Chief Accounting Officer ("CAO").  SOF ¶ 2.

### B.      AFFO

ARCP's periodic filings with the SEC for the calendar year 2013 and each quarter of 2013, as well as the first and second quarters of 2014, reported the Company's "adjusted funds from operations," or "AFFO."  SOF ¶ 3.  As explained further, AFFO was integral to the Company – in terms of its bottom line, reported financial performance, and remuneration to its executive employees.  That was because, according to Company disclosures, AFFO provided "a more complete understanding of our performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operative, financing, and investment activities[]" than other financial metrics.  SOF ¶ 4.  The Company's 2013 Annual Report stated that its "primary business objective" is generating "dependable monthly cash dividends from a

3

consistent and predictable level of funds from operations . . . and [AFFO] per share . . . ."  SOF ¶ 5.

In essence, AFFO approximated the Company's long-term revenues by excluding factors such as the acquisition and sale of properties and focusing on the cash-flow generated from the properties themselves.  For example, the Company's 2013 Annual Report stated that it calculated AFFO by removing from its calculation of net income or net loss (i) "certain income or expense items" that "[ARCP] consider[s] more reflective of investing activities," (ii) "other non-cash income and expense items," and (iii) "the income and expense efforts of other activities that are not a fundamental attribute of [ARCP's] business plan."  SOF ¶ 6.

### C.   Block's 2014 Compensation

AFFO was also integral to the amount that senior executives at the Company were paid. The Company disclosed the terms of Block's compensation as CFO for fiscal year 2014 in the Company's April 29, 2014 Proxy Statement filed with the SEC pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "2014 Proxy").  SOF ¶ 7.  The 2014 Proxy disclosed that Block was entitled to, among other items, the following remuneration for the 2014 fiscal year: (a) a base salary of $500,000; and (b) cash and equity bonus amounts based on percentages of Block's base salary that would increase based on, among other things, the amount of AFFO earnings per Company share.  SOF ¶ 8.  Specifically, Block was entitled to 250% of his base salary in equity bonus and 150% of his base salary in cash bonus if, among other things, AFFO earnings per year were at or above $1.06 per share.  SOF ¶ 9.  Block was entitled to 350% of his base salary in equity bonus and 250% in cash bonus if, among other things, AFFO earnings per year were at or above $1.13 per share.  *Id*.  Finally, Block was entitled to 450% of his base salary in equity bonus and

350% of his base salary in cash bonus if, among other things, AFFO earnings per year were above $1.16 per share. *Id*.

**D.     False And Misleading Statements About The Company's AFFO Metric**

Block (together with other Defendants) knowingly caused the Company to report inflated AFFO metrics in financial reports issued by the Company. The false financial reporting included the following statements, among others:[3]

- On May 8, 2014, the Company filed with the SEC its 2014 First Quarter Report, signed by defendants Schorsch and Block, which reported AFFO for the quarter of approximately $147.4 million. SOF ¶ 12. Accompanying the 2014 First Quarter Report were certifications signed by defendants Schorsch and Block pursuant to the federal securities laws attesting to the truth and accuracy of the 2014 First Quarter Report. SOF ¶ 13.

- Also, on May 8, 2014, the Company filed with the SEC a Form 8-K and an accompanying press release that disclosed its financial results for the first quarter of 2014. The release reported that "Adjusted funds from operations ('AFFO') for the three months ended March 31, 2014 totaled $147.4 million, or $0.26 per fully diluted share." SOF ¶ 14.

- On July 29, 2014, the Company filed with the SEC its 2014 Second Quarter Report, signed by defendants Schorsch, Block, and McAlister, which reported AFFO for the quarter of approximately $205.3 million. SOF ¶ 15. Accompanying the 2014 Second Quarter Report were certifications signed by defendants Schorsch and Block pursuant to the federal securities laws attesting to the truth and accuracy of the 2014 Second Quarter Report. SOF ¶ 16.

---

[3]     As noted below, the Company also was forced to restate its AFFO reported in its 2013 Annual Report based on misleading statements in that report. On February 27, 2014, the Company filed with the SEC its 2013 Annual Report, signed by defendants Schorsch, Block, McAlister, Beeson, and Kay. The 2013 Annual Report reported the Company's AFFO for 2013 of approximately $163.9 million. SOF ¶ 10. Accompanying the 2013 Annual Report were certifications signed by Defendants Schorsch and Block pursuant to the federal securities laws attesting to the truth and accuracy of the 2013 Annual Report. SOF ¶ 11.

- On July 29, 2014, the Company filed, with the SEC, the 2014 Second Quarter 8-K and an accompanying press release announcing its financing results for the Second Quarter of 2014, which stated in part:  "Increased AFFO: Increased AFFO to $205.3 million, up 429.0% compared to the same period a year earlier, and increased AFFO per share to $0.24, up 26% compared to the same period a year earlier."  SOF ¶ 17.

### E.    The Company Admits To Intentional Accounting Errors

In October 2014, the investing public was stunned when the Company announced that its financial reports and AFFO figures disclosed therein could no longer be relied upon due to intentional misconduct on the part of Company senior management.  Specifically, on October 29, 2014, ARCP publicly disclosed in a filing with the SEC that the financial information contained in the Company's 2013 Annual Report, 2014 First Quarter Report, and 2014 Second Quarter Report should no longer be relied on.  SOF ¶ 24.  ARCP disclosed that its audit committee (the "Audit Committee") had been conducting an investigation into "concerns regarding accounting practices and other matters" and had identified certain flaws in the Company's internal controls. SOF ¶ 25.  The Company also disclosed that it had identified "intentional" accounting errors in the 2014 First Quarter Report and the 2014 Second Quarter Report.  SOF ¶ 26.  ARCP's Audit Committee then requested that Block (and McAlister) resign from their positions at ARCP, and Block departed the Company.  SOF ¶ 27.

### F.    The Restatement

On March 2, 2015, ARCP filed, with the SEC, the Restatement consisting of the following: Form 8-K filed with the SEC (the "March 2, 2015 8-K"); Amendment No. 2 to the annual report for the year ended December 31, 2013, filed on Form 10-K/A with the SEC (the "Amended 2013 Annual Report"); Amendment No. 1 to the quarterly report for the quarter ended March 31, 2014,

filed on Form 10-Q/A with the SEC (the "Amended 2014 First Quarter Report"); and Amendment No. 1 to the quarterly report for the quarter ended June 30, 2014 filed on Form 10-Q/A with the SEC (the "Amended 2014 Second Quarter Report").  SOF ¶ 28.  The Restatement was filed after the Audit Committee completed a months-long investigation.  SOF ¶ 29.  In the Restatement, ARCP acknowledged that: (a) it had overstated AFFO for 2011, 2012, 2013 (including each fiscal quarter of 2013) and the first two quarters of 2014; (b) the overstatement had come to the attention of "senior management" (and Block was CFO) prior to the release of the 2014 First Quarter Report; (c) senior management knowingly failed to correct the misreported AFFO figure or prevent AFFO from being overstated again in the 2014 First Quarter Report; (d) senior management had intentionally made improper adjustments in the 2014 Second Quarter Report in order to cover up the prior AFFO misrepresentations; and (e) there were material weaknesses and widespread deficiencies in ARCP's internal controls and disclosure controls and procedures.  SOF ¶ 30.

As ARCP stated in the Restatement, ARCP's "senior management" knew no later than May 8, 2014, the date the 2014 First Quarter Report was filed, about the improper accounting of AFFO in the 2013 Annual Report.  SOF ¶ 33.  But, instead of correcting the misstatements and preventing the accounting errors from being repeated, ARCP senior management "allowed the [2014 First Quarter Report] to be filed without completing an analysis of these errors."  SOF ¶ 34. The Company stated that the AFFO accounting errors in the 2014 First Quarter Report were known in the second quarter of 2014 to "senior management," but "*intentionally not corrected*, and other AFFO and financial statement errors *were intentionally made* [in the 2014 Second Quarter Report], resulting in an overstatement of AFFO and an understatement of the Company's net loss" in that report.  SOF ¶ 36 (emphasis added).

Thus, the 2014 First Quarter Report and 2014 Second Quarter Report intentionally

misstated the Company's AFFO because "[s]enior management considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance and, for the first two quarters of 2014, sought to maintain reported AFFO within the Company's 2014 guidance range of $1.13 to $1.19 per share announced at the end of 2013."  SOF ¶¶ 35, 37. Tellingly, as noted above, the bonus compensation amount due to Block in 2014 would be increased if the annual AFFO earnings per share was at or above $1.13 per share.  *See* above at 4-5.

Block and other derivative defendants inflated AFFO by material amounts in those Reports, as confirmed in the Restatement.  For example:

- AFFO was overstated in the 2014 First Quarter Report by $38.5 million, or 26.1%. SOF ¶ 38.

- AFFO was overstated in the 2014 Second Quarter Report by $19.3 million, or 9.4%. SOF ¶ 39.

- AFFO was overstated for the six-month period ending June 30, 2014, by $52.4 million, or 14.8%.  SOF ¶ 41.

Moreover, in the Restatement, ARCP stated that the statements in the 2014 First and Second Quarter Reports and in the respective Sarbanes-Oxley ("SOX") Certifications filed with them regarding internal controls over financial reporting and disclosure controls and procedures were false when made.  SOF ¶ 46.  According to the Company's own findings following the audit, ARCP's "disclosure controls and procedures were not effective" as of March 31, 2014, and June 30, 2014.  SOF ¶ 47.

## G. Criminal Action Against Block

The Company's findings of intentional misstatements by "senior management," which includes Block as CFO, have been confirmed and corroborated by the unanimous jury verdict and criminal conviction of Block for the exact same conduct complained of here.

On September 7, 2016, the United States Attorney for the Southern District of New York filed an indictment (the "Indictment") against Block in this District, which asserted six counts against Block based on false and misleading statements in the Company's 2014 Second Quarter Report and 2014 Second Quarter 8-K: (1) securities fraud; (2) false statements in filings with the SEC regarding ARCP's 2014 Second Quarter Report; (3) false statements in filings with the SEC regarding ARCP's 2014 Second Quarter 8-K; (4) false certification of disclosure filed with the SEC; (5) false certifications filed with the SEC (18 U.S.C. § 1350); and (6) conspiracy to commit securities fraud, to make false filings with the SEC, and to falsify books and records (the "Criminal Action"). SOF ¶ 49.

After a three-week trial in June 2017, the jury convicted Block of all six counts, including securities fraud. SOF ¶ 50. During his trial, Block was represented by four attorneys from the international law firm of Steptoe & Johnson, LLP. SOF ¶ 51. Fact witnesses testified during Block's trial, including McAlister and Ryan Steel ("Steel"), ARCP's Director of Financial Reporting. SOF ¶ 52.

Defendant McAlister was similarly charged with four counts of securities fraud and conspiracy to commit securities fraud, but she waived her right to prosecution by indictment and elected to plead guilty to all four counts asserted in the Information against her. SOF ¶¶ 57-58. As McAlister admitted during her plea allocution, she "and others at the company" learned *prior* to filing the 2014 First Quarter Report that AFFO was overstated, but did nothing to correct or prevent the report from being filed. SOF ¶ 59. McAlister stated that she and Block "agreed to falsely inflate the AFFO calculation for the second quarter of 2014 and for the year to date 2014 that were to be reported in the filing." SOF ¶ 60. "This conduct involved inflating numbers for a particular line item that had no valid basis . . . ." SOF ¶ 61. McAlister and Block "inflated the

figures to hide the first quarter error and to create the appearance that the company performance was in line with analyst expectations and on track to meet the company's full year AFFO guidance." *Id*. McAlister and Block "intentionally misled investors, the public and the SEC about [AFFO] by an amount" McAlister knew "investors would consider important." SOF ¶ 62.

While subsequently testifying at Block's criminal trial under oath, McAlister admitted that she allowed the 2014 First Quarter Report to be filed while knowing that its AFFO calculation was false, and that she and Block intentionally carried ARCP's fraudulent AFFO calculation over to the 2014 Second Quarter Report. SOF ¶ 63. To do so, McAlister, Block, and Steel met the evening before the 2014 Second Quarter Report was to be filed with the SEC. SOF ¶ 64. During that meeting, McAlister and Block had a conference call with Schorsch, who gave Block instructions as to how to manipulate the Company's AFFO. SOF ¶ 65. After speaking with Schorsch, Block knowingly inserted a fabricated and "unsupported adjustment in the deferred financing cost line item" into the Company's AFFO schedule. SOF ¶ 66. McAlister admitted that Block and she "fraudulently inputted a $12 million number in [the] filing . . . ." SOF ¶ 67. As McAlister testified under oath, "[i]t was a what I would call sort of result driven in that it was the exact number that you needed to put in so that the AFFO and AFFO per share calculated to what it needed to be." SOF ¶ 68. McAlister and Block thus "plugged" the fraudulent $12 million figure into the 2014 Second Quarter Report even though she knew that "[y]ou can't plug numbers. You have to have analysis and [a] basis that ties back to books and records." SOF ¶ 69. Steel likewise testified that he told "Mr. Block and Ms. McAlister, 'we can't use that. We don't have any support for that. There's nothing that supports those numbers.'" SOF ¶ 70.

Following Block's conviction, on October 24, 2017, Judge J. Paul Oetken denied Block's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. SOF ¶ 53.

In denying the motion, Judge Oetken held that "Block d[id] not present any particular ground for acquittal," and that "each of the six counts of conviction was sufficiently supported by the evidence to justify the jury's verdict." *United States v. Block*, No. 16-CR-595 (JPO), 2017 U.S. Dist. LEXIS 176083, at *2 (S.D.N.Y. Oct. 24, 2017). Judge Oetken further found that "[t]he evidence at trial established that the [2014 Second Quarter Report] contained a materially false statement: an AFFO . . . calculation that was inflated by approximately $13 million." *Id*. at **2-3. The evidence further "established that the [2014 Second Quarter] 8-K also contained materially false statements: the inflated AFFO number; a manipulated weighted average share count for the six months ending June 30, 2014; and an inflated AFFO-per-share calculation." *Id*. at *3. "The testimony and documentary evidence at trial amply supported the jury's finding that Block knowingly and willfully inserted 'plug' numbers in these filings without any basis in ARCP's books and records." *Id.* Thus, "the jury rationally found, based on the evidence, that Block participated in a scheme to fraudulently inflate AFFO and AFFO-per-share numbers in ARCP's SEC filings, that these numbers were important to ARCP investors, that the misstatements were material, and that Block acted knowingly, willfully, and with intent to defraud." *Id*.

On November 8, 2017, Judge Oetken sentenced Block to eighteen months in federal prison and fined him $100,000. SOF ¶ 54. On November 9, 2017, Judge Oetken entered judgment against Block. SOF ¶ 55. On December 22, 2017, Judge Oetken denied Block's motion for bail pending appeal. SOF ¶ 56.

The evidence of Block's criminal fraud was indeed overwhelming. As Judge Oetken held following Block's conviction:

> The evidence at trial showed that Block's insertion of fraudulent plug numbers in ARCP's quarterly filing served the purpose of meeting a key earnings metric for the current quarter, while also disguising problematic accounting from prior periods. Block was surely motivated by financial gain, but such gain was a function

> of anticipated gain by the company.  Indeed, the direct and proximate effect of his conduct was to inflate [the Company's] share price.  That benefit was short-lived, of course, but only because his fraud and the problematic accounting were discovered several weeks later.

*United States v. Block*, No. 16-CR-595 (JPO), 2018 U.S. Dist. LEXIS 19416, at *8 (S.D.N.Y. Feb. 6, 2018).  In fact, while Block was only charged and convicted of fraud perpetrated in July 2014 filings with the SEC, the evidence indicated that he and other senior management at the Company had been committing securities fraud for years prior.  Judge Oetken observed that the Company's admissions and Restatement

> happened *after* the period of criminal conduct in this case. Indeed, it happened after six quarters of financial statements that later required correction (but were not the subject of criminal prosecution).  And it happened only after a whistleblower wrote an email to ARCP's outside auditor on September 6, 2014—an email that flagged the accounting issue that led to Block's prosecution, but also complained about the company's obsessive focus on earnings and the tone at the top.

*Id*. at *11 (emphasis in original).

### H.    The Company Incurred Damages Resulting From Block's Misconduct

The Company has been damaged by Block's non-exculpated breaches of his fiduciary duties to the Company.  The Company has already acknowledged millions of dollars in harm resulting from Block's active and deliberate dishonesty.  For example, on January 12, 2018, the Company filed a Request for Restitution in the Criminal Action, seeking restitution from Block "as a victim of Block's offenses" arising from his false and misleading financial statements in the "amount of $35,004,590.86, plus additional amounts incurred after the timeframe captured by [the Company]'s initial calculation and prejudgment interest."  SOF ¶ 71.

On or around June 1, 2018, the Company disclosed that it had settled a lawsuit for $90 million brought by Vanguard Specialized Funds pending in the United States District Court for the District of Arizona captioned *Vanguard Specialized Funds, et al. v. VEREIT, Incorporated, et al*., No. CV-15-02157-PHX-JAS.  SOF ¶ 72.  Those claims, naming both the Company and Block as

defendants for securities fraud, arose out of the "disclosures made by the Company in October 2014 and March 2015 regarding its financial statements, which included the Company's March 2015 restatement of certain of its previously issued financial statements." *Id*. The Complaint in that action alleges securities fraud claims against both the Company and Block for false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K. *Id*.

On or around October 3, 2018, the Company disclosed that it had settled eight "opt-out" securities suits for $85 million pending in this Court captioned: *BlackRock ACS US Equity Tracker Fund, et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-08464-AKH; *Clearline Capital Partners LP, et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-08467-AKH; *Eton Park Fund, L.P., et al., v. American Realty Capital Properties, Inc., et al.*, No. 1:16-cv-09393-AKH; *HG Vora Special Opportunities Master Fund, Ltd. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-04107-AKH; *Pentwater Equity Opportunities Master Fund Ltd., et al. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-08510-AKH; *PIMCO Funds: PIMCO Diversified Income Fund, et al. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-08466-AKH; *Reliance Standard Life Ins. Co., et al, v. American Realty Capital Properties, Inc. et al*., No. 1:17-cv-02796-AKH; and *Twin Securities, Inc., et al. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-01291-AKH. SOF ¶ 73. Those claims likewise named both the Company and Block as defendants for securities fraud and arose out of "the disclosures made by the Company in October 2014 and March 2015 regarding its financial statements, which included the Company's March 2015 restatement of certain of its previously issued financial statements." *Id*. The complaints in those actions allege securities fraud claims against both the Company and Block for false and misleading statements in (among others) the 2014 Second Quarter Report and 2014 Second Quarter 8-K. *Id*.

And on or about October 26, 2018, the Company disclosed that it had settled four additional "opt-out" securities suits for $42.5 million pending in the United States District Court for the Southern District of New York captioned: *Archer Capital Master Fund, L.P., et al. v. American Realty Capital Properties, Inc. et al.*, No. 1:16-cv-05471-AKH; *Atlas Master Fund, Ltd., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:16-cv-05475-AKH; *Fir Tree Capital Opportunity Master Fund, L.P., et al. v. American Realty Capital Properties, Inc., et al.,* No. 1:17-cv-04975-AKH; and *Cohen & Steers Institutional Realty Shares, Inc. et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:18-cv-06770-AKH.  SOF ¶ 74.  Those claims, naming both the Company and Block as defendants for securities fraud, also arose out of "the disclosures made by the Company in October 2014 and March 2015 regarding its financial statements, which included the Company's March 2015 restatement of certain of its previously issued financial statements."  *Id*.  The complaints in those actions also allege securities fraud claims against both the Company and Block for false and misleading statements in (among others) the 2014 Second Quarter Report and 2014 Second Quarter 8-K.  *Id.*

From 2014 through September 8, 2018, ARCP incurred and reported payment of $165,744,000 in connection with the audit committee investigation and related matters that would not have been required had Block properly executed his fiduciary obligations.  SOF ¶ 75.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

A party may seek summary judgment on any claim or defense, or any part of a claim or defense.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where the record establishes that there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Where, as is the case here, a defendant's liability is

admitted, partial summary judgment promotes judicial economy by streamlining the case and resolving as a matter of law those issues about which there is no genuine dispute. *See Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 346 (S.D.N.Y. 2009).

## **ARGUMENT**

### I.      **Elements Of Breach Of Fiduciary Duty Claim**

To establish a claim for breach of fiduciary duty under Maryland law, Plaintiffs must demonstrate: (a) a fiduciary duty exists; (b) a fiduciary breached that duty; and (c) harm resulted from the breach. *See Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1046 (Md. 1995); *see also BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 405-408 (D. Md. 2001) (granting summary judgment on breach of fiduciary duty claim where high-level employee had siphoned critical warehouse business of employer); *EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 625-26 (D. Md. 2013) (granting summary judgment against employee for breach of fiduciary duty where, *inter alia*, there was no genuine issue of material fact that he owed fiduciary duty of loyalty to employer under Maryland law; employee was accused of stealing business from his employer for personal profit).

Under Maryland law, officers and directors owe fiduciary duties to their corporation. *See Strougo v. Bassini*, 282 F.3d 162, 173 (2d Cir. 2002) (citing *Toner v. Baltimore Envelope Co.*, 498 A.2d 642, 648 (Md. 1985)). This fiduciary relationship imposes duties of care, loyalty, and good faith. *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 419 (Md. 2009) (collecting cases). These duties are "not intermittent or occasional, but instead 'the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided.'" *Storetrax.com,*

*Inc. v. Gurland*, 915 A.2d 991, 1001 (Md. 2007) (citing *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)).[4]

A director's or officer's intentional issuance of false and misleading statements on behalf of the Company is also a breach of fiduciary duty. *See Felker v. Anderson*, No. 04-0372-CV-W-ODS, 2005 U.S. Dist. LEXIS 4236, at **8-9 (W.D. Mo. Feb. 11, 2005) (liability will incur for breach of fiduciary duty under Maryland law for making false and misleading statements); *see also Pitman v. Aran*, 935 F. Supp. 637, 646-47 (D. Md. 1996) (granting motion for summary judgment against a defendant officer and director who usurped opportunities of his company for personal profit in Israeli construction business and failed to disclose to same).

ARCP's corporate charter contains a limited exculpation provision adopted pursuant to Maryland Courts & Judicial Procedure Code Section 5-418. However, Section 5-418 affords no safe-harbor where the fiduciary received an "improper benefit or profit in money" *or* where the "person's action, or failure to act, was the result of active and deliberate dishonesty":

> (a) Expansion or limitation of liability. The charter, as defined under § 1-101 of the Corporations and Associations Article, of a Maryland corporation may include any provision expanding or limiting the liability of its directors and officers to the corporation or its stockholders for money damages, but may not include any provision that restricts or limits the liability of its directors or officers to the corporation or its stockholders:
>
> (1) To the extent that it is proved that the person actually received an improper benefit or profit in money, property, or services for the amount of the benefit or profit in money, property, or services actually received; [or]
>
> (2) To the extent that a judgment or other final adjudication adverse to the person is entered in a proceeding based on a finding in the

---

[4]     Maryland will look to Delaware decisions for guidance on matters of corporate law where no Maryland precedents exist. *See Goldstein v. Lincoln Nat'l Convertible Sec. Fund, Inc.*, 140 F. Supp. 2d 424, 439 n.12 (E.D. Pa. 2001) ("With respect to issues on which the Maryland courts have not spoken, this Court looks primarily to the state law of Delaware for guidance. In the area of corporate law, the Maryland Court of Appeals has noted the respect due Delaware decisions.").

> proceeding that the person's action, or failure to act, was the result of active and deliberate dishonesty and was material to the cause of action adjudicated in the proceeding[.]

Md. Cts. & Jud. Proc. Code §§ 5- 418(a)(1)-(2) ("Section 5-418").

## II.   There Is No Genuine Issue Of Material Fact That Block Owed The Company Fiduciary Duties

Here, there is no genuine issue of material fact that Block served as CFO of the Company. SOF ¶ 2.  As such, he owed the Company duties of loyalty and good faith.  *Shenker*, 983 A.2d at 419.  Moreover, there is no genuine issue of material fact that as a Company fiduciary, and notwithstanding the Company's charter and Section 5-418, Block may be held liable to the Company for breach of fiduciary duty based on his deliberate dishonesty or receipt of improper benefits.  *Witchko v. Schorsch*, No. 15 Civ. 6043 (AKH), 2016 U.S. Dist. LEXIS 95795, at **28-29 (S.D.N.Y. June 9, 2016).

## III.   There Is No Genuine Issue Of Material Fact That Block's Active And Deliberate Dishonesty By Manipulating AFFO And Intentionally Causing The Company To Make False And Misleading Statements Of Material Fact Breached His Non-Exculpated Fiduciary Duties

As this Court has already held in this Action, allegations against Defendants for accounting manipulation constitute "deliberate dishonesty" that is not protected by exculpation provisions in the charter and gives rise to a breach of fiduciary duty.  *Witchko*, 2016 U.S. Dist. LEXIS 95795, at **28-29; *see also Matson v. Alpert (In re LandAmerica Fin. Group, Inc.)*, 470 B.R. 759, 808 (E.D. Va. 2012) ("*Matson*") ("the Maryland exculpation statute would not bar a claim for willful misconduct to the extent that the misconduct constitutes active and deliberate dishonesty material to the cause of action")*.*

Block's criminal conviction eliminates any genuine issue of material fact that Block breached his non-exculpated fiduciary duties by intentionally causing the Company to issue false and misleading statements.   Block was charged with and criminally convicted of securities fraud

for the misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K.

SOF ¶¶ 49-50.  To prove that Block committed criminal securities fraud, the Government had to

prove "beyond a reasonable doubt that [Block]: '(1) made a material misrepresentation or material

omission as to which [he] had a duty to speak, or used a fraudulent device; (2) with scienter; (3)

in connection with the purchase or sale of securities.'"  *In re Adelphia Comms. Corp. Sec. &*

*Derivative Litig.*, No. 03 MD 1529 (LMM), 2005 U.S. Dist. LEXIS 43300, at *22 (S.D.N.Y. Aug.

22, 2005) (citing and quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)).

Thus, for Block to have been convicted, the government necessarily had to prove that Block

intentionally made material misrepresentations and omissions in the 2014 Second Quarter Report

and 2014 Second Quarter 8-K.

The Government did just that.  Among other overwhelming evidence leading to that

conviction, McAlister testified in her plea allocution and at trial that Block knew about the false

statements concerning AFFO in the 2014 First Quarter Report, and then intentionally inserted

fraudulent AFFO data in the 2014 Second Quarter Report.  SOF ¶¶ 15-17, 59-69.  In subsequent

decisions, Judge Oetken, who presided over the trial, observed and held that the evidence against

Block leading to his conviction was overwhelming and beyond reasonable doubt.[5]  *See* above at

¶¶ 12-13.

In the face of such comprehensive and uncontroverted facts, there is no legitimate dispute

that Block committed "active and deliberate dishonesty" by fraudulently manipulating AFFO and

intentionally causing the Company to issue false statements of material fact about its financials in

its 2014 Second Quarter Report and 2014 Second Quarter 8-K, giving rise to a non-exculpated

---

[5]     Notably, Block declined to answer any questions regarding his misconduct during his sworn deposition in
this matter, citing his Fifth Amendment privilege against self-incrimination.  *See, e.g.*, SOF ¶¶ 30, 31, 34.
Accordingly, when given the opportunity to contradict the substantial evidence presented herein by Plaintiffs, Block
declined to do so.

breach of his fiduciary duties to the Company.  *See Tyco Int'l, Ltd. v. Swartz*, No. 03 Civ. 2247 (TPG), 2011 U.S. Dist. LEXIS 20970, at **9-10 (S.D.N.Y. March 3, 2011) (granting summary judgment to plaintiff on breach of fiduciary duty claim against defendant CFO based on CFO's related criminal conviction:  "the conviction for falsifying business records in connection with the New York Relocation Plan establish[es] beyond any doubt that [defendant] committed breaches of fiduciary duty of an aggravated nature" based on the same misconduct).

### IV.    There Is No Genuine Issue Of Material Fact That Block Breached His Non-Exculpated Fiduciary Duties Through "Receipt Of Improper Benefit Or Profit In Money" By Inflating AFFO To Increase His Compensation

Under Maryland law, the receipt of an improper benefit also constitutes a non-exculpated breach of fiduciary duty.  *See Goldstein v. Berman*, No. WDQ-12-2507, 2014 U.S. Dist. LEXIS 26348, at *15 (D. Md. Feb. 28, 2014) (selling stock at artificially inflated prices to obtain proceeds constitutes an improper benefit giving rise to a non-exculpated breach of fiduciary duty under Maryland law); *Felker*, 2005 U.S. Dist. LEXIS 4236, at **8-9 (holding plaintiff alleged "improper benefit" against defendant officers and directors who sold stock at artificially inflated prices); *see also Witchko*, 2016 U.S. Dist. LEXIS 95795, at *29 (noting Defendants might be liable for receipt of improper benefit by receiving "payments and fees through related party transactions between ARCP and ARC Advisors").  Here, there is no legitimate dispute that Block also breached his non-exculpated fiduciary duties by his receipt of improper benefits in the form of his increased entitlement to equity and cash bonuses from the Company through purposely inflating AFFO in the Company's securities filings.  The compensation owed to Block in fiscal year 2014 was inextricably intertwined with the amount of AFFO per Company share, where those AFFO benchmarks tracked the Company's financial guidance on AFFO per share.  *See* above at SOF ¶¶ 4-5, 11.  By manipulating AFFO to comport with Company guidance of $1.13 to $1.19 per share (*see* SOF ¶ 61), Block improperly benefited through increasing the amount of the cash and equity

bonuses to which he was entitled.  SOF ¶¶ 8-9.  Therefore, Block engaged in a non-exculpated breach of fiduciary duty on the basis of an improperly obtained financial benefit.

## V.    Block Is Estopped From Contesting His Non-Exculpated Breaches

Block is precluded from even attempting to create a fact-issue concerning his non-exculpated breaches because he has been criminally convicted of the very conduct giving rise to them.  "Application of collateral estoppel from a criminal proceeding to a subsequent civil proceeding is not in doubt."  *Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996).  "Because mutuality of estoppel is no longer an absolute requirement under federal law, a party other than the Government may assert collateral estoppel based on a criminal conviction."  *In re Adelphia*, 2005 U.S. Dist. LEXIS 17134, at **12-13 (internal citation and quotations omitted).[6]  Indeed, "[f]ederal courts routinely apply collateral estoppel based on jury verdicts," as collateral estoppel is both necessary and appropriate in a civil action to prevent a defendant from "relitigating issues actually and necessarily decided" in a prior criminal action.  *Id*. at *16 n.4 and *13.

A criminal conviction entitles plaintiff to partial summary judgment based on collateral estoppel under four conditions:  "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."  *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999).

Here, there is no genuine issue of material fact that all four conditions are satisfied.  *First*, the key underlying issue here, Block's intentionally making and thus causing the Company to

---

[6]    Because this is a diversity case, this forum's rules apply to collateral estoppel principles here.  *Maryland Cas. Co. v. W.R. Grace & Co.-Conn*., No. 88 Civ. 4337 (JSM), 1991 U.S. Dist. LEXIS 15354, at **3-4 (S.D.N.Y. Oct. 24, 1991) (forum rules apply to collateral estoppel in diversity cases).

make false and misleading statements concerning AFFO figures in the Company's securities filings, is identical in the prior criminal proceeding and in this action. *Second*, there is no question that this issue was actually litigated and decided in Block's criminal trial, in which he was found guilty. *See In re Adelphia*, 2005 U.S. Dist. LEXIS 17134, at \*\*14-15 ("there can be no question that [the prior proceeding] actually litigated and actually decided" the issue where defendant has been found guilty of a Section 10(b) violation at a criminal trial). *Third*, Block unquestionably had a "full and fair opportunity" to litigate the issue in those criminal proceedings, represented by a team of experienced lawyers during the course of a three-week trial that included the testimony of Block himself, and then moving (but being denied) a motion for judgment of acquittal before Judge Oetken. *See* SOF ¶ 53; *see also In re Adelphia*, 2005 U.S. Dist. LEXIS 17134, at \*15 (there is "no question as to whether [the defendant] had anything other than a 'full and fair opportunity' to litigate the issues in a criminal case" where he had been convicted of criminal charges at the conclusion of a jury trial). *Finally,* the issue litigated, Block's intentionally false statements in the Company's July 2014 securities filings, *i.e.*, the 2014 Second Quarter Report and the 2014 Second Quarter 8-K, was absolutely necessary to support his conviction. In fact, that issue was the *sine qua non* of his indictment and was precisely what he was convicted for.

Courts in this district have applied principles of collateral estoppel based on prior criminal convictions to grant summary judgment on breach of fiduciary duty claims. For example, in *Bower*, 1991 U.S. Dist. LEXIS 1204, at \*\*2-3, the court held that defendant Bower was estopped from contesting his liability for breach of fiduciary duty to his employer, the City of New York, for extorting money from restaurant owners under the auspices of his employment. That was because Bower had already been criminally convicted for that extortion under the Racketeer Influenced and Corrupt Organizations Act and Hobbs Act. The court noted that "[e]xtorting

money from restaurant owners and operators through the misuse of his position as a City official is a clear breach of the fiduciary duty Bower owed to the City." *Id*. at \**2-3.  Thus, "Bower's conviction for thirteen violations of the Hobbs Act precludes him from denying or litigating the City's claim that he extorted money from restaurant owners or operators through misuse of his City position," and "summary judgment on the City's claim for breach of fiduciary duty is granted." *Id*. at \*3.

Here, Block's "active and deliberate dishonesty" and, independently, his receipt of "improper benefits" through false SEC filings constitute non-exculpated breaches of fiduciary duty owed to the Company under Maryland law.  Thus, his conviction for securities fraud based on those same filings precludes Block from litigating, contesting, or denying Plaintiffs' claim that he deliberately made those false filings on behalf of the Company, and it warrants summary judgment as to Plaintiffs' breach of fiduciary duty against him.

## VI.   There Is No Genuine Issue Of Material Fact That The Company Has Been Harmed As A Result Of Block's Non-Exculpated Breaches

Finally, there is no genuine issue of material fact that the Company has been harmed as a result of Block's non-exculpated breaches.  Courts grant summary judgment for breach of fiduciary duty claims under Maryland law where the record is clear that the breaches caused plaintiff harm.  *See BEP*, 174 F. Supp. 2d at 408 (granting summary judgment on breach of fiduciary duty claim, and finding plaintiff established causation and damages including lost profits where "[h]ad [defendant] not acted as he did, [by stealing warehousing business from his employer], plaintiff would have received . . . the additional sum of $22,496.46 for the period in question").  Damages to company value, along with costs incurred in defending liability from the misconduct, constitute actionable harm for breach of fiduciary duty under Maryland law.  *See Matson*, 470 B.R. at 783, 804-806 (damages to company enterprise value and exposure to

22

defending litigation constitute viable damages for breach of fiduciary duty claim under Maryland law).

While the full scope of damages may be determined at the conclusion of this case, the record is already clear that hundreds of millions of dollars of damages and counting have been inflicted on the Company as a result of Block's breaches of fiduciary duty.  First, ARCP filed a Request for Restitution in the Criminal Action seeking restitution form Block for $35,004,590.86, plus additional amounts" of damages incurred by the Company as a "victim" of Block's offenses that resulted in his criminal conviction.  SOF ¶ 71.  Second, ARCP had already paid $217,500,000 to settle various individual securities actions based in part on Block's conduct including: (a) "$90 million settlement to resolve *Vanguard Specialized Funds, et al. v. VEREIT, Incorporated, et al.*, No. CV-15-02157-PHX-JAS (D. Az.), naming both the Company and Block as defendants for securities fraud for false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K (SOF ¶ 72); (b) a $85 million settlement to resolve eight "opt-out" securities cases pending in this Court, also naming the Company and Block as defendants for securities fraud for false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K (SOF ¶ 73); and (c) a $42.5 million settlement to resolve another four "opt-out" securities cases pending in this Court, also naming the Company and Block as defendants for securities fraud for false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K.  SOF ¶ 74.  Because this harm is actionable and uncontroverted, and by the Company's own admission resulted from Block's misconduct forming the basis of this breach of fiduciary duty claim, there is no genuine issue of material fact that the Company has been harmed as a result of Block's fiduciary breaches.  Third, ARCP has already acknowledged that it has incurred $165,744,000 in Audit Committee expenses and related actions as of September 8, 2018 that would

not have been required had Block properly met his fiduciary obligations.  SOF ¶ 75.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter partial summary judgment against Defendant Block.

Dated:  February 8, 2019

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

Robert I. Harwood
Matthew M. Houston
Benjamin I. Sachs-Michaels
712 Fifth Avenue, 31st Floor
New York, NY 10019
Tel: (212) 935-7400

*Liaison Counsel for Plaintiffs*

Robert C. Schubert
Willem F. Jonckheer
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Tel: (415) 788-4220

Jeffrey M. Norton
NEWMAN FERRARA LLP
1250 Broadway, 27th Floor
New York, NY 10001
Tel: (212) 619-540

Timothy Brown
Alex P. McBride
THE BROWN LAW FIRM, P.C.
240 Townsend Square
Oyster Bay, NY 11771
Tel: (516) 922-5427

Corey D. Holzer
Marshall P. Dees
HOLZER & HOLZER, LLC
1200 Ashwood Parkway, Suite 410
Atlanta, GA 30338
Tel: (770) 392-0090

Alfred G. Yates, Jr.
Gerald L. Rutledge
LAW OFFICE OF ALFRED G. YATES JR PC
519 Allegheny Building
300 Mt. Lebanon Blvd, Suite 206-B
Pittsburgh, PA 15219
Tel: (412) 391-5164

Curtis V. Trinko
LAW OFFICES OF CURTIS V. TRINKO, LLP
16 West 46th Street, 7th Floor
New York, NY 10036
Tel: (212) 490-9550

*Counsel for Plaintiffs*