UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOANNE WITCHKO, Derivatively on Behalf of
Nominal Defendant AMERICAN REALITY
CAPITAL PROPERTIES, INC.,

                       Plaintiff,
    v.

NICHOLAS S. SCHORSCH, et al.,

                    Defendants,
and

AMERICAN REALITY CAPITAL PROPERTIES,
INC.,

                Nominal Defendant.

Lead Case No. 15-cv-6043-AKH

(Consolidated with Case No. 15-cv-8563-AKH)


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST LISA McALISTER**

# **Table of Contents**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 3

    A.  The Company And Parties ................................................................................. 3

    B.  AFFO.. ............................................................................................................. 3

    C.  False And Misleading Statements About The Company's AFFO Metric ......... 5

    D.  False And Misleading Statements About The Company's Internal Controls .... 5

    E.  The Company Admits To Intentional Accounting Errors .................................. 6

    F.  The Restatement ................................................................................................. 6

    G.  McAlister's Criminal Charges, Guilty Plea, And Judgment ............................. 8

    H.  McAlister's Sworn Admissions At Block's Criminal Trial ............................... 9

    I.   The Company Incurs Damages Resulting From McAlister's Misconduct ...... 13

STANDARD ON MOTION FOR SUMMARY JUDGMENT .................................... 15

ARGUMENT .................................................................................................................... 16

    I.      Elements Of Breach Of Fiduciary Duty Claim ............................................. 16

    II.     There Is No Genuine Issue Of Material Fact That McAlister Owed The
           Company Fiduciary Duties ............................................................................. 18

    III.    There Is No Genuine Issue Of Material Fact That McAlister Breached Her
           Fiduciary Duties Through "Deliberate Dishonesty" In Intentionally Causing
           The Company To Make False And Misleading Statements Of Material Fact ........... 18

    IV.   McAlister Is Estopped From Contesting Her Non-Exculpated Breaches .................. 21

    V.    There Is No Genuine Issue of Material Fact That The Company Has Been
           Harmed As A Result Of McAlister's Non-Exculpated Breaches .............................. 23

CONCLUSION ................................................................................................................. 25

# Table of Authorities

**Cases**                                                                                          **Page(s)**

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,*
   665 A.2d 1038 (Md. 1995) ........................................................................ 16

*AvalonBay Cmtys., Inc. v. Willden,*
   No.: l:08-cv-777, 2009 U.S. Dist. LEXIS 69118 (E.D. Va. Aug. 7, 2009) ............................ 22

*BEP, Inc. v. Atkinson,*
   174 F. Supp. 2d 400 (D. Md. 2001) ....................................................... 16, 23-24

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa SA.,*
   56 F.3d 359 (2d Cir. 1995) .................................................................... 21

*Delchi Carrier SpA v. Rotorex Corp.,*
   71 F.3d 1024 (2d Cir. 1995) ................................................................... 20

*EDI Precast, LLC v. Carnahan,*
   982 F. Supp. 2d 616 (D. Md. 2013) ........................................................... 16

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP,*
   612 F. Supp. 2d 330 (S.D.N.Y. 2009) ......................................................... 16

*Felker v. Anderson,*
   No. 04-0372-CV-W-ODS, 2005 U.S. Dist. LEXIS 4236 (W.D. Mo. Feb. 11, 2005) ............. 17

*Gelb v. Royal Globe Ins. Co.,*
   798 F.2d 38 (2d Cir. 1986) .................................................................... 21

*Goldstein v. Lincoln Nat'l Convertible Sec. Fund, Inc.,*
   140 F. Supp. 2d 424 (E.D. Pa. 2001) .......................................................... 18

*In re Adelphia Communs. Corp. Sec. & Derivative Litig.,*
   No. 03 MD 1529 (LMM), 2005 U.S. Dist. LEXIS 17134 (S.D.N.Y., Aug. 16, 2005) ........... 18

*In re WorldCom, Inc. Sec. Litig.,*
   346 F. Supp. 2d 628 (S.D.N.Y. 2004) .......................................................... 20

*Malone v. Brincat,*
   722 A.2d 5 (Del. 1998) ....................................................................... 17

*Maryland Cas. Co. v. W.R. Grace & Co.-Conn.,*
   No. 88 Civ. 4337 (JSM) 1991 U.S. Dist. LEXIS 15354 (S.D.N.Y. Oct. 24, 1991) ................ 19

*Matson v. Alpert (In re LandAmerica Fin. Group, Inc.),*
   470 B.R. 759 (E.D. Va. Bankr. 2012) ..................................................... 19-20, 24

*New York v. Bower,*
   No. 89 Civ. 4179 (LMM), 1991 U.S. Dist. LEXIS 1204 (S.D.N.Y. Jan. 31, 1991) .......... 1-2, 23

*Pitman v. Aran,*
   935 F. Supp. 637 (D. Md. 1996) ............................................................... 17

*Pizzuto v. County of Nassau*,
    239 F. Supp. 2d 301 (S.D.N.Y. 2003)............................................................................. 21

*SEC v. Illarramendi*,
    732 Fed. App'x. 10 (2d Cir. 2018) ...........................................................................2, 20

*SEC v. Monarch Funding Corp.*,
    192 F. 3d 295 (2d Cir. 1999)........................................................................................ 18

*SEC v. Penn*,
    225 F. Supp. 3d 225 (S.D.N.Y. 2016)......................................................................... 19

*Shenker v. v. Laureate Educ., Inc.*,
    983 A.2d 408 (Md. 2009) ............................................................................................ 16

*Storetrax.com, Inc. v. Gurland*,
    915 A.2d 991 (Md. 2007) .......................................................................................16-17

*Strougo v. Bassini*,
    282 F.3d 162 (2d Cir. 2002)........................................................................................ 16

*Toner v. Baltimore Envelope Company*,
    498 A.2d 642 (Md. 1985) ............................................................................................ 16

*Tyco Int'l, Ltd. v. Swartz*,
    No. 03 Civ. 2247 (TPG), 2011 U.S. Dist. LEXIS 20970 (S.D.N.Y. March 3, 2011)............... 19

*Witchko v. Schorsch*,
    No. 15 Civ. 6043 (AKH), 2016 U.S. Dist. LEXIS 95795 (S.D.N.Y. June 9, 2016)................ 19

**Statutes & Regulations**

Federal Rules of Civil Procedure

    Fed. R. Civ. P. 56(a) .................................................................................................... 17

Maryland Courts & Judicial Procedure Code

    Section 5-418 ..........................................................................................................19, 20

Plaintiffs Joanne Witchko, Edward Froehner, and Michele Graham Turner 1995 Revocable Trust, Jeffrey Turner as Trustee (collectively, "Plaintiffs"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their Motion for Partial Summary Judgment (the "Motion") against Lisa McAlister ("McAlister") in this consolidated shareholder derivative action brought on behalf of American Realty Capital Properties, Inc. n/k/a VEREIT, Inc. ("ARCP" or the "Company").

## INTRODUCTION

Plaintiffs move for partial summary judgment on their breach of fiduciary duty claims against McAlister.  The Motion is only for fiduciary claims arising from the conduct: (a) for which McAlister was criminally convicted; or (b) admitted to under oath.[1]

McAlister pled guilty to criminal securities fraud for intentionally causing ARCP to issue false and misleading statements concerning its most important performance metric, Adjusted Funds From Operations, or "AFFO," in the Company's 2014 Second Quarter Report and 2014 Second Quarter 8-K.[2]   McAlister is precluded from even contesting these breaches of fiduciary duty because she pled guilty to and was criminal convicted of the same conduct.  Courts regularly apply collateral estoppel in civil actions following convictions (by jury or guilty plea) in overlapping criminal fraud trials.  *See, e.g.*, *New York v. Bower*, No. 89 Civ. 4179 (LMM), 1991

---

[1]     Plaintiffs assert numerous additional breaches of fiduciary duty by McAlister that are not the subject of this motion.

[2]     ARCP's periodic reports are referred to herein as follows: (a) the "2013 Annual Report" – annual report for the year ended December 31, 2013, filed with the SEC on Form 10-K on or about February 27, 2014; (b) "2013 First Quarter Report" – quarterly report for the quarter ended March 31, 2013, filed with the SEC on Form 10-Q on or about May 6, 2013; (c) "2013 Second Quarter Report" – quarterly report for the quarter ended June 30, 2013, filed with the SEC on Form 10-Q on or about August 6, 2013; (d) "2013 Third Quarter Report" – quarterly report for the quarter ended September 30, 2013, filed with the SEC on Form 10-Q on or about November 7, 2013; (e) "2014 First Quarter Report" – quarterly report for the quarter ended March 31, 2014, filed with the SEC on Form 10-Q on or about May 8, 2014; (f) "2014 Second Quarter Report" – quarterly report for the quarter ended June 30, 2014, filed with the SEC on Form 10-Q on or about July 29, 2014; and (g) the "2014 Second Quarter 8-K" – the Form 8-K and accompanying press release filed with the SEC on or about July 29, 2014.

U.S. Dist. LEXIS 1204, at *2-3 (S.D.N.Y. Jan. 31, 1991) (criminal conviction estopped defendant from contesting liability for breach of fiduciary duty on summary judgment).

Separately, McAlister admitted under oath at her plea allocution and in her testimony at the criminal trial of ARCP's former Chief Financial Officer, Brian Block ("Block"), that she knew of but failed to correct false AFFO figures in ARCP's 2014 First Quarter Report and 2014 First Quarter 8-K.  There is no genuine issue of material fact that McAlister committed the acts to which she twice admitted under oath.  *See, e.g., SEC v. Illarramendi*, 732 Fed. App'x. 10, 13 (2d Cir. 2018) (affirming grant of summary judgment to SEC for violation of Investment Advisors Act based on defendant's admissions in prior court proceedings as to underlying facts constituting violation).

ARCP also has unequivocally admitted that McAlister and other senior management manipulated the Company's finances in its securities filings.  On March 2, 2015, after the conclusion of an internal investigation in the wake of the fraud, ARCP made various filings with the United States Securities and Exchange Commission ("SEC") that restated the Company's financial results from its inception in 2012 through the second quarter of 2014 (collectively, the "Restatement").  In the Restatement, ARCP disclosed that its SEC filings were rife with accounting errors and financial manipulations, including the overstatement of its most important performance metric, Adjusted Funds From Operations, or "AFFO," with the magnitude of inflation reaching nearly 100% in certain quarters.  For her role in the scam, McAlister, who was the Company's Chief Accounting Officer through late 2014, was asked to resign.  McAlister was subsequently charged with and pled guilty to criminal securities fraud based on her intentionally false and misleading statements concerning AFFO in the Company's 2014 Second Quarter Report and 2014 Second Quarter 8-K.

Partial summary judgment on these claims is warranted because there are no genuine issues of material fact that (a) as Chief Accounting Officer, McAlister owed the Company fiduciary duties to act honestly and loyally, (b) McAlister committed non-exculpable breaches of those fiduciary duties by intentionally causing the Company to make false statements of material fact about its financials, and (c) the Company has been harmed as a result.

For these reasons, Plaintiffs are entitled to partial summary judgment on their breach of fiduciary duty claim against McAlister.

## STATEMENT OF FACTS

### A.   The Company And Parties

ARCP is a publicly-traded REIT organized under Maryland law.  *See* Plaintiffs' Rule 56.1 Statement of Undisputed Facts In Support Of Plaintiffs' Motion For Partial Summary Judgment Against Defendant Lisa McAlister filed concurrently herewith ("SOF") ¶ 1.  The Company earns income through rents received from its ownership of commercial properties, which are remitted to shareholders in the form of dividends.

From 2013 through at least October 2014, Defendant Nicolas S. Schorsch ("Schorsch") served as ARCP's Chairman and Chief Executive Officer; Defendant David S. Kay ("Kay") served as ARCP's President; Defendant Block served as ARCP's Chief Financial Officer ("CFO"); Defendant Lisa Beeson served as ARCP's President and Chief Operating Officer; and Defendant McAlister served as ARCP's Senior Vice President and Chief Accounting Officer.  SOF ¶ 2.

### B.   AFFO

ARCP's periodic filings with the SEC for the calendar year 2013 and each quarter of 2013, as well as the first and second quarters of 2014, reported the Company's AFFO.  SOF ¶ 3.  AFFO was integral to the Company's bottom line, reported financial performance, and remuneration to

3

its executive employees.  According to Company disclosures, AFFO provided "a more complete understanding of our performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operative, financing, and investment activities[]" than other financial metrics.  SOF ¶ 4.  The Company's 2013 Annual Report stated that the Company's "primary business objective" is generating "dependable monthly cash dividends from a consistent and predictable level of funds from operations . . . and [AFFO] per share . . . ."  SOF ¶ 5.

As McAlister herself admitted, AFFO, and AFFO per Company share, were the most important financial metrics to the Company at the time McAlister was employed there.  SOF ¶ 7.  AFFO was a number that both McAlister and the Company were "very focused on" because it was "a very important metric for the street."  *Id*.  AFFO was also an important metric for ARCP management because "[i]t was one of the items that was part of their quantitative metrics for the executive team to be bonused on, as well as the investors in the analyst community were also focused on it."  *Id*.  In fact, while McAlister was employed at the Company, "there was a mouse pad put at everybody's computer that had the AFFO per share as one of the metrics, goals for the company."  *Id*.

In essence, AFFO approximated the Company's long-term revenues by excluding factors such as the acquisition and sale of properties and focusing on the cash-flow generated from the properties themselves.  For example, the Company's 2013 Annual Report stated that ARCP calculated AFFO by removing from its calculation of net income or net loss (i) "certain income or expense items" that "[ARCP] consider[s] more reflective of investing activities," (ii) "other non-cash income and expense items," and (iii) "the income and expense efforts of other activities that are not a fundamental attribute of [ARCP's] business plan."  SOF ¶ 6.

4

### C.   False And Misleading Statements About The Company's AFFO Metric

McAlister (among other Defendants) knowingly caused ARCP to report inflated AFFO metrics in financial reports issued by the Company.   The false financial reporting included the following, among others:[3]

- On May 8, 2014, the Company filed with the SEC its 2014 First Quarter Report, signed by defendants Schorsch and Block, which reported AFFO for the quarter of approximately $147.4 million.  SOF ¶ 9.

- Also on May 8, 2014, the Company filed with the SEC the First Quarter 2014 8-K. The release reported that "Adjusted funds from operations ('AFFO') for the three months ended March 31, 2014 totaled $147.4 million, or $0.26 per fully diluted share."  SOF ¶ 10.

- On July 29, 2014, the Company filed with the SEC its 2014 Second Quarter Report, signed by defendants Schorsch, Block, and McAlister, which reported AFFO for the quarter of approximately $205.3 million.  SOF ¶ 11.

- On July 29, 2014, the Company filed with the SEC the 2014 Second Quarter 8-K and an accompanying press release announcing its financing results for the Second Quarter of 2014, which stated in part:  "Increased AFFO: Increased AFFO to $205.3 million, up 429.0% compared to the same period a year earlier, and increased AFFO per share to $0.24, up 26% compared to the same period a year earlier."  SOF ¶ 12.

### D.   False And Misleading Statements About The Company's Internal Controls

By causing the Company to misrepresent AFFO in its reports, McAlister also caused the Company to misrepresent its internal controls for financial reporting in 2014.  For example, the

---

[3]     As noted below, the Company also was forced to restate its AFFO reported in its 2013 Annual Report based on misleading statements in that report.  On February 27, 2014, the Company filed with the SEC its 2013 Annual Report, signed by defendants Schorsch, Block, McAlister, Beeson, and Kay.  The 2013 Annual Report reported the Company's AFFO for 2013 of approximately $163.9 million.  SOF ¶ 8.

2014 First Quarter Report and 2014 Second Quarter Report both represented that "under the supervision and with the participation of [Defendants Schorsch and Block], [the Company] carried out an evaluation of the effectiveness of our disclosure controls and procedures . . . and determined that the disclosure controls and procedures are effective."  SOF ¶ 13.

### E.    The Company Admits To Intentional Accounting Errors

In October 2014, the investing public was stunned when the Company announced that its financial reports and AFFO figures disclosed therein could no longer be relied upon due to intentional misconduct on the part of Company senior management.  On October 29, 2014, ARCP publicly disclosed in a filing with the SEC that the financial information contained in the Company's 2013 Annual Report, 2014 First Quarter Report, and 2014 Second Quarter Report should no longer be relied on.  SOF ¶ 14.  ARCP disclosed that its audit committee (the "Audit Committee") was conducting an investigation into "concerns regarding accounting practices and other matters" and had identified flaws in the Company's internal controls.  SOF ¶ 15.  The Company also disclosed that it had identified "intentional" accounting errors in the 2014 First Quarter Report and the 2014 Second Quarter Report.  SOF ¶ 16.  ARCP's Audit Committee then requested that McAlister (and Block) resign from their positions at ARCP, and McAlister departed the Company.  SOF ¶ 17.

### F.    The Restatement

On March 2, 2015, ARCP filed with the SEC the Restatement consisting of the following: Form 8-K filed with the SEC (the "March 2, 2015 8-K"); Amendment No. 2 to the annual report for the year ended December 31, 2013, filed on Form 10-K/A with the SEC (the "Amended 2013 Annual Report"); Amendment No. 1 to the quarterly report for the quarter ended March 31, 2014, filed on Form 10-Q/A with the SEC (the "Amended 2014 First Quarter Report"); and Amendment

No. 1 to the quarterly report for the quarter ended June 30, 2014 filed on Form 10-Q/A with the SEC (the "Amended 2014 Second Quarter Report").  SOF ¶ 18.  The Restatement was filed after the Audit Committee completed a months-long investigation.  SOF ¶ 19.  In the Restatement, ARCP disclosed that: (a) it had overstated AFFO for 2011, 2012, 2013 (including each fiscal quarter of 2013) and the first two quarters of 2014; (b) the overstatement had come to the attention of "senior management" (McAlister was Chief Accounting Officer) prior to the release of the 2014 First Quarter Report; (c) senior management knowingly failed to correct the misreported AFFO figure or prevent AFFO from being overstated again in the 2014 First Quarter Report; (d) senior management had intentionally made improper adjustments in the 2014 Second Quarter Report in order to cover up the prior AFFO misrepresentations; and (e) there were material weaknesses and widespread deficiencies in ARCP's internal controls and disclosure controls and procedures.  SOF ¶ 20.

In the Restatement, ARCP disclosed that its "senior management" knew of the improper accounting for AFFO in the 2013 Annual Report no later than May 8, 2014, the date the 2014 First Quarter Report was filed.  SOF ¶ 21.  Instead of correcting the misstatements in the 2013 Annual Report and ensuring the accounting errors were not repeated, ARCP senior management "allowed the [2014 First Quarter Report] to be filed without completing an analysis of these errors."  SOF ¶ 22.  The Company stated that the AFFO accounting errors in the 2014 First Quarter Report were known in the second quarter of 2014 to "senior management," but "*intentionally not corrected, and other AFFO and financial statement errors were intentionally made* [in the 2014 Second Quarter Report], resulting in an overstatement of AFFO and an understatement of the Company's net loss" in that report.  SOF ¶ 24 (emphasis added).

Thus, the 2014 First Quarter Report and 2014 Second Quarter Report intentionally misstated the Company's AFFO because "[s]enior management considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance and, for the first two quarters of 2014, sought to maintain reported AFFO within the Company's 2014 guidance range of $1.13 to $1.19 per share announced at the end of 2013."  SOF ¶¶ 23, 25.

McAlister and other Defendants inflated AFFO by material amounts in those Reports, as confirmed in the Restatement.  For example:

- AFFO was overstated in the 2014 First Quarter Report by $38.5 million, or 26.1%.  SOF ¶ 26.

- AFFO was overstated in the 2014 Second Quarter Report by $19.3 million, or 9.4%.  SOF ¶ 27.

- AFFO was overstated for the six month period ending June 30, 2014, by $52.4 million, or 14.8%.  SOF ¶ 28.

**G.    McAlister's Criminal Charges, Guilty Plea, And Judgment**

Following the Restatement, McAlister was criminally charged with crimes including securities fraud and conspiracy to commit securities fraud for her role in making the false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K.  SOF ¶ 29.

The criminal information against McAlister (the "Information") asserted four criminal counts:  (1) conspiracy to commit securities fraud, to make false filings with the SEC, and to falsify books and records, (2) securities fraud, (3) false statements in filings with the SEC, and (4) false representation in a matter within the jurisdiction of the Executive Branch of the Government of the United States.  SOF ¶ 30.  The Information also alleged that, before the Company filed the 2014 First Quarter Report, McAlister knew that the method used by ARCP to calculate AFFO in the first quarter of 2014 "and certain previous quarters" was erroneous, but, during that time period,

"no corrective change was made to the [2014 First Quarter Report] while the issue was under review."  SOF ¶ 31.

McAlister waived her right to prosecution by indictment and elected to plead guilty to all four counts asserted in the Information.  SOF ¶ 32.  As McAlister admitted during her plea allocution, she "and others at the company" learned prior to filing the 2014 First Quarter Report that AFFO was overstated, but did nothing to correct or prevent the false and misleading 2014 First Quarter Report from being filed.  SOF ¶ 33.  Then, McAlister and Block "agreed to falsely inflate the AFFO calculation for the second quarter of 2014 and for the year to date 2014 that were to be reported in the filing."  SOF ¶ 34.  "This conduct involved inflating numbers for a particular line item that had no valid basis . . . ."  SOF ¶ 35.  McAlister and Block "inflated the figures to hide the first quarter error and to create the appearance that the company performance was in line with analyst expectations and on track to meet the company's full year AFFO guidance."  *Id*. McAlister and Block "intentionally misled investors, the public and the SEC about [AFFO] by an amount" McAlister knew "investors would consider important."  SOF ¶ 36.

On March 23, 2018, the court in *United States v. McAlister*, No. 16-cr-653 (S.D.N.Y. June 29, 2016) entered judgment against McAlister on all four counts alleged in the Information, and McAlister was adjudicated guilty on each of those four counts.  SOF ¶ 37.  McAlister was sentenced to "time served" on all counts, one year of supervised release to run concurrently, and a criminal assessment of $400.  *Id.*

### H.    McAlister's Sworn Admissions At Block's Criminal Trial

Block was indicted and charged with six counts of securities fraud and conspiracy to commit securities fraud for his role in making the false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K.  SOF ¶ 37.  Fact witnesses who testified

during Block's criminal trial included McAlister and Ryan Steel ("Steel"), ARCP's Director of Financial Reporting.  SOF ¶ 39.

During Block's criminal trial, McAlister testified under oath that she "committed crimes" during her employment at ARCP by making "[f]alse filings with the SEC."  SOF ¶ 40.  Among other things, McAlister admitted that she allowed the 2014 First Quarter Report to be filed knowing that its AFFO calculation was false, and she intentionally carried the false AFFO calculation over to the 2014 Second Quarter Report.  SOF ¶ 41.

McAlister testified in detail about the fraud over the course of two days.  During her testimony, McAlister admitted that as early as "the end of April, early May of 2014" she learned that the method by which AFFO had been calculated and reported by the Company was erroneous. SOF ¶ 42.  During this same period of time, McAlister was told that the impact of the error had "gotten quite large."  *Id.*  Nevertheless, McAlister admitted that (a) the 2014 First Quarter Report was filed on May 8, 2014, *after* she learned of the erroneous calculation, (b) "at the time of the [filing of the 2014 First Quarter Report]" McAlister "believe[d] that the methodology that was used in that filing [to calculate AFFO and AFFO per share] was incorrect," and (c) McAlister did not alert the Audit Committee or the Company's outside auditor Grant Thorton of this erroneous methodology prior to the filing of the 2014 First Quarter Report.  *Id.*

As a result, the 2014 First Quarter Report erroneously reported the Company's AFFO as approximately $147.4 million for the first quarter of 2014.  SOF ¶ 43.  The First Quarter 2014 8-K, filed on the same day as the 2014 First Quarter Report, reported the same erroneous AFFO calculation of approximately $147.4 million, or "$0.26 per fully diluted share."  *Id.*

Soon thereafter, McAlister came to understand further details about the erroneous AFFO calculations.  While the Company had purported to calculate AFFO exclusive of amounts

attributable to holders of noncontrolling interests (or "NCI") in the Company–otherwise known as the "net method" to calculate AFFO (the "Net Method")–certain amounts that the Company had "added-back" to its AFFO calculation *were* attributable to such noncontrolling interests, thus artificially inflating AFFO. SOF ¶ 44. This error resulted in an overstatement of the Company's first quarter 2014 AFFO per share by three cents, from 23 cents per share to 26 cents per share. *Id.* By June 2014, McAlister understood that AFFO also had been erroneously calculated and reported by the Company for each quarter of 2012 and each quarter of 2013. SOF ¶ 45.

Sometime in June 2014, McAlister disclosed this erroneous AFFO methodology–along with the fact that AFFO per share had been overstated by three cents in the first quarter 2014– to Defendants Block, Beeson, and Kay. SOF ¶ 46. Defendant Kay responded by stating, "[w]ell, we're not going to go back and change that." *Id*. And, Defendant Block responded by stating that "he was going to go back and talk to [Defendant] Schorsch." *Id*.

Instead of correcting these gross errors, Defendants opted to double-down on them. On July 28, 2014, the day before the 2014 Second Quarter Report was to be filed with the SEC, Block elected to change the method by which AFFO would be calculated in that report from the Net Method to another method whereby the Company would *not* exclude amounts attributed to NCI in the AFFO calculation, otherwise known as the gross method (the "Gross Method"). SOF ¶ 47. This switching of the AFFO calculation from the Net Method to the Gross Method would, as McAlister admitted, make it "a little more difficult" for investors to identify the AFFO calculation error from the first quarter of 2014. *Id*. Nevertheless, such change in calculation would still reveal the three-cent overstatement of the Company's AFFO per share in the Company's first quarter 2014 filings. SOF ¶ 48. Thus, Defendants continued to attempt to find ways to hide that three-cent overstatement in the Company's second quarter 2014 filings. *Id*.

McAlister, Block, and Steel met the evening of July 28, 2014, before the 2014 Second Quarter Report was to be filed with the SEC. SOF ¶ 49. During that meeting, McAlister and Block had a conference call with Schorsch, who gave Block instructions as to how to manipulate the Company's AFFO to conceal the three-cent overstatement of the Company's AFFO per share for the first quarter of 2014. *Id*. After speaking with Schorsch, Block knowingly inserted a fabricated and "unsupported [$12 million] adjustment in the deferred financing cost line item" into the Company's AFFO schedule. SOF ¶ 50. McAlister admitted that she and Block "fraudulently inputted a $12 million number in [the] filing . . . ." SOF ¶ 51. As McAlister testified under oath, "[i]t was a -- what I would call sort of result driven in that it was the exact number that you needed to put in so that the AFFO and AFFO per share calculated to what it needed to be." SOF ¶ 52. The fraudulent $12 million number intentionally provided a "plug" to conceal the three-cent hole resulting from the Company's erroneous AFFO per share calculation for the first quarter of 2014. *Id*. McAlister and Block thus "plugged" the fraudulent $12 million figure into the 2014 Second Quarter Report even though she knew that "[y]ou can't plug numbers. You have to have analysis and [a] basis that ties back to books and records." SOF ¶ 53.[4]

In the end, McAlister admitted that (a) she and "Mr. Block put false numbers in an SEC filing that was publicly filed on July 29[, 2014]," (b) those numbers did not "have any basis whatsoever in ARCP's general ledger," and (c) those numbers did not "have any legitimate basis at all." SOF ¶ 57. Instead, "the purpose of the plug number was in order to get the AFFO per share where it needed to be so that the [Company] could have those numbers for Wall Street[.]" SOF ¶ 58. As a result, McAlister admitted, she knew that the information concerning AFFO and AFFO per share as reported in the 2014 Second Quarter 8-K was also false. SOF ¶ 55.

---

[4]      Steel likewise testified that he told "Mr. Block and Ms. McAlister, 'we can't use that. We don't have any support for that. There's nothing that supports those numbers.'" SOF ¶ 54.

On the morning of July 29, 2014, before the 2014 Second Quarter Report and 2014 Second Quarter 8-K were filed with the SEC, McAlister, Block, and Schorsch fraudulently represented to the Company's outside auditor Grant Thorton that (a) the representations made by those Defendants to Grant Thorton during its reviews of the 2014 Second Quarter Report were accurate, (b) "there are no significant deficiencies or material weaknesses in the design or operation of internal control over financial reporting that could adversely affect the [Company's] ability to record, process, summarize and report interim financial data," and (c) "[w]e have no knowledge of fraud or suspected fraud affecting the company involving management, employees who have significant roles in internal control, or others where the fraud could have a material effect on the consolidated interim financial statements."  SOF ¶ 56.

After the three-week criminal trial in June 2017, and following McAlister's testimony, the jury convicted Block of all six counts in the Indictment, including securities fraud.  SOF ¶ 59.

## I.     The Company Incurs Damages Resulting From McAlister's Misconduct

The Company has been damaged by McAlister's non-exculpated breaches of her fiduciary duties.  While the full scope of damages is still unfolding, to date the Company has disclosed hundreds of millions of dollars in actual harm resulting from the intentionally false and misleading reports.

As of September 8, 2018, ARCP had incurred $165,744,000 in expenses for the Audit Committee investigation and related matters that would not have been required had McAlister not breached her fiduciary duties.  SOF ¶ 63

On or around June 11, 2018, the Company disclosed that it had settled a lawsuit for $90 million brought by Vanguard Specialized Funds pending in the United States District Court for the District of Arizona captioned *Vanguard Specialized Funds, et al. v. VEREIT, Incorporated, et al.*,

13

No. CV-15-02157-PHX-JAS. SOF ¶ 60. Those claims, naming both the Company and McAlister as defendants for securities fraud, arose out of the "disclosures made by the Company in October 2014 and March 2015 regarding its financial statements, which included the Company's March 2015 restatement of certain of its previously issued financial statements." *Id*. The Complaint in that action alleges securities fraud claims against both the Company and McAlister for false and misleading statements in the 2014 First Quarter Report, 2014 First Quarter 8-K, 2014 Second Quarter Report, and 2014 Second Quarter 8-K. *Id*.

On or around October 3, 2018, the Company disclosed that it had settled eight "opt-out" securities suits for $85 million pending in this Court captioned: *BlackRock ACS US Equity Tracker Fund, et al. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-08464-AKH; *Clearline Capital Partners LP, et al. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-08467-AKH; *Eton Park Fund, L.P., et al., v. American Realty Capital Properties, Inc., et al*., No. 1:16-cv-09393-AKH; *HG Vora Special Opportunities Master Fund, Ltd. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-04107-AKH; *Pentwater Equity Opportunities Master Fund Ltd., et al. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-08510-AKH; *PIMCO Funds: PIMCO Diversified Income Fund, et al. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-08466-AKH; *Reliance Standard Life Ins. Co., et al, v. American Realty Capital Properties, Inc., et al*., No. 1:17-cv-02796-AKH; and *Twin Securities, Inc., et al. v. American Realty Capital Properties, Inc., et al*., No. 1:15-cv-01291-AKH. SOF ¶ 61. Those claims likewise named both the Company and McAlister as defendants for securities fraud and arose out of "the disclosures made by the Company in October 2014 and March 2015 regarding its financial statements, which included the Company's March 2015 restatement of certain of its previously issued financial statements." *Id*. The Complaints in those actions allege securities fraud claims

against both the Company and McAlister for false and misleading statements in (among others) the 2014 First Quarter Report, 2014 First Quarter 8-K, 2014 Second Quarter Report, and 2014 Second Quarter 8-K. *Id.*

And on or about October 26, 2018, the Company disclosed that it had settled four additional "opt-out" securities suits for $42.5 million pending in the United States District Court for the Southern District of New York captioned: *Archer Capital Master Fund, L.P., et al. v. American Realty Capital Properties, Inc. et al.*, No. 1:16-cv-05471-AKH; *Atlas Master Fund, Ltd., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:16-cv-05475-AKH; *Fir Tree Capital Opportunity Master Fund, L.P., et al. v. American Realty Capital Properties, Inc., et al.,* No. 1:17-cv-04975-AKH; and *Cohen & Steers Institutional Realty Shares, Inc. et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:18-cv-06770-AKH.  SOF ¶ 62.  Those claims, naming both the Company and McAlister as defendants for securities fraud, also arose out of "the disclosures made by the Company in October 2014 and March 2015 regarding its financial statements, which included the Company's March 2015 restatement of certain of its previously issued financial statements." *Id*.  The Complaints in those actions also allege securities fraud claims against both the Company and McAlister for false and misleading statements in (among others) the 2014 First Quarter Report, 2014 First Quarter 8-K, 2014 Second Quarter Report, and 2014 Second Quarter 8-K. *Id.*

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

A party may seek summary judgment on any claim or defense, or any part of a claim or defense.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where the record establishes that there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Where, as is the case here, a defendant's liability is

admitted, partial summary judgment promotes judicial economy by streamlining the case and resolving as a matter of law those issues about which there is no genuine dispute. *See Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 346 (S.D.N.Y. 2009).

## ARGUMENT

### I.  Elements Of Breach Of Fiduciary Duty Claim

To establish a claim for breach of fiduciary duty under Maryland law, Plaintiffs must demonstrate: (a) a fiduciary duty exists; (b) a fiduciary breached that duty; and (c) harm resulted from the breach. *See Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1046 (Md. 1995); *see also BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 405-08 (D. Md. 2001) (granting summary judgment on breach of fiduciary duty claim where high-level employee had siphoned critical warehouse business of employer); *EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 625-26 (D. Md. 2013) (granting summary judgment against employee for breach of fiduciary duty where, *inter alia*, there was no genuine issue of material fact that he owed fiduciary duty of loyalty to employer under Maryland law; employee was accused of stealing business from his employer for personal profit).

Under Maryland law, officers and directors owe fiduciary duties to their corporation. *See Strougo v. Bassini*, 282 F.3d 162, 173 (2d Cir. 2002) (citing *Toner v. Baltimore Envelope Co.*, 498 A.2d 642, 648 (Md. 1985)). This fiduciary relationship imposes duties of care, loyalty, and good faith. *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 419 (Md. 2009) (collecting cases). These duties are "not intermittent or occasional, but instead 'the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided.'" *Storetrax.com,*

16

*Inc. v. Gurland*, 915 A.2d 991, 1001 (Md. 2007) (citing *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)).[5]

A director's or officer's intentional issuance of false and misleading statements on behalf of the Company is also breach of fiduciary duty.  *See Felker v. Anderson*, No. 04-0372-CV-W-ODS, 2005 U.S. Dist. LEXIS 4236, at \**8-9 (W.D. Mo. Feb. 11, 2005) (liability will incur for breach of fiduciary duty under Maryland law for making false and misleading statements); *see also Pitman v. Aran*, 935 F. Supp. 637, 646-47 (D. Md. 1996) (granting motion for summary judgment against defendant officer and director who usurped opportunities of his company for personal profit in Israeli construction business and failed to disclose to company same).

ARCP's corporate charter contains a limited exculpation provision adopted pursuant to Maryland Courts & Judicial Procedure Code Section 5-418.  However, Section 5-418 affords no safe-harbor where the fiduciary received an "improper benefit or profit in money" *or* where the "person's action, or failure to act, was the result of active and deliberate dishonesty":

> (a) Expansion or limitation of liability.  The charter, as defined under § 1-101 of the Corporations and Associations Article, of a Maryland corporation may include any provision expanding or limiting the liability of its directors and officers to the corporation or its stockholders for money damages, but may not include any provision that restricts or limits the liability of its directors or officers to the corporation or its stockholders:
>
> (1) To the extent that it is proved that the person actually received an improper benefit or profit in money, property, or services for the amount of the benefit or profit in money, property, or services actually received; [or]
>
> (2) To the extent that a judgment or other final adjudication adverse to the person is entered in a proceeding based on a finding in the proceeding that the person's action, or failure to act, was the result of active and

---

[5]    Maryland will look to Delaware decisions for guidance on matters of corporate law where no Maryland precedents exist addressing a particular issue.  *See Goldstein v. Lincoln Nat'l Convertible Sec. Fund, Inc.*, 140 F. Supp. 2d 424, 439, n.12 (E.D. Pa. 2001) ("With respect to issues on which the Maryland courts have not spoken, this Court looks primarily to the state law of Delaware for guidance.  In the area of corporate law, the Maryland Court of Appeals has noted the respect due Delaware decisions.").

deliberate dishonesty and was material to the cause of action adjudicated in the proceeding[.]

Md. Cts. & Jud. Proc. Code §§ 5- 418(a)(1)-(2) ("Section 5-418").

## II.     There Is No Genuine Issue Of Material Fact That McAlister Owed The Company Fiduciary Duties

There is no genuine issue of material fact that McAlister owed ARCP fiduciary duties because she was the Chief Accounting Officer of the Company. SOF ¶ 2. As such, she owed the Company duties of loyalty and good faith. *Shenker*, 983 A.2d at 419. McAlister similarly does not deny that she owed ARCP fiduciary duties. *See* Defendant Lisa McAlister's Answer to Plaintiff's Amended Verified Shareholder Derivative Complaint (ECF No. 97), ¶ 174 (asserting privilege under the Fifth Amendment in response to allegation that she owed fiduciary duties).

## III.     There Is No Genuine Issue Of Material Fact That McAlister Breached Her Fiduciary Duties Through "Deliberate Dishonesty" In Intentionally Causing The Company To Make False And Misleading Statements Of Material Fact

McAlister's own sworn admissions, guilty plea, and criminal conviction eliminate any genuine issue of material fact that McAlister committed non-exculpable breaches of her fiduciary duties by intentionally causing the Company to issue false and misleading statements.

McAlister was charged with, and pled guilty to, securities fraud for the misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K. SOF ¶¶ 29-37. To prove that McAlister committed criminal securities fraud, the government had to prove "beyond a reasonable doubt that [McAlister]: '(1) made a material misrepresentation or material omission as to which [she] had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities.'" *In re Adelphia Cmtys. Corp. Sec. & Derivative Litig.*, No. 03 MD 1529 (LMM), 2005 U.S. Dist. LEXIS 43300, at *22 (S.D.N.Y., Aug. 22, 2005) (citing and quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)). Thus, for McAlister to have been convicted, the government necessarily had to prove that McAlister

intentionally made material misrepresentations and omissions in the 2014 Second Quarter Report and 2014 Second Quarter 8-K.  The Government did just that by securing McAlister's conviction of criminal securities fraud through her guilty plea:  "Under New York law, a conviction – whether based on a trial or a guilty plea – is conclusive proof of the underlying facts upon which it rests and the defendant is estopped from relitigating those facts in any future proceeding.'"  *SEC v. Penn*, 225 F. Supp. 3d 225, 232 (S.D.N.Y. 2016) (internal citations and quotations omitted).[6]

McAlister's guilty plea also eliminates any genuine issue of material fact that she committed non-exculpated breaches of her fiduciary duties by intentionally causing the Company to issue false and misleading statements.  *See Tyco Int'l, Ltd. v. Swartz*, No. 03 Civ. 2247 (TPG), 2011 U.S. Dist. LEXIS 20970, at **9-10 (S.D.N.Y. March 3, 2011) (granting summary judgment to plaintiff on breach of fiduciary duty claim against defendant CFO based on CFO's related criminal conviction:  "the conviction for falsifying business records in connection with the New York Relocation Plan establish[es] beyond any doubt that [defendant] committed breaches of fiduciary duty of an aggravated nature" based on the same misconduct).

As this Court has held in this very Action, allegations against Defendants for accounting manipulation constitute "deliberate dishonesty" that is not protected by exculpation provisions in the charter and gives rise to a breach of fiduciary duty.  *Witchko v. Schorsch*, No. 15 Civ. 6043 (AKH), 2016 U.S. Dist. LEXIS 95795, at **28-29 (S.D.N.Y. June 9, 2016) (holding allegations against Defendants for accounting manipulation not protected by exculpation and exposes them to breach of fiduciary duty liability under Maryland law); *see also Matson v. Alpert (In re LandAmerica Fin. Group, Inc.)*, 470 B.R. 759, 808 (E.D. Va. 2012) ("[T]he Maryland exculpation

---

[6]     Because this is a diversity case, this forum's rules apply to collateral estoppel principles here.  *Maryland Cas. Co. v. W.R. Grace & Co.-Conn.*, No. 88 Civ. 4337 (JSM), 1991 U.S. Dist. LEXIS 15354, at **3-4 (S.D.N.Y. Oct. 24, 1991) (forum rules apply to collateral estoppel in diversity cases).

statute would not bar a claim for willful misconduct to the extent that the misconduct constitutes active and deliberate dishonesty material to the cause of action.")

McAlister admitted under oath at Block's criminal trial that she (a) allowed the 2014 First Quarter Report to be filed knowing that its AFFO calculation was false, thus causing the Company to misstate AFFO and AFFO per share in the 2014 First Quarter Report and 2014 First Quarter 8-K, (b) intentionally carried ARCP's fraudulent AFFO calculation over to the 2014 Second Quarter Report, and (c) helped fraudulently manipulate the AFFO calculations in the 2014 Second Quarter Report, thus causing the Company to misstate AFFO and AFFO per share in the 2014 Second Quarter Report and 2014 Second Quarter 8-K.   These admissions alone entitle Plaintiffs to summary judgment on McAlister's non-exculpated breaches as a matter of law.   *See SEC v. Illarramendi*, 732 Fed. App'x. at 13 (affirming grant of summary judgment to SEC for violation of Investment Advisors Act based on defendant's admissions in prior court proceedings as to underlying facts constituting violation); *In re WorldCom, Inc. Sec. Litig*., 346 F. Supp. 2d 628, 660-61 (S.D.N.Y. 2004) (entering partial summary judgment in plaintiff's favor because defendants "concede[d]" that financial statements were incorrect); *Delchi Carrier SpA v. Rotorex Corp*., 71 F.3d 1024, 1028 (2d Cir. 1995) (affirming grant of plaintiff's motion for summary judgment based on party's "ample admissions").[7]

In sum, in the face of such uncontroverted facts, there is no legitimate dispute that McAlister committed "active and deliberate dishonesty" by intentionally causing the Company to issue false statements of material fact about its financials in its 2014 First Quarter Report, 2014

---

[7]      McAlister does not dispute that she committed the acts described in her Plea Agreement or that she testified truthfully at the trial of Brian Block.  She declined to answer any questions regarding her misconduct during her sworn deposition in this matter, citing her Fifth Amendment privilege against self-incrimination.  *See* SOF ¶¶ 7, 20, 22, 24, 40, 42, 46, 49, 58, 62.  Accordingly, when given the opportunity to contradict the substantial evidence presented herein by Plaintiffs, she declined to do so.

First Quarter 8-K, 2014 Second Quarter Report, and 2014 Second Quarter 8-K, giving rise to a non-exculpated breach of her fiduciary duties to the Company.

## IV.   McAlister Is Estopped From Contesting Her Non-Exculpated Breaches

McAlister is precluded from even attempting to create a fact issue concerning her non-exculpated breaches because she has pled guilty and has been criminally convicted of the very conduct giving rise to them.  "It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of a private party in a subsequent civil action with regard to any issue of fact or law (1) that is identical to the issue raised in the prior proceeding; (2) that was actually litigated and decided in the prior proceeding; (3) that the defendants had a full and fair opportunity to litigate; and (4) that needed to be determined in order to reach a valid and final judgment on the merits."  *Pizzuto v. County of Nassau*, 239 F. Supp. 2d 301, 307-308 (S.D.N.Y. 2003) (citing *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa SA*., 56 F.3d 359, 368 (2d Cir. 1995)).  "A guilty plea qualifies as actual litigation for purposes of collateral estoppel in a subsequent civil trial."  *Id*. (citing *Gelb v. Royal Globe Ins. Co*., 798 F.2d 38, 43 (2d Cir. 1986)).

Here, there is no genuine issue of material fact that all four conditions are satisfied.  *First*, the key underlying issue here–McAlister's intentionally making, and thus also causing the Company to make, false and misleading statements concerning AFFO figures in the Company's securities filings–is identical in the prior criminal proceeding and in this action.  *Second*, there is no question that this issue was actually litigated and decided in McAlister's criminal case by virtue of McAlister pleading guilty to securities fraud and making false statements in filings with the SEC.  *Pizzuto*, 239 F. Supp. 2d at 309 (entering guilty plea satisfies "actually litigated and decided" requirement) (citing *Gelb*, 798 F.2d at 43).  *Third*, for the same reason, McAlister had a "full and fair opportunity" to litigate the issue in those criminal proceedings.  *See id.* (entering guilty plea

satisfies "full and fair opportunity" requirement). *Finally,* the issue litigated–McAlister's intentionally false statements in the Company's July 2014 securities filings, *i.e.*, the 2014 Second Quarter Report and the 2014 Second Quarter 8-K–was absolutely necessary to support her conviction. In fact, that issue was the *sine qua non* of her criminal Information and guilty plea and was precisely what she was convicted for.

Courts have applied principles of estoppel based on prior convictions to grant summary judgment on breach of fiduciary duty claims. For example, in *AvalonBay Cmtys., Inc. v. Willden*, No.: l:08-cv-777, 2009 U.S. Dist. LEXIS 69118 (E.D. Va. Aug. 7, 2009), defendant Willden was alleged to have helped his brother, an executive of plaintiff company, engage in a kickback scheme and bill the company for services not actually performed. *Id*. at **3-6. For his role in the conspiracy, Willden pled guilty in a criminal action to conspiracy to commit mail fraud. *Id*. at **7-8. The company then brought a civil action against Willden for his role in the conspiracy, alleging claims for (*inter alia*) aiding and abetting his brother's breach of fiduciary duty to the company. *Id*. at **7-8. The court granted the company's motion for summary judgment against Willden, holding that, by virtue of his guilty plea and accompanying court admissions, Willden was collaterally and judicially estopped[8] from contesting the wrongful conduct giving rise to the aiding and abetting breach of fiduciary duty claim, *i.e.*, that he knowingly assisted his brother in breaching his duty of loyalty to plaintiff company by engaging in the kick-back scheme. *Id.* at **11-17, 33-35.

---

[8]     The elements of offensive collateral estoppel in the Fourth Circuit are substantially the same as in the Second Circuit. *See Willden*, 2009 U.S. Dist. LEXIS 69118, at *16 (reciting Fourth Circuit elements of offensive collateral estoppel based on previously litigated action: (1) the issue sought to be precluded is identical to the one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) that determination was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party to be estopped must have had a full and fair opportunity to litigate the issue in the prior proceeding).

Similarly, in *Bower*, 1991 U.S. Dist. LEXIS 1204, at **2-3, the court held that the defendant, Bower, was estopped from contesting his liability for breach of fiduciary duty to his employer, the City of New York, for extorting money from restaurant owners under the auspices of his employment.  That was because Bower had already been criminal convicted for that extortion under the Racketeer Influenced and Corrupt Organizations Act and Hobbs Act.  The court noted that "[e]xtorting money from restaurant owners and operators through the misuse of his position as a City official is a clear breach of the fiduciary duty Bower owed to the City." *Id*. at **2-3.  Thus, "Bower's conviction for thirteen violations of the Hobbs Act precludes him from denying or litigating the City's claim that he extorted money from restaurant owners or operators through misuse of his City position," and "summary judgment on the City's claim for breach of fiduciary duty is granted." *Id*. at *3.

As in *Willden* and *Bower*, here, McAlister's guilty plea and conviction for securities fraud based on the 2014 Second Quarter Report and the 2014 Second Quarter 8-K precludes her from litigating, contesting, or denying Plaintiffs' claim that she engaged in "active and deliberate" dishonesty against the Company, and it warrants summary judgment as to Plaintiffs' breach of fiduciary duty against her.

**V.    There Is No Genuine Issue Of Material Fact That The Company Has Been Harmed As A Result Of McAlister's Non-Exculpated Breaches**

Finally, there is no genuine issue of material fact that the Company has been harmed as a result of McAlister's non-exculpated breaches.  Courts grant summary judgment for breach of fiduciary duty claims under Maryland law where the record is clear that the breaches caused plaintiff harm. *See BEP*, 174 F. Supp. 2d at 408 (granting summary judgment on breach of fiduciary duty claim, and finding plaintiff established causation and damages–including lost profits–where "[h]ad [defendant] not acted as he did, [by stealing warehousing business from his

employer], plaintiff would have received . . . the additional sum of $22,496.46 for the period in question"). Damages to company value, along with costs incurred in defending liability from the misconduct, constitute actionable harm for breach of fiduciary duty under Maryland law. *See Matson*, 470 B.R. at 783, 804-06 (damages to company enterprise value and exposure to defending litigation constitute viable damages for breach of fiduciary duty claim under Maryland law).

While the full scope of damages is continuing to unfold and may be determined at the conclusion of this case, the record is already clear that hundreds of millions of dollars of damages have been inflicted on the Company as a result of McAlister's breaches. First, ARCP has already acknowledged that it has incurred $165,744,000 for Audit Committee investigation expenses and related actions as of September 8, 2018 that would not have been required had McAlister properly met her fiduciary obligations. SOF ¶ 63. Second, ARCP had already paid $217,500,000 to settle various individual securities actions based in part on Block's conduct including: (a) a $90 million settlement to resolve *Vanguard Specialized Funds, et al. v. VEREIT, Incorporated, et al*., No. CV-15-02157-PHX-JAS (D. Az.), naming both the Company and Block as defendants for securities fraud for false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K (SOF ¶ 60); (b) a $85 million settlement to resolve eight "opt-out" securities cases pending in this Court, also naming the Company and Block as defendants for securities fraud for false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K (SOF ¶ 61); and (c) a $42.5 million settlement to resolve another four "opt-out" securities cases pending in this Court, also naming the Company and McAlister as defendants for securities fraud for false and misleading statements in the 2014 Second Quarter Report and 2014 Second Quarter 8-K. SOF ¶ 61. Because this harm is actionable and uncontroverted, and by the Company's own admission resulted from McAlister's misconduct forming the basis of this breach of fiduciary duty

claim, there is no genuine issue of material fact that the Company has been harmed as a result of McAlsiter's fiduciary breaches.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter partial summary judgment against McAlister.

Dated:  February 8, 2019

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

Robert I. Harwood
Matthew M. Houston
Benjamin I. Sachs-Michaels
712 Fifth Avenue, 31st Floor
New York, NY 10019
Tel: (212) 935-7400

*Liaison Counsel for Plaintiffs*

Robert C. Schubert
Willem F. Jonckheer
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Tel: (415) 788-4220

Jeffrey M. Norton
NEWMAN FERRARA LLP
1250 Broadway, 27th Floor
New York, NY 10001
Tel: (212) 619-540

Timothy Brown
Alex P. McBride
THE BROWN LAW FIRM, P.C.
240 Townsend Square
Oyster Bay, NY 11771
Tel: (516) 922-5427

Corey D. Holzer
Marshall P. Dees
HOLZER & HOLZER, LLC
1200 Ashwood Parkway, Suite 410
Atlanta, GA 30338
Tel: (770) 392-0090

Alfred G. Yates, Jr.
Gerald L. Rutledge
LAW OFFICE OF ALFRED G. YATES JR PC
519 Allegheny Building
300 Mt. Lebanon Blvd, Suite 206-B
Pittsburgh, PA 15219
Tel: (412) 391-5164

Curtis V. Trinko
LAW OFFICES OF CURTIS V. TRINKO, LLP
16 West 46th Street, 7th Floor
New York, NY 10036
Tel: (212) 490-9550

*Counsel for Plaintiffs*