UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOANNE WITCHKO, Derivatively on Behalf
of Nominal Defendant AMERICAN REALTY
CAPITAL PROPERTIES, INC.,

                    Plaintiff,

    v.

NICHOLAS S. SCHORSCH, et al.,

                    Defendants,

    -and-

AMERICAN REALTY CAPITAL
PROPERTIES, INC.,

                    Nominal Defendant.

Lead Case No. 1:15-cv-06043-AKH

(Consolidated with Case No.
1:15-cv-08563-AKH)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE
<u>SETTLEMENT AND APPROVAL OF SHAREHOLDER NOTICE</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.       INTRODUCTION ........................................................................................................1

II.      HISTORY OF THE LITIGATION ...............................................................................3

         A.       The Litigation Demand And Filing Of The Derivative Action ...................3

         B.       The Motion To Dismiss The Derivative Action ........................................4

         C.       Certain Defendants Appeal Denial Of The Motion to Dismiss ...............5

         D.       VEREIT And The Non-VEREIT Settling Defendants Attempt
                  To Stay The Derivative Action and Prevent Derivative Plaintiffs
                  From Conducting Discovery.......................................................................6

         E.       The U.S. Government Attempts To Stay The Derivative Action ...............7

         F.       Document Discovery and Depositions......................................................8

         G.       Derivative Plaintiffs' Experts ..................................................................9

         H.       The Summary Judgment Motions...........................................................10

         I.       The Settlement Negotiations..................................................................11

III.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................12

         A.       The Preliminary Approval Standard .......................................................13

         B.       The Proposed Settlement Serves the Interests of VEREIT and Its Shareholders..14

                  1.       The Recovery of $286,500,000....................................................15

                  2.       The Secondary Agreement............................................................16

                  3.       Release of Non-VEREIT Settling Defendant Counterclaims...................17

                  4.       Continued Costs of Litigation......................................................18

                  5.       Opinion of Current Management ..................................................19

         C.       The Proposed Settlement Is The Result Of Intense, Lengthy,
                  Arm's-Length Negotiations By Experienced Counsel ...........................19

IV.     THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE ......................21

V.      THE PROPOSED SCHEDULE OF EVENTS .............................................22

VI.     CONCLUSION.............................................................................23

## TABLE OF AUTHORITIES

**Case**                                                                       **Page**

*Armstrong v. Bd. of School Dirs.,*
    616 F.2d 305 (7th Cir. 1980) ............................................................... 14

*Chi Kong Leung v. Home Boy Rest.,*
    2009 U.S. Dist. LEXIS 12556, at \*2 (S.D.N.Y. Feb. 18, 2009)............................ 21

*City of Pontiac Gen. Emps' Ret. Sys. v. Langone,*
    *derivatively on behalf of The Home Depot,* Inc.,
    2006 Civ. 122302, Slip op. at 4 (Ga. Super. Ct. June 10, 2008)........................... 22

*City of Providence v. Aéropostale, Inc.,*
    2014 U.S. Dist. LEXIS 64517, at \*11 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom., Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) ................... 20

*Clark v. Ecolab Inc.,*
    2010 U.S. Dist. LEXIS 47036, at \*17-18 (S.D.N.Y. May 11, 2010) ....................... 21

*In re AOL Time Warner S'holder Derivative Litig.,*
    2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006)............................................. 14, 15, 21

*In re Comverse Tech., Inc. Derivative Litig.,*
    06 Civ. 1849, Slip op. at 3 (E.D.N.Y. Apr. 2, 2010) ...................................... 22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
    2007 U.S. Dist. LEXIS 57918, at \*12 (S.D.N.Y. July 27, 2007) ........................... 21

*In re Initial Pub. Offering Sec. Litig.,*
    243 F.R.D. 79 (S.D.N.Y. 2007) ........................................................... 14

*In re Marsh & McLennan Co., Inc. Sec. Litig.,*
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).................... 20

*In re Marvell Tech. Group Ltd. Derivative Litig.,*
    No. C-06-3894-RMW, Slip op. at 2 (N.D. Cal. May 21, 2009) ........................... 22

*In re Metro. Life Derivative Litig.,*
    935 F. Supp. 286 (S.D.N.Y. 1996) ....................................................... 22

*In re MoneyGram Int'l., Inc. Deriv. Litig.,*
    09 Civ. 3208 (DSD) (D. Minn. Apr. 1, 2010)............................................. 22

*In re Nasdaq Market-Makers Antitrust Litig.,*
    No. 94 CIV. 3996(RWS), 1997 WL 805062 (S.D.N.Y. Dec. 31, 1997) ................. 13, 14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................................................. 14

*In re Rambus Inc. Derivative Litig.*,
No. C 06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ....................................................... 22

*In re State Street Bank & Trust Co. ERISA Litig.*,
2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009) .............................................................................. 14

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................................................... 19

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................................................... 19

**Statutes & Regulations**

Federal Rules of Civil Procedure

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 4

Fed. R. Civ. P. 23.1 ........................................................................................................... 1, 3, 4, 22

Fed. R. Civ. P. 26(f) ....................................................................................................................... 6

**Miscellaneous**

7C Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,
*Federal Practice & Procedure: Civil 3d* (2007) ........................................................................ 13

## I.      INTRODUCTION

Derivative Plaintiffs Joanne Witchko ("Witchko"), Edward Froehner, and Jeffrey Turner as trustee for Michele Graham Turner 1995 Revocable Trust (collectively "Derivative Plaintiffs") respectfully submit this memorandum of law in support of their Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Shareholder Notice pursuant to Federal Rule of Civil Procedure 23.1.

The proposed settlement of this Derivative Action together with the global resolution of the Class Action settlement provides substantial benefits to VEREIT, Inc. ("VEREIT" or the "Company") and its current shareholders. If the Court approves the settlements, the Non-VEREIT Settling Defendants will pay two hundred eighty-six million and five hundred thousand dollars ($286,500,000),[1] which constitutes one of the largest individually-funded pre-trial settlements in history. The Derivative Action was a substantial factor in the willingness of certain Non-VEREIT Settling Defendants to make personal contributions and but for the resolution of the Derivative Action they would not have agreed to any contribution. This exceptional result was obtained only after several years of active litigation, during which Derivative Plaintiffs developed their claims during document discovery and depositions, prevailed on multiple dispositive motions, and engaged in tough, arms-length negotiation with experienced counsel. In addition to the monetary recovery for VEREIT, the settlement also protects the payments by the Non-VEREIT Settling Defendants even if the settlement is overturned on appeal and further obtains the release of counterclaims that would have been asserted against the Company.

---

[1]      Unless defined herein, all capitalized terms have the same definitions as set forth in the Stipulation and Agreement of Settlement ("Stipulation"), which is attached as Exhibit 1 to the Declaration of Matthew M. Houston in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Shareholder Notice.

The Derivative Action involves claims for wrongdoing beyond the accounting fraud at issue in the Securities Class Action.  Where the Securities Class Action sought recovery for purchasers of VEREIT stock who paid inflated prices due to the concealed accounting fraud, the Derivative Action sought redress for numerous improper related-party transactions, in addition to the ongoing harm to VEREIT caused by the accounting fraud and ensuing litigation.  Derivative Plaintiffs developed substantial evidence in discovery supporting their claims, including of breaches of fiduciary duty under Maryland law.  Ultimately, this evidence allowed the Derivative Plaintiffs to oppose summary judgment motions filed by certain Non-VEREIT Settling Defendants seeking dismissal of all claims arising from the related-party transactions, as well as the claims for breach of fiduciary duty.

The proposed settlement is based on the parties' vigorous litigation of the Derivative Action and their thorough understanding of the relative strengths and weaknesses of their respective positions.  Throughout the year-long deposition process, attorneys for the Derivative Plaintiffs questioned witnesses conducted depositions where they became intimately familiar regarding the claims and defenses at issue in the Derivative Action, and the evidence relied on in support.  The proposed settlement was reached only after intense arm's-length negotiations, including multiple mediation sessions between the parties under the auspices of Honorable Layn R. Phillips, United States District Judge (Ret.), an experienced mediator of complex disputes.  Derivative Plaintiffs and their counsel believe that the proposed settlement is in the best interests of VEREIT and its shareholders.

At the final settlement approval hearing (the "Settlement Hearing"), the Court will have before it extensive motion papers submitted in support of the proposed settlement, and will be asked to finally determine whether the settlement is fair, reasonable and adequate.  At this

juncture, Derivative Plaintiffs request only that the Court grant preliminary approval of the settlement so that notice of the settlement may be given to shareholders of VEREIT. This memorandum describes the basis for the motion for preliminary approval of the settlement and sets forth a proposed schedule for the settlement process through final approval.

Derivative Plaintiffs respectfully request that the Court enter the [Proposed] Order Preliminarily Approving Derivative Settlement And Providing For Notice (the "Preliminary Approval Order") (a copy of which is attached as Exhibit B to the Declaration of Matthew M. Houston (the "Houston Decl."), which sets forth provisions:

    (i)     preliminarily approving the settlement of this Derivative Action;

    (ii)    approving the form, substance, and requirements of a proposed form of notice to the shareholders of VEREIT (the "Notice") (Exhibit A-1 and Exhibit A-2 to the Houston Decl.);

    (iii)   finding that the procedures established for notification of the VEREIT shareholders constitute the best notice practicable under the circumstances, and are in full compliance with the notice requirements of Federal Rule of Civil Procedure 23.1; and

    (iv)   setting forth a schedule and the procedures for dissemination of the Notice, for submitting papers in support of final approval of the settlement, for submitting papers in support of an award of Derivative Plaintiffs' attorneys' fees and reimbursement of litigation expenses, for objecting to the settlement, and for the Settlement Hearing to determine: (i) whether the proposed settlement is in the best interests of VEREIT and its current stockholders; and (ii) if the settlement is approved, the appropriate award to be made to Derivative Plaintiffs' Counsel for attorneys' fees and for reimbursement of litigation expenses.

## II.    HISTORY OF THE LITIGATION

### A.    The Litigation Demand And Filing Of The Derivative Action

On October 29, 2014, VEREIT announced that its financial statements for 2013 and the first two quarters of 2014 could no longer be relied upon due to intentional misconduct on the part

of Company senior management.   VEREIT disclosed the existence of accounting errors "intentionally not correct" in the 2014 Second Quarter Form 10-Q, which resulted in the overstatement of VEREIT's non-GAAP metric adjusted funds from operations ("AFFO").

On November 17, 2014, plaintiff Witchko served a litigation demand pursuant to Maryland law on the Board of Directors of VEREIT (the "Board") asking it to investigate alleged wrongdoing by certain of VEREIT's officers, directors, and third parties and take legal action against the wrongdoers.  ECF No. 1, Ex. A.[2]  The Board refused the demand on June 18, 2015.[3] ECF No. 1, Ex. I.  On July 31, 2015, plaintiff Witchko filed her initial derivative complaint in this Court, asserting claims including breach of the fiduciary duties of loyalty, good faith, and candor and alleging that that Board had improperly refused her demand.  ECF No. 1.  A second derivative action was filed on September 17, 2015.  On December 15, 2015, the Court consolidated the second action with the Derivative Action and appointed Harwood Feffer LLP, now Glancy Prongay & Murray LLP ("Derivative Plaintiffs' Counsel"), to lead prosecution of the Derivative Action.  ECF No. 51.

### B.   The Motion To Dismiss The Derivative Action

On February 12, 2016, VEREIT's Board, and certain of the Non-VEREIT Settling Defendants moved to dismiss the Derivative Action pursuant to Fed. R. Civ. P. 23.1 for failure to sufficiently allege improper refusal of demand, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  ECF Nos. 61-63.  Derivative Plaintiffs opposed on March 15, 2016, and replies were

---

[2]   Citations to "ECF No. _" refer to docket entries in the Derivative Action.

[3]   On March 18, 2015, VEREIT issued a SEC Form 10-K/A setting forth the results of its internal investigation and disclosing the recoupment of certain financial payments to some of the individual defendants, removal of certain directors and officers and the implementation of certain governance reforms. Derivative Plaintiffs allege that numerous related-party transactions and fiduciary breaches remained unaddressed by VEREIT.

filed on April 5, 2016.  ECF Nos. 68-70.  Following oral argument, the Court issued an opinion and order on June 9, 2016, denying the motion to dismiss pursuant to Fed. R. Civ. P. 23.1 because the operative complaint sufficiently alleged that plaintiff Witchko's demand had been improperly denied.  ECF No. 75.  The opinion and order also granted with leave to amend the motions to dismiss pursuant to Rule 12(b)(6).  *Id.*

On June 30, 2016, the Derivative Plaintiffs filed an amended complaint generally alleging that VEREIT had been seriously harmed, not only by the fraudulent manipulation of AFFO, but by improper related-party transactions through which certain of VEREIT's former officers and directors enriched themselves by hundreds of millions of dollars.  ECF No. 87.  On July 22, 2016, defendants and VEREIT filed answers to the Amended Complaint.  ECF Nos. 92-104.

## C.  Certain Defendants Appeal Denial Of The Motion To Dismiss

On July 11, 2016, Non-VEREIT Settling Defendants William Kahane ("Kahane") and Edward Weil ("Weil") noticed an interlocutory appeal to from the denial of the motion to dismiss. *See Witchko v. Schorsch, et al.*, No. 16-2499, (2d Cir.) (the "Appeal").  Thereafter, Non-VEREIT Settling Defendants Nicholas Schorsch ("Schorsch"), Brian Block ("Block"), and Lisa McAlister ("McAlister") also filed tag-along appeals, acknowledging that the disposition of the Appeal would govern their appeals.  Derivative Plaintiffs moved to dismiss the Appeal for lack of appellate jurisdiction on July 20, 2016.  Appeal Dkt No. 9-11.[4]  On August 1, 2016, Kahane and Weil filed their opposition to the motion to dismiss the Appeal for lack of appellate jurisdiction.  Appeal Dkt No. 62.  On August 8, 2016, the Derivative Plaintiffs filed their reply.  Appeal Dkt No. 67.

---

[4]     Citations to "Appeal Dkt No. __" refer to docket entries in the Appeal.

On November 15, 2016, the U.S. Court of Appeals for the Second Circuit granted the Derivative Plaintiffs' motion to dismiss the Appeal for lack of appellate jurisdiction. Appeal Dkt No. 130.

**D.     VEREIT And The Non-VEREIT Settling Defendants Attempt To Stay The Derivative Action And Prevent Derivative Plaintiffs From Conducting Discovery**

Derivative Plaintiffs were required to fight VEREIT and the Non-VEREIT Settling Defendants every step of the way for the right to conduct discovery of the facts at issue in the Derivative Action.  First, VEREIT objected to Derivative Plaintiffs' participation in Rule 26(f) discovery conferences, arguing that discovery should not go forward in the Derivative Action. Derivative Plaintiffs were permitted to participate in the Rule 26(f) discovery conferences.  On September 1, 2016, VEREIT moved to stay the Derivative Action based on a report by a new law firm retained as "independent counsel" and a Board "subcommittee" that had re-reviewed Witchko's original demand.  ECF No. 115-17.  The Court denied VEREIT's motion to stay and ordered the Derivative Action, the related securities class action, *In re American Realty Capital Properties, Inc. Litigation*, C.A. No. 1:15-mc-00040-AKH (the "Securities Class Action"), and the Direct Actions,[5] be coordinated for discovery purposes (the Derivative Action, the Securities Class Action, and the Direct Actions together, the "Coordinated Actions").  ECF No. 123.

---

[5]     "Direct Actions" means *Archer Capital Master Fund, L.P., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:16-cv-05471-AKH (S.D.N.Y.); *Atlas Master Fund, Ltd., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:16-cv-05475-AKH (S.D.N.Y.); *BlackRock ACS US Equity Tracker Fund, et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-08464-AKH (S.D.N.Y.); *Clearline Capital Partners L.P., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-08467-AKH (S.D.N.Y.); *Cohen & Steers Institutional Realty Shares, Inc., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:18-cv-06770-AKH (S.D.N.Y.); *Eton Park Fund, L.P., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:16-cv-09393-AKH (S.D.N.Y.); *Fir Tree Capital Opportunity Master Fund, L.P., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:17-cv-04975 (S.D.N.Y.); *HG Vora Special Opportunities Master Fund, Ltd. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-

Again, in November 2017, when plaintiffs in the Coordinated Actions were attempting to schedule depositions and implement a protocol for coordination, VEREIT and the Non-VEREIT Settling Defendants objected to Derivative Plaintiffs' right to participate in the coordinated discovery. Derivative Plaintiffs argued that because the derivative claims included related-party transactions, not at issue in the other Coordinated Actions, they required the ability to depose common witnesses on issues specific to the Derivative Actions. At a status conference in the Coordinated Actions on December 4, 2017, the Court agreed and directed that as to common issues, "a deposition taken by one is the same as a deposition taken by all," and that Derivative Plaintiffs could conduct examinations specific to the Derivative Action. Class Action Dkt No. 542 at 9.[6]

### E.     The U.S. Government Attempts To Stay The Derivative Action

On January 20, 2017, the U.S. Attorney's office for the Southern District of New York moved to stay the Derivative Action, as well as the other Coordinated Actions until the conclusion of Block's criminal trial. Class Action Dkt No. 347-49. On January 25, 2017, this Court denied the Government's stay motion as premature. Class Action Dkt No. 352.

---

04107-AKH (S.D.N.Y.); *Jet Capital Master Fund, L.P., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-00307-AKH (S.D.N.Y.); *Lakewood Capital Partners, L.P. v. American Realty Capital Properties, Inc., et al.*, Index. No. 653676/2019 (N.Y. Sup. Ct.); *Pentwater Equity Opportunities Master Fund Ltd., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-08510-AKH (S.D.N.Y.); *PIMCO Funds: PIMCO Diversified Income Fund, et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-08466-AKH (S.D.N.Y.); *Reliance Standard Life Insurance Company, et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:17-cv-02796-AKH (S.D.N.Y.); *Twin Securities, Inc., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-01291-AKH (S.D.N.Y.); and *Vanguard Specialized Funds, et al v. VEREIT Inc., et al.*, 2:15-cv-02157-JAS (D. Ariz.).

[6]     Citations to "Class Action Dkt No. _" refer to docket entries in the Securities Class Action.

On May 11, 2017, the U.S. Attorney's office renewed its motion for a partial stay of discovery until the completion of Block's criminal trial, scheduled for the summer of 2017. Class Action Dkt No. 386. On May 15, 2017, the Court again denied the Government's request for a partial stay of discovery. Class Action Dkt No. 388.

### F.    Document Discovery And Depositions

Document production in the Coordination Actions began in September 2016. During document discovery, over seventy parties and non-parties produced more than 846,000 documents totaling several million pages. VEREIT produced over 264,600 separate documents, AR Capital LLC produced over 242,500 documents, and Grant Thornton produced over 117,013 documents. Between September 2016 and April 2019, Derivative Plaintiffs' Counsel conducted targeted document searches, reviewed, and coded hundreds of thousands of documents comprising millions of pages.

Between January and December 2018, the Derivative Plaintiffs' Counsel attended thirty-four fact depositions in the Coordinated Actions spanning sixty-three days. During the depositions, Plaintiffs' counsel conducted non-duplicative examinations of the deponents regarding the related-party transactions, executive compensation payments, and corporate governance at issue in the Derivative Action.

As a result of document discovery and depositions, Derivative Plaintiffs continued to develop their case and obtained significant evidence regarding the improper related-party transactions alleged in the amended complaint. Derivative Plaintiffs used the evidence adduced in discovery to identify several specific wrongful related-party transactions that resulted in the payment to VEREIT's former officers and directors of several hundred million dollars in cash and units in VEREIT's operating partnership. These claims include the payment of OP units pursuant

to the 2013 Outperformance Plan that had not been authorized by the Board and the payment of a fee to the AR Partnership that had not been properly calculated. These claims were not previously addressed by VEREIT's internal investigation as reported in March 2015. As detailed below, Derivative Plaintiffs later relied on evidence obtained from the discovery process to oppose motions for summary judgment filed by defendants Schorsch, Kahane, and Weil, in which they argued that the related-party transactions were proper, and claims related to them should be dismissed.

### G.     Derivative Plaintiffs' Experts

Derivative Plaintiffs retained two experts to aid in their prosecution of the Derivative Action and testify at trial. To consult and testify on damages, Derivative Plaintiffs retained Carl S. Saba, MBA, CVA, a partner in the Forensic and Financial Consulting Services Group at Hemming Morse, LLP. Using evidence developed in discovery, Mr. Saba and his team conducted detailed analyses of the harm caused to VEREIT by the related-party transactions identified in discovery, as well as by the manipulation of AFFO. Derivative Plaintiffs used these analyses during the deposition process to refine their examinations, in opposing the summary judgment motions, and during settlement negotiations.

To consult and opine on corporate governance issues, Derivative Plaintiffs retained a second expert, Deborah A. DeMott, David F. Cavers Professor of Law at Duke University School of Law. Professor DeMott is a nationally-known corporate governance expert who has provided expert services in numerous high-profile derivative actions. Professor DeMott assisted counsel for the Derivative Plaintiffs in focusing on the obligations owed by directors and officers of Maryland corporations and the basis for violation of such duties. Derivative Plaintiffs' Counsel

remained in close communication with Professor DeMott regarding VEREIT's corporate governance deficiencies at issue in the Derivative Action.

### H.   The Summary Judgment Motions

On February 8, 2019, certain of the Non-VEREIT Settling Defendants, Schorsch, Kahane, Weil, Beeson, Block, Kay, and McAlister, moved for summary judgment against Derivative Plaintiffs, and Derivative Plaintiffs moved for summary judgment against Block and McAlister. ECF Nos. 177-94.  The record submissions by all parties were voluminous.  Of the summary judgment motions filed against Derivative Plaintiffs, the brief filed by Schorsch, Kahane, and Weil, styled the "AR Individuals," was the most comprehensive.  In their forty-six-page brief (and supporting declaration attaching one hundred forty-four separate exhibits), the AR Individuals argued that all claims should be dismissed based on legal arguments, and identified and moved for summary judgment with respect to the individual related-party transactions at issue in the Derivative Action.  ECF Nos. 180-81.

On March 16, 2019, the parties filed their oppositions to the motions for summary judgment. ECF Nos. 195-207.  In addition to opposing Kay and Beeson's motions, Derivative Plaintiffs filed a seventy-seven-page brief opposing the AR Individual's motion, relying on one hundred thirty-seven exhibits.  Derivative Plaintiffs argued, among other things, that significant evidence existed that would allow a fact finder to reasonably conclude that the related-party transactions were improper, unauthorized, and that the AR Individuals had harmed VEREIT by them. On April 5, 2019, the parties filed replies in support of their motions for summary judgment. ECF No. 257-65.  During summary judgment briefing in the Derivative Action, the parties collectively filed with the Court over 1,000 pages of briefing and related papers, and 600 separate exhibits.

After oral argument, on May 10, 2019, the Court denied all summary judgment motions in the Derivative Action granting leave to reassert such motions at a later time.  ECF No. 269.

## I.     The Settlement Negotiations

In March 2017, the parties conducted the first mediation session with Judge Phillips.  In advance of the first mediation, Derivative Plaintiffs initially retained Travis Keath, CFA, CPA/ABV of VALUE Incorporated, who prepared a report on damages in the Derivative Action. Based in part on Mr. Keath's report, the Derivative Plaintiffs submitted a confidential mediation statement to Judge Phillips on February 16, 2017 and a reply mediation statement on March 2, 2017.  At the request of Judge Phillips, on March 10, 2017, the Derivative Plaintiffs additionally submitted a draft settlement term sheet.  The first mediation session failed to produce a settlement, although the parties expended significant time and effort preparing for and attending the two-day mediation.

In January of 2019, counsel for one of the Non-VEREIT Settling Defendants contacted counsel for Derivative Plaintiffs and solicited a settlement demand.  Derivative Plaintiffs' Counsel prepared a comprehensive damages analysis, based on the work of Mr. Saba, and presented it to Judge Phillips in a meeting during February 2019.  Judge Phillips conveyed to certain of the Non-VEREIT Settling Defendants the damages analysis prepared by Derivative Plaintiffs, but no further progress was made toward a resolution.

During the summer of 2019, Derivative Plaintiffs' Counsel was contacted by VEREIT's outside counsel, and, on multiple occasions, spoke by telephone about whether a resolution of the action could occur.  On July 16, 2019, Derivative Plaintiffs' Counsel met with VEREIT's Chief Executive Officer, General Counsel, and outside counsel.  Derivative Plaintiffs' Counsel made a detailed presentation regarding the claims alleged in the Derivative Action and Derivative

Plaintiffs' analysis of damages.  During the meeting, Derivative Plaintiffs' Counsel, answered questions from VEREIT's Chief Executive Officer, General Counsel, and outside counsel regarding particular theories of harm and the calculation of damages.

On August 15, 2019, Derivative Plaintiffs' Counsel, VEREIT's outside counsel, certain of the Non-VEREIT Settling Defendants' counsel, and counsel for the lead plaintiff in the Securities Class Action held a mediation session before the Judge Phillips at the office of VEREIT's outside counsel.  Certain of the parties thereafter engaged in further extensive negotiations that included numerous email exchanges and telephonic conferences.

On August 18, 2019, the Derivative Plaintiffs met for a second time with VEREIT's Chief Executive Officer, General Counsel, and outside counsel and discussed a potential resolution and the positions of certain Non-VEREIT Settling Defendants' regarding resolution.  Over the following weeks, the parties engaged in hard-fought, arm's-length negotiations regarding the terms of a potential resolution of the Derivative Action.

On September 8, 2019, the Settling Parties signed and entered into a binding Memorandum of Understanding setting forth certain key terms of the Settlement.

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The proposed settlement confers significant benefits on VEREIT, is the result of intense arm's-length negotiation after years of vigorous litigation, and merits preliminary approval.  If the settlements in the Derivative Action and the Securities Class Action are finally approved by the Court, Derivative Plaintiffs will voluntarily dismiss with prejudice their claims against the Non-VEREIT Settling Defendants in return for the payment of $286,500,000, the Secondary Agreement protecting that payment in the event approval of the settlement is overturned on appeal, and the agreement by all Non-VEREIT Settling Defendants, including Grant Thornton, not to assert viable

counterclaims against the Company.  The proposed settlement will also benefit VEREIT by relieving it of the significant expense of continued indemnification of certain of the Non-VEREIT Settling Defendants' legal costs in connection with the Derivative Action, the Securities Class Action,  Similarly, the proposed settlement will relieve VEREIT of potentially being required to indemnify certain Non-VEREIT Settling Defendants for amounts paid to settle any of the pending Coordinated Actions and government matters, or in a judgment rendered in those matters VEREIT's current management likewise believes that the proposed settlement is in the best interests of VEREIT for business reasons.  Finally, the because the settlement of the Securities Class Action is contingent on the proposed settlement of this action, the proposed settlement allows VEREIT to fully and finally put the wrongdoing at issue in the Coordinated Actions behind it and conclude almost five years of active civil litigation.

### A.    The Preliminary Approval Standard

Derivative Plaintiffs filed this action pursuant to Rule 23.1, which provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23.1(c).  In shareholder derivative actions, the parties typically submit the settlement to the Court for its approval together with a request for a hearing on its propriety. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice And Procedure: Civil 3D § 1839, at 199 (2007).  In determining the standards applicable to approval of a derivative settlement, "cases involving dismissal or compromise under Rule 23(e) of nonderivative class actions . . . are relevant by analogy." *Id.* at 195; *In re Nasdaq Market-Makers Antitrust Litig.*, No. 94 CIV. 3996(RWS), 1997 WL 805062, at *8 (S.D.N.Y. Dec. 31, 1997) (citing *Manual for Complex Litigation* ("MCL") § 30.41, at

237 (West 1995)). *See also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

The preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify [the interested shareholders] of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted); *see also In re Nasdaq Market-Makers Antitrust Litig.*, 1997 WL 805062, at *8 (S.D.N.Y. Dec. 31, 1997) (finding that "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies . . . and falls within the range of possible approval, preliminary approval should be granted") (citation omitted). The Court's role for purposes of preliminary approval is "'at most [to issue] a determination that there is what might be termed 'probable cause' to submit the [settlement] proposal to class members and [to] hold a full-scale hearing as to its fairness.'" *In re State Street Bank & Trust Co. ERISA Litig.*, 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009). Thus, the Court is asked to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citation omitted). Derivative Plaintiffs request only that the Court take the first step in this process, which is to grant preliminary approval of the proposed settlement, because the settlement satisfies the standard for such approval.

**B.      The Proposed Settlement Serves The Interests of VEREIT And Its Shareholders**

Each of the factors that courts in this District consider when determining whether to grant approval of a proposed settlement of a derivative action supports a finding that this settlement merits preliminary approval. *See, e.g., In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006). In particular, the proposed settlement merits

14

approval by the Court because it "fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted." *Id.* at *2 (citations omitted).

### 1.    The Recovery of $286,500,000

The recovery here is an exceptional result.  The Non-VEREIT Settling Defendants have collectively agreed to pay a total of $286,500,000 which they would not have been willing to do but for the settlement of the Derivative Action.[7]  This recovery ranks as one of the largest pre-trial settlements by individuals in history.  Further, all of the settlement consideration is being paid by the Non-VEREIT Settling Defendants directly, as opposed to through an insurance policy.  In comparison to amounts paid to resolve derivative claims in similarly large and complex actions, especially where no insurance was available, the consideration obtained in the proposed settlement is without precedent.

But for the resolution this Derivative Action, the Non-VEREIT Settling Defendants would not have agreed to any contribution to the settlement of the Securities Class Action.  The Derivative Action was therefore the mechanism by which the contributions of the Non-VEREIT Settling Defendants to the global resolution were secured.  As set forth in the Stipulation, without the $286,500,000 payment by the Non-VEREIT Settling Defendants, VEREIT would have been required to make a substantially larger payment to settle the Securities Class Action, and may not, in fact, have been able to reach resolution.  As a result, the funds recovered from the Non-VEREIT Settling Defendants represent an offset against the much higher amount that VEREIT would have

---

[7]     The AR Capital Parties have agreed to contribute consideration with a value of $225,000,000, inclusive of the value of certain operating partnership units in VEREIT Operating Partnership, L.P., and related dividends previously surrendered by some of the AR Capital Parties as part of a settlement with the Securities and Exchange Commission, which total $31,972,934 in value).  Block has agreed to contribute consideration with a value of twelve million, five hundred thousand dollars ($12,500,000).  Grant Thornton has agreed to contribute forty-nine million dollars ($49,000,000).

had to pay in order to resolve the Securities Class Action. Each dollar paid by the Non-VEREIT Settling Defendants represent a savings to VEREIT as compared to what it would have had to pay to resolve the Securities Class Action.

Independently, the amount recovered from the Non-VEREIT Settling Defendants serves VEREIT's interests because it is sufficient to compensate the Company for important categories of damages in the Action. The $286,500,000 payment by the Non-VEREIT Settling Defendants equals the entire amount spent by the Company on the Audit Committee investigation, indemnification of certain defendants, and expenses for related matters, *plus* a significant percentage of the largest related-party transactions at issue. Derivative Plaintiffs submit that the recovery of such a substantial sum, each dollar of which represents a savings for the Company, significantly benefits VEREIT and its shareholders by compensating the Company for wrongdoing alleged in the Action.

### 2. The Secondary Agreement

In consideration for the settlement of the Derivative Action, the Non-VEREIT Settling Defendants' agreed to enter into the Secondary Agreement. The Secondary Agreement provides that even if approval of the proposed settlement by this Court were reversed on appeal, the $286,500,000 payment from the Non-VEREIT Settling Defendants would not be returned. While Derivative Plaintiffs do not believe there is any basis to appeal final approval of the proposed settlement, the amount of the Non-VEREIT Settling Defendants' payment is sufficiently large that VEREIT would be substantially harmed were those funds required to be repaid, and such a result would likely also cause the Securities Class Action settlement, which is contingent on the proposed settlement of the Derivative Action, to collapse. As a result, the proposed settlement provides a

substantial benefit to VEREIT and its shareholders by effectively insuring the payments of the Non-VEREIT Settling Defendants even in case of appeal.

### 3.      Release Of Non-VEREIT Settling Defendant Counterclaims

If the Court approves the proposed settlement, the Non-VEREIT Settling Defendant will release counterclaims that they could have asserted against VEREIT. In particular, Grant Thornton will release counterclaims that it intended to assert in the Derivative Action. In addition to its payment of $49,000,000, Grant Thornton has agreed to stand down on counterclaims against VEREIT. Due to discovery in the Coordinated Actions, Derivative Plaintiffs were able to make an informed assessment of the liability that VEREIT might face should Grant Thornton pursue such counterclaims. Derivative Plaintiffs' Counsel reviewed hundreds of thousands of pages of documents produced by Grant Thornton and participated in the depositions of a half-dozen current and former Grant Thornton employees, examining each of those witnesses. Derivative Plaintiffs' counsel also observed the questioning by Grant Thornton's counsel of former-ARCP employees, directors, and officers at over two dozen other depositions. Based upon their review of the documents, their examination of the Grant Thornton deponents, the examination by other plaintiffs of Grant Thornton deponents, and the examination by Grant Thornton of VEREIT-affiliated deponents, Derivative Plaintiffs' Counsel believes that VEREIT had significant exposure to counterclaims asserted by Grant Thornton including whether VEREIT employees made misrepresentations to Grant Thornton. As set forth in the stipulation, the assertion of such counterclaims by Grant Thornton is not merely a hypothetical: Grant Thornton *intended* to assert them if not for the proposed settlement. Based on the foregoing, Derivative Plaintiffs' Counsel also believes that were Grant Thornton to assert such counterclaims against VEREIT in the Derivative Action, the potential amount of VEREIT's liability could be significant.

All potential counterclaims against VEREIT will be released if the Court approves the proposed settlement. The release of the counterclaims provides a substantial benefit to VEREIT and its shareholders by protecting VEREIT from this potential liability and finally concluding the ongoing litigation risk VEREIT faced from Grant Thornton and the other Non-VEREIT Settling Defendants.

### 4.    Continued Costs of Litigation

If the Court approves the proposed settlement, VEREIT will be finally and completely relieved of its indemnification obligations to the certain of the Non-VEREIT Settling Defendants in connection with these actions. Under the Agreement of Limited Partnership of VEREIT's Operating Partnership and relevant employment agreements, unless certain conditions are met, VEREIT is required to indemnify certain Non-VEREIT Settling Defendants for "expenses (including reasonable legal fees and expenses), judgments, fines, settlements, and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative, or investigative." Third Amended and Restated Agreement of Limited Partnership Section 6.03(a) (emphasis added). The advancement of funds for indemnification was litigated during 2017 and 2018 in an action filed in the Delaware Court of Chancery by certain of the Non-VEREIT Settling Defendants, and the provision was found by that court to be enforceable. *See Weil, et al. v. VEREIT Operating Partnership, L.P.*, C.A. No. 2017-0613-JTL, Memorandum Opinion (Feb. 13, 2018).

Since approximately November 2014, VEREIT has advanced tens of millions of dollars in legal fees to Schorsch, Weil, Kahane, and Budko, including many millions of dollars incurred in the defense of the individuals in the Coordinated Actions. Further, it was an open question whether under the indemnification provision these individuals could have compelled VEREIT to indemnify

them for amounts paid to settle the Securities Class Action or amounts owed due to judgment in any other action.

Absent the proposed settlement, Derivative Plaintiffs' Counsel understands that the cost to VEREIT of indemnification, were the Coordinated Actions litigated through trial, would likely approach or exceed $100,000,000. Accordingly, the termination of VEREIT's obligation to indemnify the Non-VEREIT Settling Defendants is a substantial benefit to the Company and its shareholders.

### 5.    Opinion of Current Management

As expressed by VEREIT's decision to enter into this settlement, VEREIT's current management and board believe that settlement is in the best interest of VEREIT and its shareholders. VEREIT's management expressed to Derivative Plaintiffs' Counsel that numerous compelling business justifications exist for the proposed settlement, including that a global resolution will remove uncertainty in the market regarding the Company's exposure in the Coordinated Actions and that entering the global resolution now could provide significant financial benefits to the Company due to the options currently available for financing the global settlement. Accordingly, in the opinion of VEREIT's current management, the proposed settlement provides significant business benefits for VEREIT and its shareholders.

### C.    The Proposed Settlement Is The Result Of Intense, Lengthy, Arm's-Length Negotiations By Experienced Counsel

A "strong presumption of fairness" attaches to settlements negotiated at arm's-length by experienced counsel. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) This presumption applies here because the settlement was negotiated between experienced counsel possessing a firm understanding of the strengths and weaknesses of the claims and

defenses in the Derivative Action, and is the product of significant give and take by the Settling Parties. *In re Marsh & McLennan Co., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009); *see also City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *11 (S.D.N.Y. May 9, 2014) ("This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations . . . ."), *aff'd sub nom.; Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). There is no doubt that after four years of litigation, voluminous discovery, and extensive motion practice, Derivative Plaintiffs' Counsel were well-informed of the risks and benefits to settlement.

The proposed settlement resulted from intense, protracted, arm's-length negotiation, following vigorous litigation, including extensive discovery and a decision on summary judgment. By the time the parties agreed to the proposed settlement the Derivative Action had been actively litigated for over four years. Derivative Plaintiffs had: survived a motion to dismiss; obtained the dismissal of the Appeal; successfully opposed a motion to stay by VEREIT; avoided two attempts to stay discovery by the Government; reviewed millions of pages of documents; participated in over 30 depositions, most of which spanned multiple days; briefed two affirmative motions and five cross-motions for summary judgment comprising over 1,000 pages of written product and over 600 individual exhibits; and opposed motions for summary judgment by several of the Non-VEREIT Settling Defendants. The Parties' counsel thoroughly tested each other's factual and legal positions during every stage of the litigation.

Derivative Plaintiffs' Counsel has significant experience in derivative litigation and has negotiated substantial derivative settlements in the past. Based upon their investigation into the claims and the underlying events alleged in this action, legal research, extensive consultations with

experts, and insight gained over the years of litigation, Derivative Plaintiffs and their counsel have concluded that the terms and conditions of the proposed settlement are fair, reasonable, and adequate and in the best interests of the Company.  In this regard, Derivative Plaintiffs and their counsel have taken into account the risks and uncertainties of proceeding with litigation, including the risks of prevailing on the merits in light of a legal standard under Maryland law that is exceptionally demanding. This is consistent with the policy of Courts in this Circuit to favor settlement of shareholder derivative actions in recognition of the fact that such suits are "notoriously difficult and unpredictable." *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *3 (citation omitted)

These facts demonstrate that the settlement negotiations were conducted at arm's-length, in good faith, and free of collusion.  "'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y. May 11, 2010) (citing *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007)). Thus, the proposed Settlement is presumed fair and warrants preliminary approval. *See, e.g.*, *Chi Kong Leung v. Home Boy Rest.*, 2009 U.S. Dist. LEXIS 12556, at *2 (S.D.N.Y. Feb. 18, 2009).

## IV.      THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE

If the Court grants preliminary approval, VEREIT will notify current VEREIT shareholders pursuant to the Preliminary Approval Order of the settlement by: (1) issuing a press release and a Form 8-K referring to the press release and Long Form Notice; (2) posting the Long Form Notice and a copy of the Stipulation on its website and (3) arranging for publication of a Short Form Notice in *Investor's Business Daily*.

The notice process will sufficiently advise VEREIT's current shareholders of the essential terms of the settlement.[8] It also will set forth the procedure for objecting to the proposed settlement or to the request for an award of attorneys' fees and reimbursement of litigation expenses, and will provide specifics on the date, time and place of the Settlement Hearing, thereby satisfying the requirements of Rule 23.1. *See, e.g., In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 294 n. 10 (S.D.N.Y. 1996) (approving publication notice of derivative settlement in light of MetLife's "millions of policyholders").

## V.  THE PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the proposed settlement, Derivative Plaintiffs propose the following schedule for the final approval hearing date, the date for dissemination of the Notice, the date for submission of final approval and fee award papers, and deadline for the submission of any objections to the settlement or fee award.

| | |
|---|---|
| Dissemination of Notice to VEREIT shareholders. | No later than 10 calendar days after entry of the Preliminary Approval Order. |
| Derivative Plaintiffs file their papers in support of final approval of settlement and fee request. | No later than 35 days prior to the Settlement Hearing. |
| Last day for VEREIT shareholder to object to the settlement or fee request. | No later than 21 days prior to the date of the Settlement Hearing. |
| Derivative Plaintiffs response to any objection made by a VEREIT shareholder/ | No later than 7 days prior to the date of the Settlement Hearing. |

---

[8]  Use of a Form 8-K to advise shareholders of the terms of the proposed settlement, together with publication notice, is common practice in derivative actions. *See, e.g., In re Rambus Inc. Derivative Litig.*, No. C 06-3513, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (discussing notice by Form 8-K, Business Wire press release and publication on the company website); *In re Comverse Tech., Inc. Derivative Litig.*, 06 Civ. 1849, Slip op. at 3 (E.D.N.Y. Apr. 2, 2010); *In re MoneyGram Int'l., Inc. Deriv. Litig.*, 09 Civ. 3208 (DSD) (D. Minn. Apr. 1, 2010); *In re Marvell Tech. Group Ltd. Derivative Litig.*, No. C-06-3894-RMW, Slip op. at 2 (N.D. Cal. May 21, 2009); *City of Pontiac Gen. Emps' Ret. Sys. v. Langone, derivatively on behalf of The Home Depot, Inc.*, 2006 Civ. 122302, Slip op. at 4 (Ga. Super. Ct. June 10, 2008).

| Settlement Hearing. | A date to be set at the Court's convenience, not less than 45 days after entry of the Preliminary Approval Order. |
|---|---|

## VI.    CONCLUSION

For the foregoing reasons, Derivative Plaintiffs ask this Court to grant preliminary approval of the proposed settlement; approve the form, substance, and requirements of the proposed notice to the VEREIT shareholders; and set forth a schedule for the events described herein.

Dated:  September 30, 2019

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

Robert I. Harwood
Matthew M. Houston
Benjamin I. Sachs-Michaels
712 Fifth Avenue, 31st Floor
New York, NY 10019
Tel: (212) 935-7400

*Liaison Counsel for Derivative Plaintiffs*

Robert C. Schubert
Willem F. Jonckheer
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Tel: (415) 788-4220

Jeffrey M. Norton
NEWMAN FERRARA LLP
1250 Broadway, 27th Floor
New York, NY 10001
Tel: (212) 619-540

Timothy Brown
THE BROWN LAW FIRM, P.C.
240 Townsend Square
Oyster Bay, NY 11771
Tel: (516) 922-5427

Corey D. Holzer
Marshall P. Dees
HOLZER & HOLZER, LLC
1200 Ashwood Parkway, Suite 410
Atlanta, GA 30338
Tel: (770) 392-0090

Curtis V. Trinko
LAW OFFICES OF CURTIS V. TRINKO, LLP
16 West 46th Street, 7th Floor
New York, NY 10036
Tel: (212) 490-9550

Alfred G. Yates, Jr.
Gerald L. Rutledge
LAW OFFICE OF ALFRED G. YATES JR PC
519 Allegheny Building
300 Mt. Lebanon Blvd, Suite 206-B
Pittsburgh, PA 15219
Tel: (412) 391-5164

*Counsel for Derivative Plaintiffs*