UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE WITCHKO, Derivatively on Behalf of Nominal Defendant AMERICAN REALTY CAPITAL PROPERTIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NICHOLAS S. SCHORSCH, et al., <br><br> Defendants, <br><br> -and- <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC., <br><br> Nominal Defendant. | Lead Case No. 15-cv-6043-AKH <br><br> (Consolidated with Case No. 1:15-cv-08563-AKH) |

**AMERICAN REALTY CAPITAL PROPERTIES, INC.'S STATEMENT IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF <u>DERIVATIVE SETTLEMENT AND APPROVAL OF SHAREHOLDER NOTICE</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 4

ARGUMENT .................................................................................................................................. 6

CONCLUSION ............................................................................................................................. 10

**DECLARATIONS**

Declaration of Kingdar Prussien, dated September 30, 2019

**EXHIBITS**

Copy of VEREIT's Form 8-K filed with the SEC on September 9, 2019 ..................................... A

Copy of the transcript from a September 9, 2019 conference call,
regarding VEREIT's agreements to settle certain outstanding litigation ..................................... B

Copy of an analyst report issued by Baird U.S. Equity Research,
dated September 9, 2019 ................................................................................................................ C

Copy of an analyst report issued by Capital One Securities, Inc.,
dated September 10, 2019 .............................................................................................................. D

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Blatt v. Dean Witter Reynolds InterCapital, Inc.*,
   732 F.2d 304 (2d Cir. 1984) ........................................................................................ 6

*Daubert v. Merrell Dow Pharmaceuticals Inc.*,
   509 U.S. 579 (1993) .................................................................................................... 8

*Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan*,
   2011 WL 13173025 (S.D. Fla. July 12, 2011) ............................................................ 6

*In re AOL Time Warner S'holder Derivative Litig.*,
   2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ....................................................... 6, 9-10

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
   726 F.2d 1075 (6th Cir. 1984) ................................................................................. 6-7

*TBK Partners, Ltd. v. W. Union Corp.*,
   675 F.2d 456 (2d Cir. 1982) ........................................................................................ 6

*Wolf v. Barkes*,
   348 F.2d 994 (2d Cir. 1965) ........................................................................................ 5

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................... 1, 3, 5, 6

American Realty Capital Properties, Inc. (n/k/a VEREIT, Inc.) ("VEREIT" or the "Company"), by its undersigned attorneys, respectfully submits this statement in support of Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 23.1(c) for preliminary approval of settlement of the derivative action (the "Derivative Settlement") captioned *Witchko v. Schorsch, et al.*, 1:15-cv-6043-AKH (the "Derivative Action").

## PRELIMINARY STATEMENT

As the Court is aware, the parties to the Derivative Action, and the coordinated class action captioned *In re American Realty Capital Properties, Inc. Litigation,* No. 1:15-mc-00040-AKH (the "Class Action" and with the Derivative Action, the "Actions") have spent years litigating their respective claims and defenses.  Coordinated discovery involved the production and review of millions of pages of documents, depositions of 48 fact witnesses, dozens of expert reports and 26 expert depositions.  The parties have briefed multiple rounds of motions to dismiss and summary judgment motions, and have engaged in significant other motion practice.  Almost five years of litigation have imposed substantial costs on VEREIT and its shareholders.  Indeed, as the Court is aware, VEREIT has been required to pay not just its own defense costs, but the costs of virtually all of the other defendants as well.  By the time of the settlement, VEREIT had exhausted its Directors & Officers' insurance coverage, and expended approximately $180 million of its own funds.  VEREIT anticipated that if the case were to go to trial, the additional cost to VEREIT of its own fees, together with the fees that VEREIT would be required to advance to former directors and officers and underwriters, would exceed $100 million.

And VEREIT also faced substantial exposure in the Class Action, with plaintiffs claiming damages, before interest, in the billions of dollars.

In addition, the costs and uncertainty caused by this significant litigation have hampered VEREIT's ability to grow its business and unlock value for its shareholders, and have impacted VEREIT's ability to compete with its peer group in obtaining attractive financing for its ongoing business operations. None of the directors now serving on VEREIT's Board of Directors were with the Company during the time of the conduct alleged in each of the Actions. And following the events at issue, and the departure of virtually all of the management team, VEREIT replaced its Chief Executive Officer ("CEO"), Chief Financial Officer, General Counsel and Chief Accounting Officer. Yet this entirely new Board and management team have been mired in this litigation for years.

The Board of Directors devoted numerous extensive meetings to a careful evaluation of the risks posed by the Class Action, the cost of continued litigation, the effect of such litigation on VEREIT, and the value of VEREIT's claims against its co-defendants. The Board of Directors was advised on those issues by Milbank LLP ("Milbank") and by Wachtell, Lipton, Rosen & Katz ("Wachtell"). After its diligence, the Board determined that settlement, and the chance to focus on growing its business free of these litigations, was clearly in VEREIT's interest.

VEREIT's settlement strategy was to obtain as much as possible by way of contribution from those defendants who had both the means to pay and a significant risk of liability. While most class actions are settled with no contributions from individual defendants, in this case, non-VEREIT defendants shouldered over 25% of the cost of the settlement, or a total of $286.5 million.

The non-VEREIT defendants that contributed to the settlement were at all times clear that any settlement payments would have to be in consideration of both the Class Action plaintiffs' claims, and VEREIT's claims against them, which included claims asserted in the Derivative Action, and (in the case of the AR Capital Parties and Block (each as defined herein)) claims for

contribution under the federal securities laws for prior payments VEREIT had made to settle other non-class securities claims.

From VEREIT's perspective, it was irrelevant whether those defendants allocated their settlement contributions to settlement of the Class Action (the "Class Settlement") or to the Derivative Settlement. Either way, VEREIT would have been required to expend the same amount to settle the Class Action because VEREIT believes that the plaintiffs would require the same aggregate payment regardless of its source. Thus, had other defendants allocated $50 million to the Derivative Settlement instead of the Class Settlement, VEREIT would have received $50 million (potentially less some fee), but its contribution to the Class Settlement would have increased by that same amount.

On September 8, 2019, the parties reached agreements in principle to settle the Actions. At the insistence of the non-VEREIT defendants who are contributing $286.5 million to the settlement, the Class Settlement is conditioned on the approval by the Court of the Derivative Settlement, and vice versa. Since September 8, the parties have worked in good faith to finalize definitive agreements in both Actions, which have now been submitted to the Court for approval. Each of the plaintiffs in those cases has submitted a memorandum of law in support of their motions for approval of the settlements (pursuant to Rule 23(c) for the Class Action and Rule 23.1(c) for the Derivative Action). Those submissions detail why the settlements more than satisfy the applicable standards and why each settlement should be approved.

VEREIT writes separately to explain to the Court in more detail the structure of the settlements reached and why the settlement of these Actions is beneficial to the Company. Settlement of these Actions will remove the significant costs and burdens of these litigations, eliminate VEREIT's potential liability in the Class Action, and allow VEREIT to move forward

with its business activities. Investors have already responded favorably to the settlements' announcement. VEREIT urges the Court to grant a swift preliminary approval to the settlements.

## BACKGROUND

On September 9, 2019, VEREIT announced that it had reached agreements in principle to settle the Actions. (VEREIT Form 8-K and Press Release dated September 9, 2019 (attached hereto as Ex. A).)[1] These agreements in principle were the product of significant negotiations with counsel for the parties in each of the Actions, the final phases of which were conducted in tandem.[2] The result was a global settlement of the Actions, with resolution of each Action dependent upon resolution of the other. In other words, a condition of the settlement of the Class Action is that this Court approve settlement of the Derivative Action, and vice versa.

The Class Action is being resolved for a payment of $1.025 billion, comprised of the following contributions from various defendants: (i) $738.5 million from VEREIT, (ii) $225 million in aggregate from AR Capital, LLC, ARC Properties Advisors, LLC, Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil (collectively, the "AR Capital Parties"), (iii) $12.5 million from Brian S. Block ("Block"), and (iv) $49 million from Grant Thornton LLP ("GT"). (Class Settlement Agreement at ¶ 2.2, filed contemporaneously herewith.) The AR Capital Parties, Block, and GT would only agree to make contributions to settle the Class Action if, in return, they received peace from the claims asserted in the Derivative Action (as well as in derivative actions concerning substantially the same conduct pending before

---

[1] Unless otherwise indicated, citations to "Ex. __" refer to exhibits to the Declaration of Kingdar Prussien in Support of American Realty Capital Properties, Inc.'s Statement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Shareholder Notice, filed contemporaneously herewith.

[2] VEREIT's current Board and management team—all of whom took their positions at the Company post-dating the events at issue in the litigations—were entirely disinterested and conflict-free in their evaluation of the merits of the respective settlements.

other courts).³ In addition to the Class Action, VEREIT resolved opt-out actions (concerning substantially the same conduct as the Class Action) for payments totaling approximately $245 million.

VEREIT's claims against the AR Capital Parties, Block and GT in the derivative actions, the potential defenses to such claims, and the potential counterclaims that could be brought against VEREIT, particularly by GT, were a central issue in negotiating the amounts the AR Capital Parties, Block and GT would contribute to the global settlement. The AR Capital Parties, Block and GT made clear throughout the settlement negotiations that but for resolution of VEREIT's claims at issue in the derivative actions, they would not agree to any contribution to the Class Settlement. Thus, without resolving the Derivative Action, VEREIT would either have had to pay significantly more money to resolve the Class Action, or more likely, would have been unable to resolve the Class Action.⁴

---

³ *Meloche v. Schorsch*, No. 1:16-cv-03366-ELH (D. Md.); *Fran Kosky Roth IRA v. Schorsch*, Index No. 653093/2016 (N.Y. Sup. Ct., Commercial Div. N.Y. Cty.); *Frampton v. Schorsch*, Case No. 24-C-15-006269 (Balt. Cty. Cir. Ct).

⁴ As part of the global settlement, VEREIT, on the one hand, and the AR Capital Parties, Block, and GT, on the other hand, entered into an additional agreement (the "Secondary Agreement"), which the AR Capital Parties, Block and GT insisted on as a condition of their willingness to settle. The Secondary Agreement accounts for the possibility—which the parties view as highly unlikely—that after this Court approves settlement of the Derivative Action (as it should), that approval is then reversed or vacated on appeal. (Secondary Agreement ¶ 3, filed contemporaneously herewith.) In that situation, VEREIT will reimburse the AR Capital Parties, Block, and GT for their respective contributions to the Class Settlement and, simultaneously, the AR Capital Parties, Block, and GT will pay the same amounts to VEREIT. (*Id.* ¶ 4.) In return for these payments, VEREIT will provide those parties with substantially the same releases that VEREIT provided to them in settling the Derivative Action. (*Id.* ¶ 5.) This is entirely consistent with Judge Friendly's opinion in *Wolf v. Barkes*, 348 F.2d 994, 997 (2d Cir. 1965), in which he recognized that a "corporation's interest in achieving a favorable settlement does not cease because derivative litigation has begun," and further concluded that a "corporation's power to make its own out-of-court settlements, subject to normal shareholder redress, is not abolished by a procedural rule [such as Rule 23.1] that does not embrace these either in its language or in its primary rationale." In effect, the Secondary Agreement—which was required to settle the Derivative Action—and thus to obtain a global settlement—ensures that the AR Capital Parties, Block, and

**ARGUMENT**

Whether to approve a settlement lies within the discretion of the Court. *See, e.g.*, *Blatt v. Dean Witter Reynolds InterCapital, Inc.*, 732 F.2d 304, 307 n.1 (2d Cir. 1984) (holding that the Second Circuit reviews the approval of derivative settlements for "abuse of discretion"); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 463 (2d Cir. 1982) (explaining that the Second Circuit affords "great weight" to "the views of the trial judge" presiding over a derivative action "because exposure to the litigants and their strategies" makes the court "uniquely aware of the strengths and weaknesses of the case and the risks of continued litigation").

Courts within the Second Circuit approve settlements of derivative actions brought under Federal Rule of Civil Procedure 23.1 where "the compromise fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted." *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *2 (S.D.N.Y. Sept. 6, 2006) (internal quotation marks and citations omitted).[5]

Specifically, courts have recognized that the relevant corporation's business interests in ending the derivative litigation are an important subject of consideration. *See, e.g.*, *Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan*, 2011 WL 13173025, at *7 (S.D. Fla. July 12, 2011) ("More importantly, the settlement allows Defendants to end the distraction that arises from the litigation and the corresponding drain on resources, and instead focus on running their business."); *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (affirming the district court's approval of a derivative settlement because, in part, "[t]he Court placed itself in the position

---

GT are getting the peace they bargained for in exchange for their contributions to the Class Action, which in turn allowed VEREIT to obtain the peace it sought in the Class Action.

[5] For a full summary of the standard of review, VEREIT respectfully refers the Court to Section III.A. of Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Shareholder Notice, filed contemporaneously herewith.

of an independent director of the corporation and determined that any delay in approval of the settlement would be counter to General Tire's business interest").

The Derivative Settlement readily satisfies any applicable standard and is in the best interest of the Company and its shareholders as it will allow for a global resolution of litigation, putting an end to the cost and burden of these actions, eliminating the significant risks of proceeding to trial, and allowing the Company to focus on its business free from the shadow of continued litigation.

The parties determined that it was necessary to condition a Class Settlement on the Court's final approval of the Derivative Settlement. Accordingly, this is a "package deal." As stated in the Derivative Settlement, the AR Capital Parties, Block, and GT "made clear throughout the settlement negotiations that but for resolution of" the Derivative Action (as well as the derivative actions pending before other courts), they would not agree to make contributions to the Class Settlement. (Derivative Settlement Agreement ¶ 2.1, filed contemporaneously herewith.) However, without those contributions, VEREIT would have been required to make a substantially larger payment to settle the Class Action, and may not have been able to reach a resolution.

Through settlement of the Derivative Action, and therefore settlement of the Class Action, VEREIT would all-but eliminate the significant costs, burdens, and risks from continuing litigation. VEREIT estimated that its out-of-pocket litigation expenses were approximately $180 million, representing fees and expenses from fall 2014 until the time of settlement,[6] and that expenses would amount to an ***additional $100 million through trial in early 2020***. (Ex. B at 5.) These costs include VEREIT's obligations to advance the legal expenses incurred by virtually all

---

[6] The estimate includes fees and expenses related to the audit committee investigation and subsequent government investigations arising from the findings of the audit committee investigation.

of its co-defendants in connection with the Class Action, the Derivative Action, and the derivative actions before other courts.

In addition, were the Court to disapprove the Derivative Settlement, and thereby also undo the pending Class Settlement, the parties would face significant burdens in continued litigation, including the need to (i) finalize briefing on seventeen motions to exclude expert testimony under *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), and its progeny; (ii) finalize briefing on forty-seven motions *in limine*; (iii) conduct significant pre-trial activities, including the exchange of deposition designations, exhibit lists, and the proposed pretrial order, as well as cross-designations and objections regarding deposition designations, exhibit lists, jury instructions, voir dire, and jury questionnaires; (iv) re-calendar and conduct two weeks of hearings on motions to exclude expert testimony under *Daubert* and motions *in limine*; (v) re-calendar and conduct the estimated eight-week trial of the Class Action that was previously scheduled to commence in January 2020; (vi) conduct expert discovery in the Derivative Action; and (vii) conduct pre-trial activities in the Derivative Action no less significant than those in the Class Action.

If litigation were to continue, the prospect of trial in the Class Action risks an adverse jury verdict and a damages award that would be inherently difficult to predict. Following trial, whatever the verdict, costly appeals would likely ensue. Likewise in the Derivative Action (which the Court stayed pending resolution of the Class Action (Dkt. No. 281)), and the other derivative actions (which have been stayed), establishing liability and damages would be a difficult task. VEREIT itself could face the risk of potential counterclaims. (Derivative Settlement Agreement ¶ 2.1.) Furthermore, the AR Capital Parties and Block have taken the position that they would have been indemnified under numerous contracts and by statute against any judgments or settlements with respect to the claims asserted in the Derivative Action. It is thus difficult to

quantify the financial risk the Company would face absent global resolution of the current litigation.

VEREIT's new and disinterested management, which received advice on the settlements from Milbank and Wachtell, has explained why these settlements—particularly at a time when the capital markets are in a favorable position—are in the best interests of the Company.  On a public conference call with investors held on September 9, 2019—the day of VEREIT's Form 8-K and Press Release announcing the pending global settlement—VEREIT's CEO Glenn Rufrano explained that VEREIT "believe[s] these settlements are in the company's best interest as they eliminate the risk of adverse judgments at trial, put an end to the timing uncertainties and remove the burdens and costs of these litigations[.]"  Mr. Rufrano stated that the global settlement will allow VEREIT to enter its "next phase" by putting "behind" it one of the "last" "legacy issues" stemming from the underlying alleged misconduct that VEREIT's new management has been saddled with since taking the reins of the Company in early 2015. (Ex. B at 4.)  Market analysts covering VEREIT agreed, expressing positive reactions in reports and commentary issued following VEREIT's settlement announcements.  (*See, e.g.*, Ex. C at 1 ("The settlement is a positive, as it should remove uncertainty around the stock, saves additional legal costs and allows the company to look forward toward growth."); Ex. D at 1 ("We expect shares to react positively.").)

In sum, the benefits that would flow to VEREIT and its stockholders from the Derivative Settlement greatly outweigh the potential benefits VEREIT might obtain through continued litigation of the Derivative Action and the other derivative actions. *AOL Time Warner*, 2006 WL 2572114, at *3 (listing as a factor for consideration of approval of settlements of derivative actions "the reasonableness of the benefits achieved by the settlement in light of the potential recovery at

trial"). Indeed, as district courts have recognized, the generally-applicable public policy favoring settlement of litigation is heightened with respect to derivative actions because such actions are "notoriously difficult and unpredictable." *Id.* at *3. Settlement would spell the end of these costs and risks for VEREIT and its stockholders. Thus, the "likely duration and cost of continued litigation"—a factor considered by courts in determining whether to approve settlements of class actions and derivative actions—weighs in favor of approval. *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' unopposed motion for preliminary approval of settlement.

Dated: September 30, 2019
       New York, New York

| **MILBANK LLP** | **WACHTELL, LIPTON, ROSEN & KATZ, LLP** |
|---|---|
| By:   */s/ Scott A. Edelman*<br>      Scott A. Edelman<br>      Antonia M. Apps<br>      Jed M. Schwartz<br>      Jonathan Ohring<br>      55 Hudson Yards<br>      New York, New York 10001<br>      Telephone: (212) 530-5000<br><br>      Jerry L. Marks<br>      2029 Century Park East, 33rd Floor<br>      Los Angeles, CA 90067-3019<br>      Telephone: (424) 386-4000<br><br>*Attorneys for Nominal Defendant American Realty Capital Properties, Inc. (n/k/a VEREIT, Inc.)* | By:   */s/ William Savitt*<br>      William Savitt<br>      Claire E. Addis<br>      51 West 52nd Street<br>      New York, New York 10019<br>      Telephone: (212) 403-1000<br><br>*Attorneys for the Board of Directors of Nominal Defendant American Realty Capital Properties, Inc. (n/k/a VEREIT, Inc.)* |